UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC,**<br><br>Defendant.<br><br>and<br><br>**CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC,**<br><br>*Counter-Plaintiff*,<br><br>v.<br><br>**LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC,**<br><br>*Counter- Defendant.* | No. 4:25-cv-00319-P |

## COUNTERCLAIM

Defendant/Counter-Plaintiff, CRISTI LEEBERG d/b/a PRACTIONERS IN MOTION, PLLC ("Leeberg"), by and through undersigned counsel and pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, hereby files her Counterclaims against Plaintiff/Counter-Defendant, LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC ("Legacy"), and as grounds therefore states as

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

follows:

**I. PARTIES AND JURISDICTION**

1. This Court possesses diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332, in that this civil action is between citizens of different states where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

2. Counter-Plaintiff, CRISTI LEEBERG d/b/a PRACTIONER'S IN MOTION, PLLC, is an individual domiciled in the State of Florida.

3. Counter-Defendant, LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, is a limited partnership organized and existing under the laws of the State of Texas with its principal place of business located in the State of Texas.

**II. GENERAL ALLEGATIONS**

4. Leeberg owns and operates Practitioners in Motion, PLLC ("PIM") which delivers compassionate healthcare services through a dedicated team of nurse practitioners who specialize in providing high-quality, patient-centered home based medical care.

5. Leeberg has acted as a nurse practitioner within Brevard County, Florida since 2011 and possesses over twenty-five (25) years' experience in the nursing profession in general.

6. Indeed, Leeberg is Board Certified in Florida in adult primary care.

7. PIM is a primary care practice that provides acute and chronic care management for patients.

8. Leeberg and her team of nurse practitioners have treated and healed multiple cases of acute and chronic wound care where other medical providers could not achieve the same results as expeditiously as Leeberg and her team could.

9. Leeberg and her team also often consult pro-bono cases that local medical providers or home healthcare providers are unable and/or unwilling to attend to.

10. In or around February 2021, Leeberg was approached by an independent consultant who was promoting the use of skin substitute products that were intended to remedy acute and chronic non-healing wounds.

11. Leeberg became intrigued by the opportunity and she and PIM began providing skin substitute graft treatment in or around May 2021.

12. Leeberg and PIM initially utilized a skin substitute product entitled: Biolab Skin Substitutes.

13. Between March 2022 through April 2023, PIM transitioned to utilizing Zenith skin substitute products upon the recommendation of Legacy's distributor of skin substitute products, Apex MDCL, LLC ("Apex").

14. In or around April 2023, Apex recommended that PIM substitute the Zenith skin products and instead utilize the IMPAX Membrane skin graft substitute products under the rationale that such products were superior.

15. Legacy began to supply PIM with IMPAX Membrane products directly from July 2023 through June 2024.

16. Between July 25, 2022, and November 7, 2023, Leeberg, doing business as Practitioners in Motion, LLC, entered into five contractual agreements with Legacy. True and correct copies of the subject Agreements are attached hereto as **Exhibits "A"- "C."**

17. Pursuant to those Agreements, Legacy agreed to supply Leeberg with "human cell and tissue products" for use in treating patients with healing acute and chronic non-healing wounds.

18. In connection with providing Leeberg and PIM its Zenith "human cell and tissue products," Legacy furnished Leeberg with an "Information for Use" ("IFU") document which articulated the manners and procedures by which such products were intended to be applied upon patients.

19. Specifically, the IFU furnished to Leeberg by Legacy, by and through its agents/representatives, Rick Longwood and Brian Rowan, advise that the product may be used as a barrier or wound cover, despite approving numerous claims related use as a skin substitute graft for treatment of an ulcer or wound.

20. In connection with providing Leeberg and PIM its "human cell and tissue products," Legacy furnished Leeberg with an "Information for Use" ("IFU") document which articulated the manners and procedures by which such products were intended to be applied upon patients. A true and correct copy of the IFU provided to Leeberg by Legacy is attached hereto as **Exhibit "D."**

21. Specifically, the IFU furnished to Leeberg by Legacy, by and through its agents/representatives, Rick Longwood and Brian Rowan, indicated that the "human cell and tissue products" were intended to be utilized in the following manner:

**IMPAX Membrane is restricted to use by or on the order of a licensed healthcare professional.**

**Product Use:**

**IMPAX Membrane** grafts are in sheet form. **IMPAX Membrane** is intended for use as Himan Cell, Tissue and Cellular Tissue-Based Product (HCT/P) for repair, reconstruction, replacement and/or supplementation by providing tissue in the form of scaffolding in partial and full-thickness acute and chronic wounds. The IMPAX Membrane graft is intended to remain on the recipient and is absorbed into the wound bed. The graft is anchored based on the physician's choice of fixation including stables or sutures in surgical procedures when medically necessary.

22. The IFU advised that the IMPAX Membrane required that the product must be applied

with staples or sutures and that the product was designated for post-surgical application.

23. Despite the IFU's directives, Legacy, by and through Rick Longwood and Brian Rowan, stated to Leeberg towards the end of 2023 that the IMPAX Membranes did not require that the product be applied with sutures, and that products were not solely for post-surgical application.

24. Leeberg justifiably relied on Legacy's representations regarding the application of the IMPAX Membrane products and sought compensation from Medicare and other insurance companies after applying the products upon her patients in accordance with Legacy's directives.

25. On November 14, 2024, Medicare ultimately denied several of Leeberg's claims for compensation contending that the IMPAX Membrane products were not applied in accordance with the IFU.

26. Specifically, Medicare advised that the IMPAX Membrane skin substitute products were experimental and that they were intended to be applied upon the patient with stable or sutures.

27. Notably, the IMPAX Membrane products could not be stapled or sutured but rather laid directly on the wound bed so that the membrane cells dissolved directly into the patient's wound.

28. In response to such denials, Leeberg, on behalf of PIM, appealed Medicare's decisions.

29. First Coast Service Options, Inc., on behalf of Medicare advised that Leeberg's appeals were also denied because the IMPAX Membrane product was applied for "wound healing and treatment, not merely as a cover or barrier for the wound." A true and correct copy of the Medicare Appeal Decisions dated November 14, 2023, is attached hereto as **Composite Exhibit "E."**

30. Leeberg applied the IMPAX Membrane upon patients with acute and chronic wound care precisely in accordance with Legacy's explicit directives and yet was denied entitlement to compensation upon such claims after justifiably relying on such representations.

31. Worse, Legacy, by and through Rick Longwood and Brian Rowan, verbally guaranteed

to Leeberg beginning in March of 2022 and continuing until June 2024 that Legacy would not seek compensation upon any claims that were denied by Medicare or any other insurance company.

32. Indeed, it was common practice for medical providers like Leeberg and PIM to be verbally reassured by their skin substitute vendors that if an insurance or Medicare denial occurs that the medical provider would not be subject to penalty by owing money for the skin substitute product that was medically necessary for the patient but nonetheless denied for compensation.

33. Leeberg's justifiable reliance upon Legacy's verbal guarantees was also rooted in a "prior authorization" process whereby Legacy would verify that a patient's insurance provider would pre-authorize payment for services.

34. Once pre-authorization was obtained, medical providers like Leeberg, by and through PIM, would proceed with treating their patients accordingly.

35. However, occasionally "claw backs" occurred from the insurance company or Medicare leaving the medical provider, Leeberg and PIM, to engage in an appellate process while having one hundred percent of the cost of the skin substitute product taken from them the insurance carrier or Medicare until proven to be medically necessary to the satisfaction of the insurance carrier or Medicare.

36. The "claw backs" Leeberg and PIM experienced were primarily predicated upon the inaccurate IFU furnished by Legacy.

37. Leeberg, by and through PIM, justifiably relied upon Legacy's guarantees that Leeberg and PIM would not be demanded to pay for the skin substitute products which the insurance company or Medicare denied providing compensation upon.

38. At all material times, Legacy was aware, or otherwise made aware, of Medicare's denials and yet continued to wrongfully pursue collection against Leeberg and PIM for payment upon such rejected cases in direct contravention to its agents' verbal guarantee representations.

6

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

39. On March 12, 2024, Leeberg engaged in a remote video conference on Microsoft Teams with Legacy's agents, Rick Longwood, Brian Rowan and Mathew Fleisher, in which the parties discussed in detail Medicare's denials of Leeberg's claims for compensation.

40. During that remote conference, Mr. Longwood, Mr. Rowan and Mr. Fleisher, all acting on behalf of Legacy, conceded to Leeberg that they were all aware that the IFU furnished to Leeberg relating to the IMPAX Membrane and Zenith Membrane contained what they described as typographical errors and that they had developed an addendum to the IFU that would be furnished to the Centers for Medicare and Medicaid Services ("CMS") to correct that typographical error.

41. The IFU inaccurately stated that the IMPAX and Zenith Membrane skin substitutes were to be used post surgical and that the product was required to be stapled or sutured in place.

42. Legacy knew or should have known that staple and/or suture application was medically unnecessary and generally impossible and such language should never have appeared in the IFU furnished to Leeberg and PIM.

43. Further, Mr. Longwood, Mr. Rowana and Mr. Fleisher informed Leeberg that they, on behalf of Legacy, stood behind the IMPAX and Zenith Membranes and that Leeberg should not be concerned about Medicare's denials of their claims for compensation.

44. Nonetheless, Leeberg, by and through PIM, received additional audit requests from CMS for which she promptly advised Legacy.

45. In response, Mr. Rowan on behalf of Legacy encouraged Leeberg and PIM to secure legal counsel to address the latest CMS audits, which Leeberg promptly secured.

46. Legacy, in response to Leeberg securing the help of legal counsel at its insistence, thereafter declined to provide Leeberg and PIM with any further assistance contesting the "claw backs" and appeal denials, despite continuing to acknowledge that the IFU was incorrect.

47. At or around June 2024, Legacy discontinued furnishing Leeberg with any more IMPAX and Zenith Membrane products.

48. Notably, Legacy's discontinuation occurred while Leeberg was servicing patients who required those IMPAX and Zenith Membrane products to service their acute and chronic wounds.

49. Legacy's abrupt termination of services occurred without advanced notice and placed Leeberg's patients at significant risk of experiencing health complications.

50. Shortly thereafter, Leeberg discovered that Legacy was under investigation by the Federal Government including a Grand Jury Investigation related to its improper and potentially illegal business practices.

51. Indeed, Legacy had several of its representatives indicted on charges of fraud, wire fraud, and other illegal acts which actions remain pending through the present.

52. Leeberg engaged the undersigned counsel to represent her interests in this action and has agreed to pay reasonable attorneys' fees for their services for which Leeberg seeks to recover from Legacy under her claims.

## COUNT I
### Breach of Contract
### (Fulfillment/Rebate Agreement Dated July 25, 2022)

53. Leeberg realleges and reasserts paragraphs 1 through 52 as though fully asserted herein.

54. Leeberg and Legacy are parties to a valid and enforceable Fulfillment/Rebate Agreement dated July 25, 2022.

55. Pursuant to Paragraph 1 of the Agreement, Legacy agreed to sell Leeberg "human cell and tissue products offered by Legacy Medical Consultants as described in Schedule A, as such Schedule may be modified from time to time."

56. In material breach of Paragraph 1, Legacy sold Leeberg human tissue and cell products

that were non-conforming to their intended use as described in the IFU furnished by Legacy to Leeberg.

57. As a direct and proximate result of Legacy's material breach of Paragraph 1 of the Agreement, Leeberg, by and through PIM, provided acute and chronic wound care services to qualified patients in her sole and exclusive medical judgment which services Medicare denied for compensation.

58. Medicare's denial was primarily based on the product not being utilized in accordance with the terms of the IFU, which Legacy acknowledged to Leeberg was inaccurate.

59. As a direct and proximate result of Legacy's material breach of the Agreement, Leeberg, by and through PIM, suffered damages in an amount to be proven at trial.

WHEREFORE, Counter-Plaintiff/Defendant, CRISTI LEEBERG d/b/a PRACTIONER'S IN MOTION, PLLC, respectfully demands the entry of judgment against Counter-Defendant/Plaintiff, LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, for actual damages arising from its material breach of the July 25, 2022 Agreement, the recovery of Leeberg's attorneys' fees and costs and grant such other and further relief deemed just and proper.

**COUNT II**
**Breach of Contract**
**(Purchase Agreement Dated April 1, 2023)**

60. Leeberg realleges and reasserts paragraphs 1 through 52 as though fully asserted herein.

61. Leeberg and Legacy and parties to a valid and enforceable Purchase Agreement dated April 1, 2023.

62. Pursuant to Paragraph 1 of the Agreement, Legacy agreed to sell Leeberg "human cell and tissue products offered by Legacy Medical Consultants as described in Schedule A, as such Schedule may be modified from time to time."

63. In material breach of Paragraph 1, Legacy sold Leeberg human tissue and cell products

9

that were non-conforming to their intended use as described in the IFU furnished by Legacy to Leeberg.

64. As a direct and proximate result of Legacy's material breach of Paragraph 1 of the Agreement, Leeberg, by and through PIM, provided acute and chronic wound care services to qualified patients in her sole and exclusive medical judgment which services Medicare denied for compensation.

65. Medicare's denial was primarily based on the product not being utilized in accordance with the terms of the IFU, which Legacy acknowledged to Leeberg was inaccurate.

66. As a direct and proximate result of Legacy's material breach of the Agreement, Leeberg, by and through PIM, suffered damages in an amount to be proven at trial.

WHEREFORE, Counter-Plaintiff/Defendant, CRISTI LEEBERG d/b/a PRACTIONER'S IN MOTION, PLLC, respectfully demands the entry of judgment against Counter-Defendant/Plaintiff, LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, for actual damages arising from its material breach of the April 1, 2023 Agreement, the recovery of Leeberg's attorneys' fees and costs and grant such other and further relief deemed just and proper.

### COUNT III
### Breach of Contract
### (Purchase Agreement Dated November 7, 2023)

67. Leeberg realleges and reasserts paragraphs 1 through 52 as though fully asserted herein.

68. Leeberg and Legacy and parties to a valid and enforceable Purchase Agreement dated November 7, 2023.

69. Pursuant to Paragraph 1 of the Agreement, Legacy agreed to sell Leeberg "human cell and tissue products offered by Legacy Medical Consultants as described in Schedule A, as such Schedule may be modified from time to time."

70. In material breach of Paragraph 1, Legacy sold Leeberg human tissue and cell products

that were non-conforming to their intended use as described in the IFU furnished by Legacy to Leeberg.

71. As a direct and proximate result of Legacy's material breach of Paragraph 1 of the Agreement, Leeberg, by and through PIM, provided acute and chronic wound care services to qualified patients in her sole and exclusive medical judgment which services Medicare denied for compensation.

72. Medicare's denial was primarily based on the product not being utilized in accordance with the terms of the IFU, which Legacy acknowledged to Leeberg was inaccurate.

73. As a direct and proximate result of Legacy's material breach of the Agreement, Leeberg, by and through PIM, suffered damages in an amount to be proven at trial.

WHEREFORE, Counter-Plaintiff/Defendant, CRISTI LEEBERG d/b/a PRACTITIONER'S IN MOTION, PLLC, respectfully demands the entry of judgment against Counter-Defendant/Plaintiff, LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, for actual damages arising from its material breach of the November 7, 2023 Agreement, the recovery of Leeberg's attorneys' fees and costs and grant such other and further relief deemed just and proper.

## COUNT IV
## FRAUDULENT MISREPRESENTATION

74. Leeberg realleges and reasserts paragraphs 1 through 52 as though fully asserted herein.

75. Beginning in March of 2022 and continuing until June of 2024, Legacy, by and through its agents Rick Longwood and Brian Rowan, advised and "guaranteed" Leeberg that any and all claims which Medicare rejected relating to Leeberg's use of human cell and tissue products from Legacy would not be pursued for collection by Legacy.

76. Legacy, by and through its agents Rick Longwood and Brian Rowan, knew or should have known at the time such representations were made to Leeberg that they were false as Legacy never intended to forego collection for compensation relating to its sale of human cell and tissue products.

77. Legacy, by and through its agents Rick Longwood and Brian Rowan, knowingly and recklessly tendered false representations to Leeberg concerning Legacy's "guarantee" to forego collection of compensation upon claims Medicare denied relating to its sale of human cell and tissue products.

78. Legacy, by and through its agents Rick Longwood and Brian Rowan, intended for Leeberg to rely upon such misrepresentations in the course of entering into various contractual agreements with Legacy.

79. In reliance upon Legacy's fraudulent misrepresentations, Leeberg agreed to enter into several contractual agreements with Legacy and failed to tender payment upon to Legacy, relating to its sale of IMPAX and Zenith Membrane products, on denied claims in reliance upon Legacy's "guarantee" that would forego collection of compensation upon such claims.

80. As a direct and proximate result of Leeberg's justifiable reliance upon Legacy's fraudulent misrepresentations, she has been damaged as Legacy is pursuing collection of compensation through its instant lawsuit, notwithstanding its "guarantee" to forego collection of compensation as to any and all denied claims.

WHEREFORE, Counter-Plaintiff/Defendant, CRISTI LEEBERG d/b/a PRACTIONER'S IN MOTION, PLLC, respectfully demands judgment against Counter-Defendant/Plaintiff, LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, for actual damages and punitive damages in an amount to be proven at trial, for the recovery of Leeberg's reasonable attorneys' fees and costs, and award such other and further relief deemed just and proper.

## COUNT V
## FRAUDULENT MISREPRESENTATION

81. Leeberg reasserts and reincorporates paragraphs 1 through 52 as though fully set forth

herein.

82. Beginning in March of 2022 and continuing until June of 2024 Legacy, by and through its agents, Rick Longwood and Brian Rowan, furnished Leeberg with its IFU relating to its sale of IMPAX and Zenith Membrane products to Leeberg for use treating patients with acute and chronic wounds.

83. The IFU provided:

**IMPAX Membrane is restricted to use by or on the order of a licensed healthcare professional.**

**Product Use:**

**IMPAX Membrane** grafts are in sheet form. **IMPAX Membrane** is intended for use as Himan Cell, Tissue and Cellular Tissue-Based Product (HCT/P) for repair, reconstruction, replacement and/or supplementation by providing tissue in the form of scaffolding in partial and full-thickness acute and chronic wounds. The IMPAX Membrane graft is intended to remain on the recipient and is absorbed into the wound bed. The graft is anchored based on the physician's choice of fixation including stables or sutures in surgical procedures when medically necessary.

84. Legacy, by and through its agents Rick Longwood and Brian Rowan, knowingly and recklessly furnished the inaccurate IFU to Leeberg relating to the IMPAX Membrane products.

85. On March 12, 2024, Legacy, by and through its agents Rick Longwood and Brian Rowan, notified Leeberg that the IFU was drafted incorrectly and that an addendum would be prepared to address the discrepancies.

86. Legacy intended for Leeberg to disregard the erroneous IFU and apply the IMPAX Membrane products in manners that did not comport with the IFU's directives and thereafter pursue compensation from Medicare and other insurance companies.

87. In justifiable reliance upon Legacy's fraudulent representations, Leeberg sought compensation from Medicare for applying the IMPAX Membrane products in the manners Legacy advised were acceptable and was denied compensation by Medicare for such services.

88. As a direct and proximate result of relying upon Legacy's fraudulent misrepresentations, Leeberg suffered extensive damages in an amount to be proven at trial.

WHEREFORE, Counter-Plaintiff/Defendant, CRISTI LEEBERG d/b/a PRACTIONER'S IN MOTION, PLLC, respectfully demands judgment against Counter-Defendant/Plaintiff, LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, for actual damages and punitive damages in an amount to be proven at trial, for the recovery of Leeberg's reasonable attorneys' fees and costs, and award such other and further relief deemed just and proper.

Dated: September 15, 2025

Respectfully submitted,

THE LEAL LAW FIRM, LLC
14180 N Dallas Pky, Suite 300
Dallas, Texas 75254
Telephone: (214) 395-5325

/s/ Abel A. Leal
**ABEL A. LEAL**
Texas Bar No. 24026989
E-mail: abel@leal.law
Telephone: (214) 395-5325

**ZARCO EINHORN SALKOWSKI, P.A.**
2 S. Biscayne Blvd., Suite 3400
Miami, Florida 33131
**ROBERT M. EINHORN** (seeking pro hac vice admission)
E-mail: reinhorn@zarcolaw.com
Secondary: imorfi@zarcolaw.com
**ALEC R. SHELOWITZ** (seeking pro hac vice admission)
Email: ashelowitz@zarcolaw.com
Secondary: agarcia@zarcolaw.com

**ATTORNEYS FOR CRISTI LEEBERG**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 15, 2025, a true and correct copy of the foregoing document was electronically served via CM/ECF upon the following:

**BLANK ROME, LLP**
200 Crescent Ct #1000
Dallas, Texas 75201
717 Texas Avenue, Suite 1400 Houston, Texas 77002-2727
Audrey F. Momanaee (audrey.momanaee@blankrome.com)
Gregory J. Moore (greg.moore@blankrome.com)
Christopher McNeill (chris.mcneill@blankrome.com)
**ATTORNEYS FOR LEGACY MEDICAL CONSULTANTS, L.P.**

By: *s/ Abel A. Leal*
    **Abel A. Leal**

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428