# EXHIBIT E





**Medicare Appeals
P.O. Box 3411
Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

November 14, 2023

Practitioners In Motion PLLC
STE 232
1900 SOUTH HARBOR BLVD
MELBOURNE, FL 32901-3805

In an inquiry refer to:          8723275788010
Medicare Number:                 ******VH41
Internal Control Number:         9723242167060
Service Date:                    November 16, 2022
Services provided by:            Practitioners In Motion PLLC
Services provided to:

Dear Practitioners In Motion PLLC,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to ████████████

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 1

| Summary of Facts | |
|---|---|
| Provider: | Practitioners In Motion PLLC |
| Date of Service: | November 16, 2022 |
| A claim was submitted for: | • 99335 25 - Established patient custodial care facility, group care, or assisted living visit, typically 25 minutes<br>• 15271 - Application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound 1<br>• 15272 59 - Application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm of<br>• Q4253 - Zenith amniotic membrane, per square centimeter |
| An initial determination on this claim was made on: | September 07, 2023 |
| The services were denied because: | • The benefit for this service is included in the payment/allowance for another service/procedure that has already been adjudicated.<br>• These are non-covered services because this is not deemed a 'medical necessity' by the payer. |
| The services were initially allowed, but following a post claim review, a refund for $21,665.31 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | October 02, 2023 |
| Records submitted with the request: | invoice, clinical note, procedure note |

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 2

## Decision

We have determined that Medicare cannot make payment on the established patient custodial care facility, group care, or assisted living visit, typically 25 minutes (99335 25), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound 1 (15271), application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq. cm of (15272 59), and zenith amniotic membrane, per square centimeter (Q4253). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC) was reviewed by a clinician, and it was determined insufficient to support established patient custodial care facility, group care, or assisted living visit, typically 25 minutes (99335 25), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 square centimeters or less of wound 100.0 square centimeters or less (15271), application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 square centimeters of wound 100.0 square centimeters or less (15272 59), and Zenith amniotic membrane, per square centimeter (Q4253 x 28) as reasonable and necessary. The documentation does not support the evaluation and management visit was separately identifiable from the procedures performed on the date of service. Therefore, this service would be included in the procedures.

Furthermore, Zenith is a human amniotic membrane allograft. The services provided in this instance were not reasonable and necessary because this skin substitute graft was applied for wound healing and treatment, not merely as a cover or barrier for the wound. A skin substitute graft acts as an ulcer or wound treatment by providing scaffolding to allow cell growth. The amniotic membrane acts as a covering in the fetus, therefore its use as a skin substitute graft for treatment of an ulcer or wound is a non-homologous use, which was not approved by the U.S. Food and Drug Administration (FDA) and requires evidence of safety and efficacy (see 21 Code of Federal Regulations [CFR] 1271 and what follows). The Tissue Reference Group (TRG) letter for this product does specify that use of this graft as a cover or barrier for wounds is defined as a human cells, tissues, and tissue-based product (HCT and P) and complies with the regulatory scheme set forth in 21 CFR 1271 and what follows. However, the TRG letter also notes than an amniotic membrane product, when intended for wound healing and or to reduce scarring and inflammation would not be considered a homologous use because wound healing and reduction of scarring and inflammation are not basic functions of the amniotic membrane. Thus, it would fall outside the regulatory scheme described in 21 CFR 1271 and what follows, and would be regulated as a drug, device, or biological under Section 351 of the Public Health Service (PHS) Act and require separate FDA approval on that basis and evidence that it was safe and effective for ulcer treatment. Therefore, the services cannot be approved. Contractor Medical Director guidance and the CFR listed in the decision were also utilized for this review.


Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 3

## Who is Responsible for the Bill?

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in Contractor Medical Director guidance and 21 CFR 1271, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

## What to Include in Your Request for a Reconsideration of This Appeal

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of practice, and any other relevant documentation to support the evaluation and management service performed was separately identifiable from other services performed on the same day.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

## Note to Medicare Physicians, Providers, and Suppliers Only:

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 4

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and/or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL  32232-5300

Sincerely,

M. Padgett
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Important Information About Your Appeal Rights

CC: ███████████████



Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 5







**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

November 14, 2023

Practitioners In Motion PLLC
STE 232
1900 SOUTH HARBOR BLVD
MELBOURNE, FL 32901-3805

In an inquiry refer to:
Medicare Number:                    8723275789000
Internal Control Number:            ******TD70
Service Date:                       9723242167030
Services provided by:               October 04, 2022
Services provided to:               Practitioners In Motion PLLC

Dear Practitioners In Motion PLLC,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to █████████████

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 1



| Summary of Facts | |
|---|---|
| Provider: | Practitioners In Motion PLLC |
| Date of Service: | October 04, 2022 |
| A claim was submitted for: | • 99349 25 - Residence visit for established patient with moderate level of medical decision making, per day<br>• 11042 5951 - Removal of skin and tissue, 20.0 sq cm or less<br>• 15271 - Application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound 1<br>• Q4253 - Zenith amniotic membrane, per square centimeter |
| An initial determination on this claim was made on: | September 07, 2023 |
| The services were denied because: | • The benefit for this service is included in the payment/allowance for another service/procedure that has already been adjudicated.<br>• These are non-covered services because this is not deemed a 'medical necessity' by the payer. |
| The services were initially allowed, but following a post claim review, a refund for ==$49,330.20 was== requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | October 02, 2023 |
| Records submitted with the request: | invoice, clinical note, procedure note |

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 2

## Decision

We have determined that Medicare cannot make payment on the residence visit for established patient with moderate level of medical decision making, per day (99349 25), removal of skin and tissue, 20.0 sq cm or less (11042 5951), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound 1 (15271) and zenith amniotic membrane, per square centimeter (Q4253). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC) was reviewed by a clinician, and it was determined insufficient to support residence visit for established patient with moderate level of medical decision making, per day, if using time, at least 40 minutes (99349 25), removal of skin and tissue, 20.0 square centimeters or less (11042 5951), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 square centimeters or less of wound 100.0 square centimeters or less (15271), and Zenith amniotic membrane, per square centimeter (Q4253 x 64) as reasonable and necessary. According to the Local Coverage Determination (LCD): Wound Care (L37166), service(s) must include an operative note or procedure note for the debridement service. This note should include the following: medical diagnosis; indication(s) and necessity for the debridement; type of anesthesia used, if and when used; wound characteristics such as diameter, depth, undermining or tunneling, color, presence of exudates or necrotic tissue; level and or depth of tissue debrided and a description of the type(s) of tissue involved and tissue(s) removed; narrative of the procedure to include the instruments used; beneficiary specific goals and or response to treatment; immediate post-op care and follow-up instructions; and the presence or absence of necrotic, devitalized, fibrotic, or other tissue or foreign matter. When debridements are reported, the debridement procedure notes must demonstrate tissue removal, the method used to debride, and the character of the wound (including dimensions, description of necrotic material present, description of tissue removed, degree of epithelialization) before and after debridement. The documentation did not support the character of the wound before and after debridement. In addition, the documentation does not support the evaluation and management visit was separately identifiable from the procedures performed on the date of service. Therefore, this service would be included in the procedures.

Furthermore, Zenith is a human amniotic membrane allograft. The services provided in this instance were not reasonable and necessary because this skin substitute graft was applied for wound healing and treatment, not merely as a cover or barrier for the wound. A skin substitute graft acts as an ulcer or wound treatment by providing scaffolding to allow cell growth. The amniotic membrane acts as a covering in the fetus, therefore its use as a skin substitute graft for treatment of an ulcer or wound is a non-homologous use, which was not approved by the U.S. Food and Drug Administration (FDA) and requires evidence of safety and efficacy (see 21 Code of Federal Regulations [CFR] 1271 and what follows). The Tissue Reference Group (TRG) letter for this product does

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech impaired (Provider Only): 711

Page 3

specify that use of this graft as a cover or barrier for wounds is defined as a human cells, tissues, and tissue-based product (HCT and P) and complies with the regulatory scheme set forth in 21 CFR 1271 and what follows. However, the TRG letter also notes than an amniotic membrane product, when intended for wound healing and or to reduce scarring and inflammation would not be considered a homologous use because wound healing and reduction of scarring and inflammation are not basic functions of the amniotic membrane. Thus, it would fall outside the regulatory scheme described in 21 CFR 1271 and what follows, and would be regulated as a drug, device, or biological under Section 351 of the Public Health Service (PHS) Act and require separate FDA approval on that basis and evidence that it was safe and effective for ulcer treatment. Therefore, the services cannot be approved. Contractor Medical Director guidance and the CFR listed in the decision were also utilized for this review.

## Who is Responsible for the Bill?

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in Local Coverage Determination (LCD): Wound Care (L37166), the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

## What to Include in Your Request for a Reconsideration of This Appeal

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 4

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of practice, additional procedure notes for the debridement procedure supporting the character of the wound before and after treatment, and any other relevant documentation to support the evaluation and management service performed was separately identifiable from other services performed on the same day.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and/or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

M. Padgett
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Important Information About Your Appeal Rights



Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 5





Medicare Appeals
P.O. Box 3411
Mechanicsburg, PA 17055-1850

## MEDICARE APPEALS DECISION

November 14, 2023

Practitioners In Motion PLLC
STE 232
1900 SOUTH HARBOR BLVD
MELBOURNE, FL 32901-3805

In an inquiry refer to:          8723275790000
Medicare Number:                 ******VH41
Internal Control Number:         9723250167000
Service Date:                     November 30, 2022
Services provided by:            Practitioners In Motion PLLC
Services provided to:

Dear Practitioners In Motion PLLC,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.



Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 1



## Summary of Facts

| | |
|---|---|
| Provider: | Practitioners In Motion PLLC |
| Date of Service: | November 30, 2022 |
| A claim was submitted for: | • 99335 25 - Established patient custodial care facility, group care, or assisted living visit, typically 25 minu<br>• 15271 - Application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound 1<br>• 15272 59 - Application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm of<br>• Q4101 - Apligraf, per square centimeter<br>• Q4253 - Zenith amniotic membrane, per square centimeter |
| An initial determination on this claim was made on: | September 14, 2023 |
| The services were denied because: | • The benefit for this service is included in the payment/allowance for another service/procedure that has already been adjudicated.<br>• These are non-covered services because this is not deemed a 'medical necessity' by the payer. |
| The services were initially allowed, but following a post claim review, a refund for $41,849.79 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | October 02, 2023 |
| Records submitted with the request: | invoice, clinical note, procedure note |

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 2

## Decision

We have determined that Medicare cannot make payment on the established patient custodial care facility, group care, or assisted living visit, typically 25 minutes (99335 25), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound 1 (15271), application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm of (15272 59), Apligraf, per square centimeter (Q4101) and Zenith amniotic membrane, per square centimeter (Q4253). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC) was reviewed by a clinician, and it was determined insufficient to support established patient custodial care facility, group care, or assisted living visit, typically 25 minutes (99335 25), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 square centimeters or less of wound 100.0 square centimeters or less (15271), application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 square centimeters of wound 100.0 square centimeters or less (15272 59), Apligraf, per square centimeter (Q4101 x 10), and Zenith amniotic membrane, per square centimeter (Q4253 x 54) as reasonable and necessary. The documentation does not support the evaluation and management visit was separately identifiable from the procedures performed on the date of service. Therefore, this service would be included in the procedures.

Furthermore, Zenith is a human amniotic membrane allograft. The services provided in this instance were not reasonable and necessary because this skin substitute graft was applied for wound healing and treatment, not merely as a cover or barrier for the wound. A skin substitute graft acts as an ulcer or wound treatment by providing scaffolding to allow cell growth. The amniotic membrane acts as a covering in the fetus, therefore its use as a skin substitute graft for treatment of an ulcer or wound is a non-homologous use, which was not approved by the U.S. Food and Drug Administration (FDA) and requires evidence of safety and efficacy (see 21 Code of Federal Regulations [CFR] 1271 and what follows). The Tissue Reference Group (TRG) letter for this product does specify that use of this graft as a cover or barrier for wounds is defined as a human cells, tissues, and tissue-based product (HCT and P) and complies with the regulatory scheme set forth in 21 CFR 1271 and what follows. However, the TRG letter also notes than an amniotic membrane product, when intended for wound healing and or to reduce scarring and inflammation would not be considered a homologous use because wound healing and reduction of scarring and inflammation are not basic functions of the amniotic membrane. Thus, it would fall outside the regulatory scheme described in 21 CFR 1271 and what follows, and would be regulated as a drug, device, or biological under Section 351 of the Public Health Service (PHS) Act and require separate FDA approval on that basis and evidence that it was safe and effective for ulcer treatment. Therefore, the services cannot be approved. Contractor Medical Director guidance and the CFR listed in the decision were also utilized for this review.



Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 3

## Who is Responsible for the Bill?

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in Contractor Medical Director guidance and 21 CFR 1271, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

## What to Include in Your Request for a Reconsideration of This Appeal

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of practice, and any other relevant documentation to support the evaluation and management service performed was separately identifiable from other services performed on the same day.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

## Note to Medicare Physicians, Providers, and Suppliers Only:

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech impaired (Provider Only): 711

Page 4

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and/or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

M. Padgett
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Important Information About Your Appeal Rights





Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 5





**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

November 14, 2023

Practitioners In Motion PLLC
STE 232
1900 SOUTH HARBOR BLVD
MELBOURNE, FL 32901-3805

In an inquiry refer to:        8723275791000
Medicare Number:              ******WT65
Internal Control Number:       9723242167000
Service Date:                  September 27, 2022
Services provided by:          Practitioners In Motion PLLC
Services provided to:          

Dear Practitioners In Motion PLLC,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new
and independent review of a claim. You are receiving this letter because you requested
an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision,
you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this
decision must be made in writing and received by the QIC within 180 days of receiving
this letter. You are presumed to have received this decision five days from the date of
the letter unless there is evidence to show otherwise. However, if you do not wish to
appeal this decision, you are not required to take any action. For more information on
how to appeal this decision, see the section at the end of this letter entitled, "Important
Information about Your Appeal Rights."

A copy of this letter was also sent to Silvia Fernandez.

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.



Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 1

## Summary of Facts

| | |
|---|---|
| Provider: | Practitioners In Motion PLLC |
| Date of Service: | September 27, 2022 |
| A claim was submitted for: | • 99349 GV25 - Residence visit for established patient with moderate level of medical decision making, per day<br>• 11042 GV5951 - Removal of skin and tissue, 20.0 sq cm or less<br>• 15271 GV - Application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound 1<br>• Q4253 GV - Zenith amniotic membrane, per square centimeter |
| An initial determination on this claim was made on: | September 07, 2023 |
| The services were denied because: | • The benefit for this service is included in the payment/allowance for another service/procedure that has already been adjudicated.<br>• These are non-covered services because this is not deemed a 'medical necessity' by the payer. |
| The services were initially allowed, but following a post claim review, a refund for $24,781.59 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | October 02, 2023 |
| Records submitted with the request: | clinical and procedure notes |

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 2

# IMPORTANT INFORMATION ABOUT YOUR APPEAL RIGHTS

**Your Right to Appeal this Decision:** If you do not agree with this decision, you may file an appeal. An appeal is a review performed by people independent of those who have reviewed your claim so far. The next level of appeal is called reconsideration. A reconsideration is a new and impartial review performed by a qualified independent contractor (QIC), separate and independent of First Coast Service Options.

**How to Appeal:** To exercise your right to an appeal, you must file a request in writing. Your request must be received by the QIC at the address below within 180 days of receiving this decision. You are presumed to have received this decision five days after the date of the letter unless there is evidence to show otherwise. If you are unable to file your appeal request timely, please explain why you could not meet the filing deadline. You may request an appeal by using the form enclosed with this letter.

If you do not use this form, you can write a letter. You must include: your name, the name of the beneficiary, the Medicare number, a list of the service(s) or item(s) that you are appealing and the date(s) of service, and any evidence you wish to attach. You must also indicate that First Coast Service Options made the redetermination. You may also attach supporting materials such as those listed in item 10 of the enclosed Reconsideration Request Form, or other information that explains why this service should be paid. Your doctor may be able to provide supporting materials.

If you want to file an appeal, you should send your request to; C2C Innovative Solutions, Inc., QIC Part B South, P.O. Box 45300, Jacksonville, Florida 32232-5300.

**Who May File an Appeal:** You or someone you name to act for you (your **appointed representative**) may file an appeal. You can name a relative, friend, advocate, attorney, doctor, or someone else to act for you.

If you want someone to act for you, you may visit http://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms1696.pdf to download the "Appointment of Representative" form which may be used to appoint a representative. Medicare does not require that you use this form to appoint a representative. Alternately, you may submit a written statement containing the same information indicated on the form. If you are a Medicare beneficiary, you may also call 1-800-MEDICARE (1-800-633-4227) to learn more about how to name a representative.

**Other Important Information:** If you want copies of statues, regulations, policies, and/or manual instructions we used to arrive at this decision, or if you have any questions specifically related to your appeal, please write to us at the address located at the top right hand corner of the first page.

**Resources for Medicare Beneficiaries:** If you want help with an appeal, or if you have questions about Medicare, you can have a friend or someone else help you with your appeal. You can also contact your State health insurance assistance program (SHIP). You can find the phone number for your SHIP in your "Medicare & You" handbook under the "Helpful Contacts" section of www.medicare.gov Website, or by calling 1-800-MEDICARE (1-800-633-4227). Your SHIP can answer questions about payment denials and appeals.

For general questions about Medicare, you can call 1-800-MEDICARE (1-800-633-4227). TTY/TDD: 1-877-486-2048.

Remember that specific questions about your appeal should be directed to the contractor who is handling your appeal.



## Decision

We have determined that Medicare cannot make payment on the residence visit for established patient with moderate level of medical decision making, per day (99349 GV25), removal of skin and tissue, 20.0 sq cm or less (11042 GV5951), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound 1 (15271 GV) and Zenith amniotic membrane, per square centimeter (Q4253 GV). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it was determined insufficient to support the residence visit for established patient with moderate level of medical decision making, per day (99349 GV25), removal of skin and tissue, 20.0 square centimeters (sq. cm.) or les (11042 GV5951) transitional care management services for problem of high complexity, application of skin substitute graft to wound of trunk, arms, or legs 25.0 sq. cm. or less (15271 GV), and Zenith amniotic membrane, per square centimeter (Q4253 x 32) performed. The documentation indicates that the Zenith (dehydrated, sterilized cellular amniotic membrane allograft) was used as a dressing. The Zenith amniotic membrane was placed as a covering, and was not anchored surgically to the wound, to support the billing of the Zenith amniotic membrane, per square centimeter (Q4253 x 32). Human placental tissue provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues and cellular and tissue-based products; (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The non-homologous use of Zenith amniotic membrane, per square centimeter (Q4253) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, the service cannot be approved.

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 3

Additionally, the surgical debridement service was not documented as performed on this date of service. The documentation indicated Xperience solution was used as a debriding agent; however, per FDA, this product is a single step application wound irrigation solution for use in cleansing and removal of debris, including microorganisms from wounds. There was no documentation of type and amount of tissue removed, the degree of epithelization before and after treatment, or response to debridement treatment. Regarding the right heel wound, the documentation in the medical record for this date of service stated the beneficiary is not a surgical candidate and debridement is not an option. The assessment of the right buttock wound stated the wound bed was red granulation tissue, which would not require debridement (11042).

Additionally, the associated procedure codes can be allowed when the primary service is considered reasonable and necessary. If the primary service is not reasonable and necessary, the associated procedures cannot be. Therefore, the associated lines of service will also be denied. Furthermore, according to the Centers for Medicare & Medicaid Services (CMS) Internet Only Manual (IOM) Publication 100-04, Medicare Claims Processing Manual, Chapter 12, Section 40.1(C), visits by the same physician on the same day as a minor surgery or procedure, unless a significant, separately identifiable service is also performed cannot be approved. For example, a visit on the same day could be properly billed in addition to suturing a scalp wound if a full neurological examination is made for a beneficiary with head trauma. Billing for a visit would not be appropriate if the physician only identified the need for sutures and confirmed allergy and immunization status. The medical records document the reason for the office visit was for the wound care and no other diagnosis or complaints. Based on that information, the documentation does not support the performance of a significant, separately identifiable evaluation and management service. The Local Coverage Determination (LCD): Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities (L36377), was also utilized to render the decision.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in Section 1862(a)(1)(A) of the Social Security Act, 21 CFR 1271, the Centers for Medicare & Medicaid Services (CMS) Internet Only Manual (IOM) Publication 100-04,

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech impaired (Provider Only): 711

Page 4

Medicare Claims Processing Manual, Chapter 12, Section 40.1(C), and Local Coverage Determination (LCD): Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities (L36377), the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and/or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL  32232-5300


Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech Impaired (Provider Only): 711

Page 5

Sincerely,

M. Padgett
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Important Information About Your Appeal Rights

Medicare Part B
Provider Only: 1-866-454-9007
Beneficiary: 1-800-MEDICARE (1-800-633-4227)
Ask for Doctor Services
Text Telephone (TTY) Hearing/Speech impaired (Provider Only): 711

Page 6