# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:25-cv-00319-P |
| CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC, | § § § § | |
| Defendant. | § | |

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND BRIEF IN SUPPORT**

**BLANK ROME LLP**

Gregory J. Moore (*NDTX admission pending*)
Texas Bar No. 24055999
Audrey F. Momanaee
Texas Bar No. 24055993; Fed Bar No. 724132
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com
Audrey.Momanaee@BlankRome.com

-and-

Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

**Page**

I.   FACTUAL BACKGROUND ............................................................................. 1

    A.   DEFENDANT'S CONTRACTS ........................................................... 1

    B.   PROVIDER OBLIGATIONS UNDER FEDERAL LAW ..................... 3

II.  LEGAL STANDARD ................................................................................... 3

    A.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6) ....................... 3

    B.   BREACH OF CONTRACT ................................................................ 4

        (i)   The Court should not consider extrinsic evidence to rewrite the plain terms of a contract ........................................................ 5

        (ii)  The Court should disregard conclusory allegations contrary to Dr. Leeberg's own exhibits ........................................................ 6

    C.   FRAUDULENT MISREPRESENTATION ........................................ 6

        (i)   The counterclaim-plaintiff may not justifiably rely on alleged representations which are contrary to the unambiguous terms of her contracts .............................................. 7

        (ii)  Fraud claims arising solely from a contractual relationship must be dismissed ........................................................ 8

    D.   FEDERAL RULE OF CIVIL PROCEDURE 9(b) ............................... 9

III. ARGUMENT ............................................................................................... 10

    A.   DEFENDANT'S BREACH OF CONTRACT COUNTERCLAIMS ARE WITHOUT ANY FACTUAL OR LEGAL BASIS .............................. 10

        1.   Counts I through III of Defendant's Counterclaims Rely on Facts Directly Contradicted by the Exhibits Attached to Them and the Unambiguous Terms of the Written Agreements ..................... 10

        2.   Counts I, II, and III Must Also Be Dismissed Because Leeberg Fails to Allege, Beyond Mere Speculation, That Legacy's Purported Breach Caused Her Damages ..................... 13

    B.   DEFENDANT'S FRAUD COUNTERCLAIMS ARE WITHOUT FACTUAL OR LEGAL BASIS .............................. 16

        1.   Count V (Fraudulent Misrepresentation) Must Be Dismissed Because It Is Just a Repackaged Breach of Contract Claim and Because It is Without Factual or Legal Basis .............................. 16

            (i)   The economic loss rule precludes Count V .................................. 16

            (ii)  Leeberg has failed to plausibly allege that Legacy made any false representation about the products' use and there is no justifiable reliance. .................................. 17

i

2.     Count IV Must Be Dismissed Because It Also Rests on Alleged
Oral Representations Contrary to Dr. Leeberg's Unambiguous
Contract and Because it Fails to Meet the Standards Per Federal
Rule of Civil Procedure 9(b). ................................................................... 19

IV.    CONCLUSION ............................................................................................................... 22

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*5AIF Sycamore 2, LLC v. Beit Nes, LLC*,
    No. 1:19-cv-0431-RP, 2022 WL 2903122 (W.D. Tex. Jan. 6, 2022) ......................................7

*AHBP LLC v. Lynd Co., et al.*,
    649 F.Supp.3d 371 (W.D. Tex. 2023) .............................................................................. *passim*

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................4

*Bandera Drilling Co., Inc. v. Sledge Drilling Corp.*,
    293 S.W.3d 867 (Tex. App. —Eastland 2009, no pet.) .....................................5, 13

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
    590 S.W.3d 471 (Tex. 2019) ...........................................................................5, 13

*Breeden v. Winberger*,
    377 F.Supp. 734 (M.D. La. 1974) ...........................................................................3, 15

*Carter v. Target Corp.*,
    541 Fed.App'x. 413 (5th Cir. 2013) ...........................................................................6, 19

*Cleary v. American Airlines, Inc.*,
    No. 4:21-cv-00184-O, 2022 WL 5320126 (N.D. Tex. Jul. 22, 2022) ..................7, 8

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
    238 F.Supp.3d 799 (S.D. Tex. 2017) .......................................................4, 6, 11, 12

*Fluorine on Call Ltd. V. Fluorogas Ltd.*,
    380 F.3d 849 (5th Cir. 2004) ...........................................................................7, 22

*United States ex rel. Grubbs v. Kanneganti*,
    565 F.3d 180 (5th Cir. 2009) ...........................................................................9

*Highland Crusader Offshore Partners LP v. LifeCare Holdings Inc.*,
    377 Fed.App'x. 422 (5th Cir. 2010) ...........................................................................8

*Hunter v. Navy Fed. Credit Union*,
    749 F.Supp.3d 743 (N.D. Tex. 2024) ...........................................................................3, 4, 14

*Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc., et al.*,
    995 F.Supp.2d 587 (N.D. Tex. 2014) .......................................................3, 4, 5, 14

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*,
   242 S.W.3d 1 (Tex. 2007) ........................................................................................17

*Miller v. CitiMortgage, LLC*,
   970 F.Supp.2d 568 (N.D. Tex. 2013) ............................................................ *passim*

*Nat'l Prop. Holdings, L.P. v. Westergren*,
   453 S.W.3d 419 (Tex. 2015)......................................................................... *passim*

*US ex rel. Petratos v. Genentech Inc.*,
   855 F.3d 481 (3d Cir. 2017).....................................................................................13

*Walcott v. Sebelius, et al.*,
   653 F.3d 757 (5th Cir. 2011) ...........................................................................6, 21

*Williams v. WMX Tech., Inc.*,
   112 F.3d 175 (5th Cir. 1997) ............................................................................7, 9

**Statutes**

42 U.S.C.
   § 1395.......................................................................................................................3
   § 1395y(a)(1)(A)..................................................................................................3, 20

**Other Authorities**

42 C.F.R. § 424.32(a)(i)(b) ...........................................................................................13

Fed. R. Civ. P.
   § 9(b) ................................................................................................................. *passim*
   § 12(b)(6) .................................................................................................................3

### PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS
### <u>AND BRIEF IN SUPPORT</u>

Dr. Leeberg's counterclaims are a tactical smokescreen designed to obscure the simple reality that she ordered, accepted, and used Legacy's proprietary products, yet refuses to pay the undisputed contract price. The parties' fully integrated agreements unambiguously place that payment obligation on Dr. Leeberg—without regard to any subsequent insurance reimbursement and without any other exceptions. Rather than meet that contractual obligation, Dr. Leeberg now seeks to recast an ordinary collection dispute as a fraud claim, premised on vague extra-contractual assurances that are flatly contradicted by: (i) the specific payment terms in the agreements; (ii) the agreements' merger, disclaimer and non-reliance provisions; (iii) Medicare's regulation solely assigning the determination of medical necessity and reimbursement risk to the billing provider; and (iv) her own billing errors set forth in her claims denials. Moreover, Dr. Leeberg fails to allege any facts establishing that the individuals purportedly making these assurances had actual or apparent authority to bind Legacy. Because the counterclaims are legally barred by the express contract, the parol evidence rule, and the absence of justifiable reliance, the claims are conclusory, factually unsupported, and should be dismissed with prejudice.

## I.    FACTUAL BACKGROUND

### A.    DEFENDANT'S CONTRACTS

On July 25, 2022, Defendant executed an agreement (the "Original Agreement"), pursuant to which Legacy agreed to sell, and Defendant agreed to purchase, certain human cell and tissue products used to assist in the treatment of chronic, non-healing wounds. Def. Countercl. (Doc. 21), ¶ 16, Ex. A, § 1. The Original Agreement contains an express integration clause, providing that it constitutes the entire agreement between the parties and may not be

modified except in writing signed by both parties. *Id.* at § 7. The Original Agreement requires payment within forty-five (45) days of the date of the invoice for the products purchased, regardless of reimbursement by Medicare or other insurance. *Id.* at § 6. The Original Agreement contains no provision conditioning payment on successful reimbursement, nor does it reference any guarantee of insurance or Medicare payment.

On April 1, 2023, Defendant entered into a Purchase Agreement for Zenith™ Amniotic Allograft, also referred to as Zenith Membrane (the "Zenith Agreement"), under which Legacy agreed to sell, and Defendant agreed to purchase, Zenith™, a human cell and tissue product used in the treatment of chronic and acute wounds. Doc. 21, ¶ 16, Ex. B, § 1. The Zenith Agreement likewise contains an integration clause and requires payment within forty-five (45) days after product shipment, regardless of reimbursement. *Id.* at §§ 6-7.

On November 7, 2023, Defendant entered into a Purchase Agreement for Impax™ Amniotic Allograft, also referred to as Impax Membrane (the "Impax Agreement") (together with the Zenith Agreement and Original Agreement, the "Agreements") under which Legacy agreed to sell, and Defendant agreed to purchase, Impax™, a human cell and tissue product used in the treatment of chronic and acute wounds. Def. Countercl. (Doc. 21), ¶ 16, Ex. C, § 1. The Impax Agreement also contains an integration clause and requires payment within sixty (60) days after product shipment, regardless of reimbursement. *Id.* at §§ 6-7.

The Agreements between Legacy and Defendant expressly state that the use of any product is at the sole discretion of the treating provider, pursuant to his or her professional medical judgment, and that payment is due within a specified period after shipment. Def. Countercl. (Doc. 21), ¶ 16, Exs. A–C, §§ 4, 6. The Agreements do not contain any provision

obligating Legacy to guarantee reimbursement, provide billing advice, or assume responsibility for insurance denials.

### B.    PROVIDER OBLIGATIONS UNDER FEDERAL LAW

Medicare Part B covers non-institutional medical items and services, including items sold to physicians by suppliers, like wound grafts. *See* 42 U.S.C. § 1395 *et. seq.*

Under 42 U.S.C. § 1395y(a)(1)(A), no payments may be made under Medicare Part B for any items or services which are not reasonable and necessary for the diagnosis or treatment of illness or injury, or to improve the functioning of a malformed body part. 42 U.S.C. § 1395y(a)(1)(A). Accordingly, coverage determinations and reimbursement decisions are made by Medicare and its contractors, not by product suppliers.

The responsibility for compliance with Medicare billing and coverage requirements rests with the medical provider, not the supplier. *See, e.g.*, *Breeden v. Winberger*, 377 F.Supp. 734, 737 (M.D. La. 1974) ("[U]nder the Medicare provisions of the Social Security Act, Congress intended that the responsibility for determining what services the patient requires rests primarily with the treating physician."). Thus, any alleged oral assurances or representations by Legacy or its employees regarding reimbursement or billing cannot override the provider's independent statutory obligations.

## II.    LEGAL STANDARD

### A.    FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Dismissal of a counterclaim is proper under FED. R. CIV. P. 12(b)(6) where the counterclaim-plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc., et al.*, 995 F.Supp.2d 587, 597 (N.D. Tex. 2014); *see also Hunter v. Navy Fed. Credit Union*, 749 F.Supp.3d 743, 747 (N.D. Tex. 2024). "In considering a motion to dismiss under Rule 12(b)(6),

all factual allegations from the [counterclaims] should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party." *AHBP LLC v. Lynd Co., et al.*, 649 F.Supp.3d 371, 385 (W.D. Tex. 2023).

However, courts are not required to accept as true legal conclusions couched as factual allegations, nor are they required to accept unwarranted deductions of fact. *Ashcroft v. Iqbal*, 556 U.S 662, 678 (2009); *Hunter*, 749 F. Supp.3d at 747. Dismissal is justified where the claim's factual content does not "allow the court to draw the reasonable inference that the [counterclaim-defendant] is liable for the misconduct alleged." *Innova Hosp.*, 995 F.Supp.2d at 597-598 (quoting *Iqbal*, 556 U.S. 662 at 678). "The plausibility standard . . . asks for more than a sheer possibility that a [counterclaim-defendant] has acted unlawfully." *Id.* at 597. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Hunter*, 749 F.Supp.3d at 747.

Moreover, where the allegations in a pleading are contradicted by documents referenced or attached to the pleading, the court may properly disregard the allegations in favor of the documents. *In re Enron Corp. Secs., Derivative & "ERISA" Litig.*, 238 F.Supp.3d 799, 815 (S.D. Tex. 2017).

### B.     BREACH OF CONTRACT

"The elements of breach of contract under Texas law are: (1) the existence of a valid contract; (2) performance or tendered performance by the [counterclaim-plaintiff]; (3) breach of contract by the [counterclaim-defendant]; and (4) damages sustained by the [counterclaim-plaintiff] as a result of the breach." *Hunter*, 749 F.Supp.3d at 748; *see also Innova Hosp.*, 995 F.Supp.2d at 602. "A breach of contract . . . only occurs when a party fails or refuses to perform an act that it expressly promised to do." *Innova Hosp.*, 995 F.Supp.2d at 602. "To plead a breach of contract claim, a [counterclaim-plaintiff] must identify a specific provision of the contract that

was allegedly breached." *Id.* Mere general references to the contract or to alleged oral representations are insufficient. Extrinsic or parol evidence may not be considered when the contract is unambiguous or contains a merger or integration clause. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019); *Bandera Drilling Co., Inc. v. Sledge Drilling Corp.*, 293 S.W.3d 867, 871 (Tex. App. —Eastland 2009, no pet.).

(i)    The Court should not consider extrinsic evidence to rewrite the plain terms of a contract

"The parol evidence rule bars consideration of evidence that contradicts, varies, or adds to the terms of an unambiguous written agreement." *Carrizo*, 590 S.W.3d at 483. "Evidence of prior or contemporaneous agreements is inadmissible as parol evidence when the contract is unambiguous." *Id.* "The parol evidence rule applies to writings that evidence the creation, modification, termination, or securing of a right or obligation under the contract." *Id.* In short, "extrinsic evidence can be considered only to interpret an *ambiguous* writing, not to create ambiguity." *Id.* (emphasis in original).

Likewise, extrinsic evidence may not be considered when "a contract contains a merger or integration clause, [because] the contract's execution presumes that all prior negotiations and agreements relating to the transaction have been merged into the contract, and [so,] it will be enforced as written and cannot be added to, varied, or contradicted by parol evidence." *Bandera Drilling Co., Inc.,* 293 S.W.3d at 871. "[W]hen the parties utilize a merger provision, the substance of any pre-execution negotiations, including the text of any prior drafts, is not permissible consideration absent pleading and proof of an ambiguity, fraud, or accident." *Id.* at 872. "[When] that situation is not present, [courts] cannot consider the parties' negotiations—including any prior drafts or oral promises." *Id.*

Moreover, Texas courts have repeatedly held that a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms, particularly where, as here, the contract contains an express integration clause. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424-25 (Tex. 2015).

(ii)    <u>The Court should disregard conclusory allegations contrary to Dr. Leeberg's own exhibits</u>

A court ruling on a 12(b)(6) motion "may rely on the [counterclaim], its proper attachments, documents incorporated into the [counterclaim] by reference, and matters of which a court may take judicial notice." *Walcott v. Sebelius, et al.*, 653 F.3d 757, 763 (5th Cir. 2011). "Where the allegations in the complaint are contradicted by facts established by documents attached as exhibits to the [counterclaim], the court may properly disregard the allegations." *In re Enron Corp. Secs., Derivative & "ERISA" Lit., et al. v. UBS PaineWebber, Inc., et al.*, 238 F.Supp.3d 799, 815 (S.D. Tex. 2017). Thus, "[w]hile it is true that [the Court] must accept all well-pleaded factual allegations as true for the purpose of a motion to dismiss, conclusory allegations and unwarranted deductions of fact are not admitted as true . . . when such conclusions are contradicted by facts disclosed by a document appended to the [counterclaim]." *Carter v. Target Corp.*, 541 Fed.App'x. 413, 417 (5th Cir. 2013).

In particular, where the contract and its attachments directly contradict the counterclaim-plaintiff's allegations regarding the parties' obligations or representations, the Court should disregard such allegations as a matter of law.

## C.    FRAUDULENT MISREPRESENTATION

"Under Texas law, there are two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement, which is when someone allegedly induces another to enter into a contract by using false representations." *AHBP LLC*,

6

649 F.Supp.3d at 388-389. "Although fraudulent misrepresentation and fraudulent inducement are separate causes of action, both have the same elements. These elements are: (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Id.* at 389.

To state a claim for fraud, the counterclaim-plaintiff must plead these elements with particularity, including the specific content of the alleged misrepresentation, the identity of the speaker, when and where the statement was made, and why it was false. *See Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (applying Rule 9(b)).

> (i)     The counterclaim-plaintiff may not justifiably rely on alleged representations which are contrary to the unambiguous terms of her contracts

"To show fraud based on a promise of future performance, a plaintiff must also show that the person making the promise had no intention of performing at the time he made the promise. *Id.* (citing *Fluorine on Call Ltd. V. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004)). Further, to prove "reliance on the representation," the plaintiff must show both actual and justifiable reliance. *See Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015); *see also 5AIF Sycamore 2, LLC v. Beit Nes, LLC*, No. 1:19-cv-0431-RP, 2022 WL 2903122, at *9 (W.D. Tex. Jan. 6, 2022); *Cleary v. American Airlines, Inc.*, No. 4:21-cv-00184-O, 2022 WL 5320126, at *5 (N.D. Tex. Jul. 22, 2022). When evaluating "justifiable reliance," Texas courts will consider whether the plaintiff (or counterclaim-plaintiff) is party to a written agreement: "as Texas courts have repeatedly held, a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms." *Nat'l Prop. Holdings, L.P.*, 453

S.W.3d at 424. "This is particularly true when the party had a reasonable opportunity to review the written agreement but failed to exercise ordinary care to do so." *Id.* at 425; *see also Cleary*, 2022 WL 5320126, at \*5. Courts will also look to see what the counterclaim-plaintiff knew about the alleged falsity of the statement: "if a party knows that a representation is false before acting upon it, he cannot reasonably rely on the misrepresentation and has no claim for fraud or negligent misrepresentation." *Highland Crusader Offshore Partners LP v. LifeCare Holdings Inc.*, 377 Fed.App'x. 422, 428 (5th Cir. 2010).

Moreover, where, as here, the written agreements contain express integration and non-reliance clauses, any alleged oral representations or assurances that contradict the contract's terms cannot, as a matter of law, form the basis for justifiable reliance or a fraud claim. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 424-25.

(ii)    Fraud claims arising solely from a contractual relationship must be dismissed

If an allegation of fraud arises solely from the parties' contractual relationship, the fraud claim must be dismissed. *See, e.g., Miller v. CitiMortgage, LLC*, 970 F.Supp.2d 568, 583-584 (N.D. Tex. 2013). "Thus, the economic loss rule 'generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract.'" *Id.* at 584 (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007). "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract itself." *Id.* at 584.

Here, Defendant's fraud claims are based entirely on alleged representations regarding the same subject matter as the parties' contracts—namely, payment obligations and product use.

8

Because these claims do not arise from any independent legal duty, but rather from the contractual relationship itself, they are barred by the economic loss rule and must be dismissed as a matter of law.

### D.     FEDERAL RULE OF CIVIL PROCEDURE 9(b)

"Claims alleging fraud and fraudulent inducement are [also] subject to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *AHBP*, 649 F.Supp.3d at 385; *see also Miller*, 970 F.Supp.2d at 582-583. Under Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *AHBP LLC*, 649 F.Supp.3d at 385 (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). "Directly put, the who, what, when, and where must be laid out." *Id.* "Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Id.* A conclusory explanation that "Defendant's representations were fraudulent because Defendant never intended . . . to honor its promises" is "not sufficient to plead a claim of fraud . . . with the particularity that Rule 9(b) requires." *Miller*, 970 F.Supp.2d at 583.

Moreover, Rule 9(b) applies not only to affirmative claims of fraud, but also to counterclaims and defenses sounding in fraud. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

In addition, Texas law is clear that a party to a written contract cannot justifiably rely on alleged oral misrepresentations that contradict the contract's unambiguous terms, particularly where the contract contains an express integration clause. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 424-25. Thus, even if a counterclaim pleads the elements of fraud, it must also satisfy

the heightened particularity standard of Rule 9(b) to survive dismissal. Accordingly, counterclaims sounding in fraud must be dismissed unless they meet both the substantive and heightened pleading requirements set forth above.

## III.    ARGUMENT

### A.    DEFENDANT'S BREACH OF CONTRACT COUNTERCLAIMS ARE WITHOUT ANY FACTUAL OR LEGAL BASIS

Defendant alleges that Legacy breached Paragraph 1 of the Agreements by selling to Defendant "human tissue and cell products that were non-conforming to their intended use as described in the IFU[1] furnished by Legacy to Leeberg." Def. Countercl. (Doc. 21), ¶¶ 56, 63, 70. According to Defendant, "[t]he IFU advised that the IMPAX Membrane required that the product must be applied with staples and that the product was designated for post-surgical application." *Id.* at ¶ 22. Dr. Leeberg alleges that "[d]espite the IFU's directive, Legacy . . . stated to Leeberg . . . that the IMPAX Membranes did *not* require that the product be applied with sutures, and that products were not solely for post-surgical application," and then sold her the product. *Id.* at ¶ 23 (emphasis added). She claims, "as a direct and proximate result of [this] breach of Paragraph 1 of the Agreement," *id.* at ¶ 57, she "applied the IMPAX Membrane . . . precisely in accordance with Legacy's explicit directives," *id.* at ¶ 30, "to qualified patients in her sole and exclusive medical judgment which services Medicare denied for compensation." *Id.* at ¶ 57.

### 1.    Counts I through III of Defendant's Counterclaims Rely on Facts Directly Contradicted by the Exhibits Attached to Them and the Unambiguous Terms of the Written Agreements

Defendant's breach of contract counterclaims rely on facts directly contradicted by the exhibits attached to them, and "[w]here the allegations in the complaint are contradicted by facts

---

[1] "IFU" stands for Instructions for Use.

established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *In re Enron Corp. Secs., Derivative & "ERISA" Lit.*, 238 F.Supp.3d at 815. Moreover, under Texas law, a party to a written contract cannot justifiably rely on an interpretation of the contract that is contradicted by the contract's unambiguous terms, particularly where, as here, the contract contains an express integration clause. *See Nat'l Prop. Holdings, L.P,*, 453 S.W.3d at 424-25.

First, Defendant alleges that the IFU she received from Legacy explicitly advised that "the product must be applied with staples or sutures and that the product was designated for post-surgical application." Def. Countercl. (Doc. 21), ¶ 22. Defendant attaches to her counterclaims the Impax IFU at Exhibit D. But Exhibit D directly contradicts her claim. The IFU states:

> **PRODUCT USE**
>
> **IMPAX Membrane** grafts are in sheet form. **IMPAX Membrane** is intended for use as Human Cell, Tissue, and Cellular Tissue-Based Product (HCT/P) for repair, reconstruction, replacement and/or <u>supplementation</u> by providing tissue in the form of scaffolding in partial and full-thickness acute and chronic wounds. <u>The IMPAX Membrane graft is intended to remain on the recipient and is absorbed into the wound bed. The graft is anchored based on the *physician's choice of fixation* including stables or sutures in surgical procedures when medically necessary</u>."

Def. Countercl. (Doc. 21), Ex. D, Impax IFU (emphasis added).

Dr. Leeberg's allegation that the Impax Amniotic Allograft "must be applied with staples or sutures" and that the product was designated only for "post-surgical application" is clearly belied by the actual IFU instructions, which explain that the product is intended to be absorbed into the open wound, and that it is "anchored based on the <u>physician's choice of fixation</u>." *Id.* Properly construed, this can only mean that the physician can anchor the graft by her "choice of fixation," which includes staples or sutures in surgical procedures, as medically necessary, but also with bandages to "remain on the recipient." Thus, the Court should disregard Defendant's

conclusory allegations that are directly contradicted by the IFU. *See In re Enron Corp. Secs., Derivative & "ERISA" Lit.*, 238 F.Supp.3d at 815. Further, the written Agreements between the parties expressly state that use of any product is at the sole discretion of the treating provider, and payment is due upon shipment, foreclosing any claim based on alleged lack of reimbursement of the product by Medicare. Def. Countercl. (Doc. 21), Exs. A-C, §§ 4, 6.

In addition, the Agreements contain no provision conditioning payment on successful reimbursement, nor do they reference any guarantee of insurance or Medicare payment.

Absent Defendant's contradictory allegations that the IFU said one thing, and supposed agents of Legacy said another, all three of her breach of contract counterclaims must fail as a matter of law. Defendant's alleged breach was that "[d]espite the IFU's directive, Legacy . . . stated to Leeberg . . . that the IMPAX Membranes did *not* require that the product be applied with sutures, and that products were *not* solely for post-surgical application," and then sold her the product anyway knowing it was not suitable for use. Def. Countercl. (Doc. 21) at ¶¶ 23, 30, 56-58. But Legacy's alleged statements do not contradict the IFU. Legacy instructed Leeberg consistently with it. *Id.* at ¶ 23. Consequently, even assuming as true that the IFU was properly incorporated into the contracts in the first instance, which Dr. Leeberg failed to allege and Legacy contests, the breach of contract claims fail on their face because Legacy did not breach an IFU when it counseled its customer consistent with its terms. These include her medical determination that the product as applied was "safe and effective" for patients. *See* MEDICARE PROGRAM INTEGRITY MANUAL ("PIM"), Ch. 13, § 13.5.4.

Furthermore, Count II of Dr. Leeberg's counterclaims would fail in its own right for factual contradiction because the agreement at issue in Count II is for Zenith membrane, not Impax. Dr. Leeberg's allegations of breach hinge upon Legacy's misrepresentations regarding

the Impax IFU, not the Zenith IFU. Compare Def. Countercl. (Doc. 21), ¶¶ 60-66 with id. at Ex. B.

Lastly, even assuming the IFU is incorporated into the Agreements' terms, Defendant's counterclaims are barred by the parol evidence rule and the express integration clauses in the parties' Agreements, which preclude reliance on any alleged oral representations that contradict the written terms. *See Carrizo*, 590 S.W.3d at 483; *Bandera*, 293 S.W.3d at 871-72. By her counterclaim, Dr. Leeberg seeks to abdicate her contractual and legal obligation to determine "medical necessity" for her individual patients.[2] *See US ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 489 (3d Cir. 2017) ("[T]he doctors are best suited to evaluate each patient and determine whether a treatment is 'reasonable and necessary *for [that] individual patient.*'") (alterations and emphasis in original) (citation omitted).

Moreover, Texas law is clear that a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract's unambiguous terms, particularly where, as here, the contract contains an express integration clause. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 424-25.

> **2.    Counts I, II, and III Must Also Be Dismissed Because Leeberg Fails to Allege, Beyond Mere Speculation, That Legacy's Purported Breach Caused Her Damages**

---

[2] Not only was Dr. Leeberg contractually obligated to determine the medical necessity of grafts for her patients, but federal law also required that she certify each claim he submitted to Medicare as "medically necessary" for her individual patients and that she was submitting the claims in conformance with the applicable Medicare regulations and billing rules. 42 C.F.R. § 424.32(a)(i)(b) (requiring a doctor to file a form CMS - 1500 to request payment for medical services; CMS 1500 (2012), https://www.cms.gov/medicare/cms-forms/cms-forms/cms-formsitems/cms1188854 (requiring physicians to certify "the services on this form were medically necessary"). As the healthcare provider offering wound care services and attesting to the medical necessity of those services, the responsibility of determining medical necessity and proper billing fell solely on Dr. Leeberg's shoulders after his evaluation of each patient's medical condition.

For a breach of contract claim to survive under Texas law, the damages alleged must have resulted from the breach. *Hunter*, 749 F.Supp.3d at 748; *see also Innova Hosp.*, 995 F.Supp.2d at 602.

Dr. Leeberg alleges in all three counts that "[a]s a direct and proximate result of Legacy's material breach . . . Medicare denied for compensation." Def. Countercl. (Doc. 21), ¶¶ 57, 64, 71. She alleges that "Medicare's denial was . . . based on the product not being utilized in accordance with the terms of the IFU," *id.* at ¶¶ 58, 65, 72, which she claims would not have happened but for Legacy telling her one thing while the Impax Membrane IFU said another. *See id.* at ¶ 23, 30. These threadbare allegations are insufficient to prove causation as a matter of law.

First, the Impax IFU makes clear that the membrane is "restricted to use by or on the order of a licensed healthcare professional" and only to be used "when medically necessary." *Id.* at Ex. B. Second, under the Agreements, Leeberg acknowledges that the "use of any Product is at the sole discretion of the treating provider, pursuant to his or her professional medical judgment." *Id.* at Exs. A-C, § 4. She further agreed: "Customer will treat the patient as medically necessary." *Id.* Thus, the contracts and IFU both place the responsibility for proper application and billing on the provider, not the supplier. Indeed, Dr. Leeberg admits she "provided acute and chronic wound care services to qualified patients **in her sole and exclusive medical judgment**." *Id.* at ¶ 57 (emphasis added). This is consistent with the Medicare regulations that require the medical provider to determine and certify medical necessity. *See supra* at 11n.2 (requiring a doctor to certify in a form CMS – 1500 as to medical necessity to request payment for medical services).

Additionally, the Medicare denial letters attached by Dr. Leeberg confirm that the denials were based on her failure to establish medical necessity, not on any alleged breach by Legacy.

Second, the denial letters Leeberg attaches at Exhibit E to her counterclaims make clear that she caused her own Medicare denials. Specifically, all four denial letters state on page 2: "These services are non-covered services because this is not deemed a 'medical necessity' by the payer." Def. Countercl. (Doc. 21), Ex. E. Medical necessity is the responsibility of the provider, not the supplier. *Breeden*, 377 F.Supp. 734 at 737 ("[U]nder the Medicare provisions of the Social Security Act, Congress intended that the responsibility for determining what services the patient requires rests primarily with the treating physician."). At least in some of the denials the Medicare contractor faulted Dr. Leeberg for failing to adequately document the medical necessity of the use of the graft. For example, in the October 4, 2022 appeal, Medicare noted that under the applicable LCD the service "must include an operative note or procedure note for the debridement service that included" the medical diagnosis indications and necessity for the debridement, wound characteristics, and narrative the procedure. Def. Countercl. (Doc. 21), Ex. E, Oct. 4, 2022 Appeal, p.3. Medicare concluded that doctor Dr. Leeberg's documentation "did not support the character of the wound before or after debridement" *Id.*[3] Dr. Leeberg cannot now abdicate her responsibilities as a medical provider and blame Legacy for her failure to properly use the product and document medical necessity for her Medicare claims.

Finally, the four denial letters Dr. Leeberg attaches to her counterclaims are for Zenith™, not Impax™. Dr. Leeberg alleges at paragraphs 70-71 of her counterclaims that Medicare denied her claims for Impax™ due to non-conforming use, but she does not attach any exhibits in support of this allegation. The only denials she attaches are for Zenith.[4] *See Gateway Foot and*

---

[3] Dr. Leeberg's scurrilous allegations that Legacy "was under investigation" by a "grand jury investigation" and that its representatives were "indicted on charges of fraud" should be stricken as they are not only scandalous and prejudicial, but irrelevant to the breach of contract claims.

[4] To the extent that Dr. Leeberg contends that Legacy's products were "experimental" (Def. Countercl. ¶ 26), that assertion is flatly contradicted by both Local Coverage Determinations as

*Ankle Center, PLC, OMHA* Appeal No. 314566262021 (OMHA A. L. J. April 8th, 2025), attached hereto as Exhibit B in the accompanying appendix. As Judge Scott observed "CMS has long recognized skin substitute products such as [Legacy's] Impax, as the standard of care for non-healing wounds." *See* Countercl. (Doc. 21) at Ex. E. If Dr. Leeberg applied Zenith in accordance with an IFU for Impax, that is similarly not Legacy's responsibility; Legacy cannot be said to have legally caused the denials under these circumstances, and such a theory is both factually and legally deficient.

### B. DEFENDANT'S FRAUD COUNTERCLAIMS ARE WITHOUT FACTUAL OR LEGAL BASIS

#### 1. Count V (Fraudulent Misrepresentation) Must Be Dismissed Because It Is Just a Repackaged Breach of Contract Claim and Because It is Without Factual or Legal Basis

##### (i)    The economic loss rule precludes Count V

The economic loss rule precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract. *Miller v. CitiMortgage, LLC*, 970 F.Supp.2d 568, 584 (N.D. Tex. 2013). Defendant's fraud claim at Count V is nothing more than a repackaged breach of contract claim, and since it arises solely from the parties' contractual relationship, the fraud claim must be dismissed. *Id.* at 583-584. "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: (1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and (2) whether the injury is only the economic loss to the subject of the contract itself." *Id.* at 584.

Defendant alleges that Legacy is liable for fraudulent misrepresentation, a tort, because it violated the Agreements. Def. Countercl. (Doc. 21), ¶¶ 81-88 (Count V). Specifically, she claims

---

well as Medicare Administrative Law Judge ("ALJ") opinions. As one ALJ put it, Legacy's Impax products are covered by Medicare and are "not experimental and investigational", but rather "safe and effective when used for chronic non-healing wounds...."

Legacy, by and through alleged agents, fraudulently misrepresented the terms of the Impax IFU by instructing Dr. Leeberg to "apply the IMPAX Membrane products in manners that did not comport with the IFU's directives[.]" Id. Dr. Leeberg claims Medicare denied her claims for reimbursement because of Legacy's alleged misrepresentations about its products' use. *Id.* at ¶¶ 87-88. These allegations are virtually identical to those in Counts I through III, which sound solely in contract, not tort and, therefore, must be dismissed under the economic loss rule.

Count V satisfies the *Miller* factors: (1) the claim is for a breach of duty created by the contract rather than for a breach of duty imposed by law, that is, the misrepresentation alleged concerns a document Dr. Leeberg contends was part of her contract with Legacy; and (2) the damages alleged are simply economic losses stemming from the contract, that is, Medicare denials for products purchased pursuant to the Agreements. For these reasons, Count V is really just a repackaged version of Dr. Leeberg's breach of contract counterclaims.

Additionally, Texas courts have repeatedly held that the economic loss rule bars tort claims where the alleged misrepresentations relate to the subject matter of the contract and do not arise from an independent legal duty. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).

(ii)    Leeberg has failed to plausibly allege that Legacy made any false representation about the products' use and there is no justifiable reliance.

The elements of fraudulent misrepresentation are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *AHBP LLC v. Lynd Co., et al.*, 649 F.Supp.3d 371, 389 (W.D. Tex. 2023). Because her own exhibits

and the unambiguous contract language directly contradict her allegations, Dr. Leeberg has failed to allege with well-pleaded facts that Legacy made any false representation about its products' use or that she justifiably relied upon those representations.

Dr. Leeberg first alleges that Legacy, by and through alleged agents, misrepresented the terms of the Impax IFU. Def. Countercl. (Doc. 21), ¶¶ 81-88. There is no falsity. By her own admission, Legacy's agent[5] explained to her exactly what the IFU says. *Compare* Def. Countercl. (Doc. 21), ¶ 23 *with* Ex. D. The plain language of the Impax IFU, attached as Exhibit D, expressly says that Impax™ is to be anchored based on the physician's "choice of fixation." Def. Countercl. (Doc. 21), Ex. D. This may include staples or sutures, as medically necessary, but may also include other forms of fixation such as bandage. *Id.* By her own admission, Legacy's alleged agent echoed the IFU—that its human tissue products are not solely required to be affixed to the patient with staples or sutures, and the products are not limited to just post-surgical use. Def. Countercl. (Doc. 21), ¶ 23.

Furthermore, the IFU and the written agreements both expressly state that the use of the product is at the sole discretion of the treating provider, and payment is due regardless of reimbursement.

Moreover, as a sophisticated, "board certified" medical provider with over twenty-five (25) years' experience, Def. Countercl. (Doc. 21) ¶ 5, she cannot justifiably rely upon any alleged oral representations by Legacy. Reliance is not justifiable as a matter of law where, as here, the written IFU and the parties' integrated agreements unambiguously contradict the alleged oral representations. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 424 ("a party to a

---

[5] Assuming *arguendo* that Dr. Leeberg properly alleged agency, which Legacy contests, she still fails to allege that Legacy made any actionable false representations because what she claims Legacy told her is consistent with the IFU.

written contract cannot justifiably rely on oral misrepresentations regarding the contracts unambiguous terms."). "While it is true that [the Court] must accept all well-pleaded factual allegations as true for the purpose of a motion to dismiss, conclusory allegations and unwarranted deductions of fact are not admitted as true . . . when such conclusions are contradicted by facts disclosed by a document appended to the complaint." *Carter v. Target Corp.*, 541 Fed.App'x. 413, 417 (5th Cir. 2013).

Accordingly, Count V must be dismissed because Dr. Leeberg cannot establish either a false representation or justifiable reliance as a matter of law.

> **2.    Count IV Must Be Dismissed Because It Also Rests on Alleged Oral Representations Contrary to Dr. Leeberg's Unambiguous Contract and Because it Fails to Meet the Standards Per Federal Rule of Civil Procedure 9(b).**

Count IV to Dr. Leeberg's counterclaims fails to state a claim upon which relief can be granted because she fails to allege facts showing justifiable reliance. Dr. Leeberg alleges that "[b]eginning in March of 2022 . . . Legacy, by and through its agents Rick Longwood [sic] and Brian Rowan, advised and 'guaranteed' Dr. Leeberg that any and all claims which Medicare rejected relating to Dr. Leeberg's use of human cell and tissue products from Legacy would not be pursued for collection by Legacy." Def. Decl., ¶ 75.

First, Defendant's counterclaims do not allege, nor can they establish, that either Biran Rowan or Rick Logwood had actual or apparent authority to bind Legacy with respect to any such representations. The counterclaims are devoid of any factual allegations supporting an agency relationship or authority to make binding promises on behalf of Legacy, in conflict with the strict payment terms in the Agreements.

Second, this alleged "guarantee" is not reflected in any of the written Agreements at Exhibits A, B, or C. Thus, any reliance she placed in it is not justified as a matter of law. She

claims that "[i]n reliance upon Legacy's fraudulent misrepresentations, Leeberg agreed to enter into several contractual agreements with Legacy and failed to tender payment upon to Legacy, relating to its sale of Impax and Zenith Membrane products, on denied claims in reliance upon Legacy's 'guarantee' that [it] would forgo collection of compensation upon such claims." *Id.* at ¶ 79. The Agreements' express integration clauses bar any claim based on such pre-contractual oral promises. Def. Countercl., Exs. A, B, C, § 7. Indeed, the contracts specifically say that payment is due upon shipment without any reference to potential of insurance reimbursement status. *Id.* at § 6.

Texas law is clear that a party to a written contract cannot justifiably rely on oral misrepresentations that contradict the contract's unambiguous terms, especially where the contract contains an express integration clause. *See Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 424-25.

To avoid this, Dr. Leeberg tries to claim that "Leeberg's justifiable reliance upon Legacy's verbal guarantees was . . . rooted in Legacy's 'prior authorization' process whereby Legacy would verify that a patient's insurance provider would pre-authorize payment for services." Def. Countercl. (Doc. 21), ¶ 33. She alleges that "[o]nce pre-authorization was obtained, medical providers like Leeberg, by and through PIM, would proceed with treating their patients accordingly." *Id.* at ¶ 34 But pre-authorization of Medicare claims does not exist under federal law. *See* 42 U.S.C. § 1395y(a)(1)(A). Nor does it exist under the terms of her Agreements. Def. Countercl. (Doc. 21), Exs. A, B, C.

The word "pre-authorization" is contained nowhere within the Agreements. *Id.* That said, assuming *arguendo* that Leeberg is actually referring to Legacy's Insurance Verification Request ("IVR"), which is referenced in her Agreements, (Agreements at ¶ 2), Dr. Leeberg's claims fail

20

because her allegations are directly contradicted by the express terms of the IVR. Attached hereto as Exhibit A is a true and correct copy of the express terms of Legacy's "Patient Insurance Verification and Prior Authorization Request Form" in effect for the Zenith™ and Impax™ which the Court may consider even though not formally attached to Dr. Leeberg's counterclaims, because both Dr. Leeberg and the Agreement makes reference to it. *Walcott v. Sebelius, et al.*, 653 F.3d 757, 763 (5th Cir. 2011).

The terms of the Legacy IVR are clear—it only verifies that the patient's insurance benefits are active and does not guarantee coverage or payment:

> Legacy Medical offers insurance verification as an information service only. Information gathered during the requested research will be provided by the insurer or third-party payer. **Results of this research are not a guarantee of coverage or reimbursement in the future**. Legacy Medical disclaim liability for payment of any claims, benefits, or costs.

Ex. A. (emphasis added). In sum, because the so-called no collection action guarantee conflicts directly with the Agreements explicit payment terms as well as the integration clause, there is no justifiable reliance. *Nat'l Prop. Holdings, L.P.*, 453 S.W.3d at 424.

Finally, Count IV fails to comply with Rule 9(b). Under 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *AHBP LLC*, 649 F.Supp.3d at 385 (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). "Directly put, the who, what, when, and where must be laid out." *Id.* "Facts and circumstances constituting charged fraud must be specifically demonstrated and cannot be presumed from vague allegations." *Id.*

Here, Dr. Leeberg's allegations are vague and conclusory; she does not allege with particularity when the allegedly fraudulent statements were made, whether they were made before each of the Agreements, what was specifically said, or how the statements were made. *See* Def. Countercl., ¶¶ 31, 74-80. Indeed, her allegations are inconsistent on their face, as she alleges that Legacy was "aware . . . of Medicare's denials [but] pursue[d] collection against Leeberg and PIM for payment [.]" *Id.* at 38. In sum, Dr. Leeberg alleges, on the one hand, that "Legacy never intended to forego collection for compensation relating to its sale of human cell and tissue products." *Id.* at ¶ 76. But on the other, she acknowledges that Legacy pursued collections after it was aware of the insurance denials. *Id.* at ¶ 38. "To show fraud based on a promise of future performance, a plaintiff must also show that the person making the promise had no intention of performing at the time he made the promise." *AHBP LLC*, 649 F.Supp.3d at 385 (citing *Fluorine on Call Ltd. V. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004)). But a conclusory allegation that "Defendant's representations were fraudulent because Defendant never intended . . . to honor its promises" is "not sufficient to plead a claim of fraud . . . with the particularity that Rule 9(b) requires." *Miller*, 970 F.Supp.2d at 583. For these reasons, Count IV must be dismissed for failure to state a claim or for lack of specificity in the alternative.

In summary, both Count IV and Count V fail as a matter of law because Dr. Leeberg cannot establish justifiable reliance, falsity, or the heightened pleading requirements for fraud.

## IV.    CONCLUSION

For the foregoing reasons, and because the counterclaims are foreclosed by the unambiguous terms of the parties' written agreements, the attached IFU, and the undisputed Medicare correspondence, Legacy respectfully requests that this Court dismiss all of Dr. Leeberg's counterclaims with prejudice. The factual and legal deficiencies are fundamental, cannot be cured by amendment, and any further attempt to replead would be futile. *See, e.g.*,

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Dismissal with prejudice is warranted to uphold the integrity of written contracts and to bring finality to this dispute.

Dated: September 25, 2025.                Respectfully submitted,

**BLANK ROME LLP**

*/s/ Megan A. Altobelli*
Gregory J. Moore (*NDTX adm'n pending*)
Texas Bar No. 24055999
Audrey F. Momanaee
Texas Bar No. 24055993
Fed Bar No. 724132
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com
Audrey.Momanaee@BlankRome.com

-and-

Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on all parties and counsel of record through the Court's CM/ECF filing system on this 25th day of September, 2025, in accordance with the Fed. R. Civ. P. 5(b)(2).

*/s/ Megan A. Altobelli*
Megan A. Altobelli

23