**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC,** | § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **No. 4:25-cv-00319-P** |
| **CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC,** | § § § | |
| **Defendant.** | § § | |
| **and** | § § | |
| **CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC,** | § § § | |
| *Counter-Plaintiff,* | § § | |
| **v.** | § § | |
| **LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC,** | § § § § | |
| *Counter- Defendant.* | § | |

**DEFENDANT/COUNTER-PLAINITFF'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF/COUNTER-DEFENDANT'S MOTION TO DISMISS COUNTERCLAIMS**
**[ECF 23]**

**THE LEAL LAW FIRM, LLC**
14180 N Dallas Pky, Suite 300
Dallas, Texas 75254
Telephone: (214) 395-5325
**ABEL A. LEAL**
Texas Bar No. 24026989
E-mail: abel@leal.law
**TIMOTHY M. RUTLEDGE**
Texas Bar No. 24060538
E-mail: tim@leal.law


**ZARCO EINHORN SALKOWSKI, P.A.**
2 S. Biscayne Blvd., Suite 3400
Miami, Florida 33131
**ROBERT M. EINHORN**
(*seeking pro hac vice admission*)
E-mail: reinhorn@zarcolaw.com
Secondary: imorfi@zarcolaw.com
**ALEC R. SHELOWITZ**
(*seeking pro hac vice admission*)
Email: ashelowitz@zarcolaw.com
Secondary: agarcia@zarcolaw.com

**ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF CRISTI LEEBERG**

# **TABLE OF CONTENTS**

I.    INTRODUCTION    …………………………………………….... 1

II.   LEGAL ARGUMENT    ……………………………………….. 2

    A.    LEGAL STANDARD    ……………………………………… 2

    B.    LEEBERG'S FRAUDULENT MISREPRESENTATION CLAIMS PLED WITH SPECIFICITY    ………………………………………….....4

    C.    ECONOMIC LOSS RULE DOES NOT BAR FRAUDULENT MISREPRESENTATION CLAIM IN COUNT V …………..………..5


    D.    LEEBERG'S RELIANCE UPON LEGACY'S FRAUDULENT MISREPRESENTATIONS WAS JUSTIFIED …………………….....7

        (i)    Rowan And Longwood Exhibited Apparent Authority To Bind Legacy ……………………………………………………..9

        (ii)    Guarantee Language Unnecessary For Leeberg To Justifiably Rely Upon The Same …………………………………………10

        (iii)    Agreement's Integration Clauses Do Not Bar Claims For Fraudulent Misrepresentation…..…………………………… 11


    E.    LEEBERG'S CONTRACT CLAIMS NOT CONTRADICTED BY EXHIBITS ……………………………………………………... 13

    F.    LEGACY'S MATERIAL BREACHES WERE CAUSE OF LEEBERG'S DAMAGES …………………………………………… 14


III.   CONCLUSION ………………………………………………... 15

## **TABLE OF AUTHORITIES**

**Cases**

*AKB Hendrick, LP v. Musgrave Enters., Inc.,* 380 S.W.3d 221, 232
(Tex. App. 2012) ........................................................................................ 9

*Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ............3

*Baptist Mem. Hosp. Sys. v. Sampson,* 969 S.W.2d 945, 948 (Tex. 1998) ........................9

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929
(2007) ..........................................................................................................3

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,* 343 F.3d 719, 724 (5th Cir. 2003) ............ 3

*Biliouris v. Sundance Res., Inc.,* 559 F. Supp. 2d 733, 736 (N.D. Tex. 2008) ................. 3

*Campbell v. Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir. 1986) ........................ 2

*Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.,* 88 F.3d 347, 358
 (5th Cir. 1996) ........................................................................................... 11

*Container Store, Inc. v. Fortna Inc.,* No. 3:20-CV-2893-B, 2021 WL 1250334, at *5
(N.D. Tex. Apr. 5, 2021) ............................................................................ 5

*Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 339 (5th Cir. 2008) ............................ 4

*Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41,
46 (Tex. 1998) ........................................................................................... 5

*Gaines v. Kelly,* 235 S.W.3d 179, 182 (Tex. 2007) .................................................... 9, 10

*Hale v. King,* 642 F.3d 492, 499 (5th Cir. 2011) ............................................................ 3

*Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.,* 920 F.3d 890, 899
 (5th Cir. 2019) ........................................................................................... 2

*Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n,* No. 3:22-CV-2805-L-BH, 2023
WL 5022287, at *6 (N.D. Tex. July 21, 2023) ............................................ 6

*Lewis v. Fresne,* 252 F.3d 352, 357 (5th Cir. 2001) ...................................................... 2

*Mead v. Johnson Grp.,* 615 S.W.2d 685, 687 (Tex. 1981) .............................................. 14

*Nat'l Prop. Holdings, L.P. v. Westergren,* 453 S.W.3d 419, 425 (Tex. 2015) ................ 8

*Natarajan v. Alpha Thought Global, Inc.,* 2005 WL 8158160, at *9
(N.D. Tex. 2005) ....................................................................................... 10

*Overseas Carriers, Inc. v. Team Ocean Servs.-Dallas, Inc.,* 2013 WL 76300, at *14
(S.D. Tex. 2013) ........................................................................................ 10

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

*Santos v. Mid-Continent Refrigerator Co.,* 471 S.W.2d 568, 569 (Tex. 1971) .............. 12

*Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 179 (Tex. 1997) ................... 12

*Scottish Heritable Tr., PLC v. Peat Marwick Main & Co.,* 81 F.3d 606, 615
(5th Cir. 1996) ........................................................................................................ 11

*Shafipour v. Rischon Dev. Corp.,* No. 11-13-00212-CV, 2015 WL 3454219, at *8
(Tex. App.–Eastland May 29, 2015, pet. denied) ............................................................ 8

*Shakeri v. ADT Sec. Services, Inc.,* 816 F.3d 283, 296 (5th Cir. 2016) ......................... 12

*Shushany v. Allwaste, Inc.,* 992 F.2d 517, 520 (5th Cir. 1993) ......................................... 3

*Smith Int'l, Inc. v. Egle Group, LLC,* 490 F.3d 380, 387 (5th Cir. 2007) ........................13

*Turner v. Pleasant,* 663 F.3d 770, 775 (5th Cir. 2011) ...................................................... 3

*United States ex rel. Willard v. Humana Health Plan of Texas,* 336 F.3d 375, 384
(5th Cir. 2003) ..........................................................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6)……………………………………………………………………… 2

Fed. R. Civ. P. 9(b).…………………………………………..……………......2, 3, 4, 5

**Restatements**

Restatement (Third) of Agency § 1.03 cmt. b, d (Am. L. Inst. 2006)…………………… 9

Restatement (Third) of Agency § 2.03 cmt. c (Am. L. Inst. 2006)………………… 9, 10

v

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

Defendant/Counter-Plaintiff, CRISTI LEEBERG d/b/a PRACTITIONERS IN MOTION, PLLC ("Leeberg"), by and through undersigned counsel, hereby files her Response in Opposition to Plaintiff/Counter-Defendant, LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC ("Legacy") Motion to Dismiss Counterclaims [ECF 23], and as grounds therefore states as follows:

## I. INTRODUCTION.

Leeberg's Counterclaim arises out of three Fulfillment and Rebate Agreements (the "Agreements") between Legacy and Leeberg relating to Legacy's sale of human cell and tissue products to Leeberg which were intended to be utilized for treating patients requiring acute and chronic wound care. Leeberg and Legacy ultimately entered into five (5) such Agreements which memorialized the terms of the party's relationship, including its payment terms. To secure Leeberg's business, Legacy, by and through its apparent agents, Brian Rowan and Rick Longwood, tendered two fraudulent misrepresentations upon which Leeberg justifiably relied to her detriment. Initially, Legacy verbally "guaranteed" it would forego collection upon its invoices for its products if Leeberg's claims for compensation were denied by Medicare or other insurance companies– such representations were tendered to Leeberg before each Agreements' execution. Second, Legacy knowingly furnished Leeberg with inaccurate Information for Use ("IFU") documents which were furnished to desirbe the manner in which Legacy's products were intended to be applied upon patients. After knowingly furnishing Leeberg with the inaccurate IFU's, Legacy directed Leeberg to disregard its contents and follow its directives regarding its products' proper application. After doing so and submitting claims for compensation, Medicare and other insurance companies denied Leeberg's claims because the products were not properly applied and were utilized in manners inconsistent with their intended purpose.

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

In connection with Legacy's material breaches of the Agreements and its knowingly fraudulent misrepresentations, Leeberg asserts her instant Counterclaims. In a misguided effort to seek their dismissal, Legacy throws the proverbial kitchen sink of arguments for dismissal–none of which carry the day. Indeed, Leeberg alleges each of her fraudulent misrepresentation claims with sufficient particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, her fraud claims are not barred by the Agreements' barebones integration clauses as matter of well-established Texas law because they do not expressly disclaim Leeberg's reliance upon Legacy's prior representations, and Leeberg's reliance upon Legacy's fraudulent misrepresentations was wholly justified. Further, Leeberg sufficiently alleges that Legacy furnished her with non-conforming human cell and tissue products in material breach of the Agreements and that Legacy's material breaches were the underlying cause of Leeberg's damages. As set forth in detail below, Legacy's Motion to Dismiss must be denied and it must be ordered to answer Leeberg's Counterclaims.

## II. LEGAL ARGUMENT

### A. LEGAL STANDARD.

Rule 12(b)(6) allows a party to move to dismiss a claim for relief if the party fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12 (b)(6). In evaluating a Rule 12(b)(6) motion, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-movant. *See Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986)). "Further, 'all questions of fact and any ambiguities in the controlling substantive law must be resolved in the p[arty]'s favor.' " *Id.* (quoting *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)).

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

"The well-pleaded facts must permit the court to infer more than the mere possibility of misconduct." *See Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). That is, "the complaint must allege enough facts to move the claim across the line from conceivable to plausible." *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Determining whether the plausibility standard has been met is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 663–64, 129 S.Ct. 1937).

Further, a claim for common law fraud must meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Biliouris v. Sundance Res., Inc.*, 559 F. Supp. 2d 733, 736-37 (N.D. Tex. 2008). "A dismissal for failure to state fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim," and so the Court "must accept the complaint's well-pleaded factual allegations as true." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520 (5th Cir. 1993).

"At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quotation omitted). "Put simply, Rule 9(b) requires the who, what, when, where, and how to be laid out." *Id.* (quotation omitted). The Fifth Circuit has further explained that, "[a]lthough Rule 9(b) expressly allows scienter to be 'averred generally', simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)" and that "[t]he

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

plaintiffs must set forth specific facts supporting an inference of fraud." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (internal quotation marks and citations omitted). "Facts that show a defendant's motive to commit the fraud may sometimes provide a factual background adequate for an inference of fraudulent intent." *United States ex rel. Willard v. Humana Health Plan of Texas*, 336 F.3d 375, 385 (5th Cir. 2003).

### B. LEEBERG'S FRAUDULENT MISREPRESENTATION CLAIMS PLED WITH SPECIFICITY.

Through her Counterclaim, Leeberg sufficiently pleads her fraudulent misrepresentation claims with specificity. Indeed, the Counterclaim alleges the time, place and contents of the fraudulent misrepresentations at issue: (i) Legacy's guarantee to forego collection on any and all claims Medicare or other insurance companies denied relating to Leeberg's use of Legacy's human cell and tissue products; and (ii) Legacy's knowing production of inaccurate IFU's to Leeberg relating to the manner of application for its products.

With respect to Legacy's fraudulent misrepresentation that it "guaranteed" it would forego payment from Leeberg upon her denied claims for compensation from Medicare or insurance companies, Leeberg alleges that beginning March of 2022 and through June 2024, Legacy, by and through its agents Rick Longwood and Brian Rowan verbally guaranteed that it "would not seek compensation upon any claims that were denied by Medicare of any other insurance company." [ECF 21, ¶ 31]. Leeberg alleges that this misrepresentation was initially tendered before she entered into her first Agreement with Legacy on July 25, 2022, and continued to be tendered by Legacy thereafter and prior to Leeberg's execution of the subsequent Agreements. [ECF 21-1-3]. Thus, the Counterclaim alleges with particularity the time, manner and content of the Legacy's fraudulent misrepresentation in accordance with Rule 9(b) of the Federal Rules of Civil Procedure and Texas law.

Leeberg also pleads with sufficient particularity Legacy's fraudulent misrepresentation as to its production of the inaccurate IFU. Specifically, Leeberg alleges that beginning in March 2022 and continuing through June 2024, "Legacy, by and through its agents, Rick Longwood and Brian Rowan, furnished Leeberg with its IFU relating to its sale of IMPAX and Zenith membrane products…" [ECF 21, ¶ 82]. Thereafter, on March 12, 2024, Longwood and Rowan acknowledged through a remote video conference meeting with Leeberg that Legacy knew the IFU's it previously furnished were inaccurate and that an accurate Addendum would be furnished to the Centers for Medicare and Medicaid Services. [ECF 21, ¶ 40]. Leeberg therefore alleges with specificity the time, place and content of Legacy's fraudulent misrepresentation relating to the inaccurate IFU's as required under Rule 9(b).  Accordingly, Counts IV and V state valid claims for fraudulent misrepresentations as they are with sufficient specificity.

### C. ECONOMIC LOSS RULE DOES NOT BAR FRAUDULENT MISREPRESENTATION CLAIM IN COUNT V.

The Texas Supreme Court has carved out an exception to the economic loss rule for fraudulent inducement claims, reasoning that an independent legal duty exists not to fraudulently procure a contract. *See Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d 41, 46 (Tex. 1998). If the plaintiff can present legally sufficient evidence of all elements of a fraudulent inducement claim, the plaintiff's damages sound in tort, not contract. *Formosa Plastics*, 960 S.W.2d at 47. Tort damages are not precluded simply because a fraudulent representation causes only an economic loss. *Formosa Plastics*, 960 S.W.2d at 47.

> Allowing the recovery of fraud damages sounding in tort only when a plaintiff suffers an injury that is distinct from the economic losses recoverable under a breach of contract claim is inconsistent with this well-established law, and also ignores the fact that an independent legal duty, separate from the existence of the contract itself, precludes the use of fraud to induce a binding agreement.
> *Id.*

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

Therefore, if a plaintiff presents legally sufficient evidence of each element of a fraudulent inducement claim, any damages suffered as a result of the fraud sound in tort. *Id.* Further, "[s]everal courts in the Fifth Circuit have held that [the economic loss rule] does not apply to fraud claims." *Ison-Newsome v. JPMorgan Chase Bank, Nat'l Ass'n*, No.3:22-CV-2805-L-BH, 2023 WL 5022287, at *6 (N.D. Tex. July 21, 2023) (Ramirez, J.) (collecting cases and holding that economic loss doctrine did not bar fraudulent misrepresentation claim), *adopted by* 2023 WL 5022681 (Aug. 7, 2023) (Lindsay, J); *see Container Store, Inc. v. Fortna Inc.,* No. 3:20-CV-2893-B, 2021 WL 1250334, at *5 (N.D. Tex. Apr. 5, 2021) (Boyle, J.) ("Under Texas law, the economic-loss rule does not bar fraudulent inducement claims."). "This is because 'parties to a contract have an independent legal duty not to commit the intentional tort of fraud" *Ison-Newsome*, 2023 WL 5022287, at * 6. Accordingly, the economic loss rule does not, alone, bar Leeberg's fraudulent misrepresentation claims.

Leeberg's fraudulent misrepresentation claims are not based upon duties which arise out of the Agreements, but rather the substance of the IFU's relating to the proper application of Legacy's human cell and tissue products for which Legacy possessed an independent legal duty to furnish Leeberg with accurate records. Leeberg alleges that Legacy, by and through its agents Rick Longwood and Brian Rowan, advised her at the end of 2023 to apply its products in manners that did not comport with the inaccurate IFU's Legacy originally furnished and that Legacy knew at such time(s) that the IFU was inaccurate. [ECF 21, ¶¶ 23-24, 40]. In accordance with Legacy's directives, Leeberg applied its human cell and tissue products without utilizing sutures or other adhesive materials and upon patients who did not previously undergo surgical procedures. *Id.* Thereafter, Leeberg pursued compensation from Medicare and other insurance companies after treating her patients in accordance with Legacy's directives and her claims were denied. [ECF 21,

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

¶¶ 24-25]. The basis of Medicare's denials, in particular, were that Legacy's products were not applied in the manners provided for by their respective IFU's, which Legacy directed Leeberg to disregard. [ECF 21, ¶ 26-30]. Leeberg's fraud claims therefore arise exclusively from Legacy's knowingly fraudulent representations concerning the *application* of its products. [ECF 21, ¶ 20]. Indeed, nothing in the Agreements speaks to the manner(s) in which Legacy's products were required to be applied. At all times, Legacy possessed an independent duty to furnish Leeberg with accurate IFU's which it knowingly failed to do. Thus, the economic loss rule does not bar Leeberg's fraudulent misrepresentation claim in Count V.

Conversely, Leeberg's contract claims relate to Legacy's provision of non-conforming human cell and tissue products "as to their intended use as described in the IFU furnished by Legacy to Leeberg." [ECF 21, ¶ 56]. Legacy was contractually obligated to furnish Leeberg with human cell and tissue products which were intended to be utilized *to treat acute and chronic wound care patients*. [ECF 21, ¶ 17]. Each of Leeberg's contract claims relate to the specific product(s) intended utilization—not their unique method(s) of application. Thus, Leeberg's fraudulent misrepresentation claim in Count V is not barred by the economic loss rule as Legacy's possessed an independent legal duty separate and part from its contractual obligations.

### D.    LEEBERG'S RELIANCE UPON LEGACY'S FRAUDULENT MISREPRESENTATIONS WAS JUSTIFIED.

Leeberg alleges she justifiably relied upon two fraudulent misrepresentations: (i) Legacy's knowingly erroneous directives concerning the application of its human cell and tissue products— which contradicted their IFU's; and (ii) Legacy's pre-contractual verbal guarantees that Legacy would not pursue collection upon invoices which were denied for compensation by Medicare and/or an insurance company. [ECF 21, ¶¶ 30-38]. Her reliance upon these representations was justified where she was being furnished with new and experimental human cell and tissue products

- 7 -

from Legacy and was expressly directed to follow Legacy's verbal directives as to its products application. Further, as the purveyor of the products, Leeberg possessed significant justification to rely upon Legacy's directives as to the manner of its products' proper application–particularly when Legacy acknowledged the IFU's inaccuracy.

In determining whether justifiable reliance is negated as a matter of law, courts "must consider the nature of the [parties'] relationship and the contract." *AKB Hendrick, LP v. Musgrave Enters., Inc.,* 380 S.W.3d 221, 232 (Tex. App. 2012). "In an arm's-length transaction[,] the defrauded party must exercise ordinary care for the protection of his own interests. ... [A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Nat'l Prop. Holdings, L.P. v. Westergren,* 453 S.W.3d 419, 425 (Tex. 2015). And when a party fails to exercise such diligence, it is "charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated." *See AKB*, 380 S.W.3d at 232. To this end, that party "cannot blindly rely on a representation by a defendant where the plaintiff's knowledge, experience, and background warrant investigation into any representations before the plaintiff acts in reliance upon those representations." *See Shafipour v. Rischon Dev. Corp.*, No. 11-13-00212-CV, 2015 WL 3454219, at *8 (Tex. App.–Eastland May 29, 2015).

Legacy argues that Leeberg's reliance was not justified because (i) neither Brian Rowan or Longwood possessed actual or apparent authority to bind Legacy with respect to any misrepresentations; (ii) that Legacy's alleged "guarantees" are not contained within any of the Agreements; and (iii) that Texas law precludes a party from relying upon oral misrepresentations when the contract(s) contains an express integration clause. [ECF 23, Pg. 24-25]. None of these arguments sufficiently disclaim Leeberg's justification for relying upon Legacy's misrepresentations.

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

### i. ROWAN AND LONGWOOD EXHIBITED APPARENT AUTHORITY TO BIND LEGACY.

Both Brian Rowan and Rick Longwood exhibited apparent authority to Leeberg that they were authorized act on Legacy's behalf. It is well-established that one individual's actions may bind another if the principal's actions lead a third party to reasonably believe that the agent has authority to act on the principal's behalf. Restatement (Third) of Agency § 2.03 (Am. L. Inst. 2006); see also *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). In assessing apparent authority, the agent's representations are largely immaterial; the relevant considerations are the actions taken by the principal toward the agent and the state of mind of the person who observes or otherwise learns of and relies on the principal's conduct. Restatement (Third) of Agency § 1.03 cmt. b. A principal may manifest assent to an agent's authority by either (1) knowingly permitting an agent to hold himself out with authority or (2) acting without "such ordinary care as to clothe an agent with the indicia of authority." *Gaines*, 235 S.W.3d at 182 (quoting *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998)). "Silence may constitute a manifestation when, in light of all the circumstances, a reasonable person would express dissent to the inference that other persons will draw from silence." Restatement (Third) of Agency § 1.03 cmt. b. Voluntary manifestations are effective even if "made negligently or [ ] otherwise in error." *Id.* § 1.03 cmt. d.

The permissibility of a third party's assumptions about authority turn on whether "a reasonably prudent person" would have concluded the same from the principal's conduct. *Gaines*, 235 S.W.3d at 183. "A principal's conduct does not occur in a vacuum." Restatement (Third) of Agency § 2.03 cmt. c. "[G]eneral business custom as well as usage that is particular to the principal's industry" inform the reasonableness of the third party's belief. *Id.* And though the standard compares the third party to a reasonable person "using diligence and discretion to

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

ascertain the agent's authority," *Gaines*, 235 S.W.3d at 182–83, "[a]bsent circumstances that should raise questions in the mind of a reasonable party, as a general matter there is no requirement that the third party inquire into the scope of an agent's authority." *Overseas Carriers, Inc. v. Team Ocean Servs.-Dallas, Inc.*, 2013 WL 76300, at *14 (S.D. Tex. 2013) (quoting Restatement (Third) of Agency § 2.03 cmt. d.) (internal quotations omitted). A third party need only investigate acts of "an unusual or extraordinary nature." *Natarajan v. Alpha Thought Global, Inc.*, 2005 WL 8158160, at *9 (N.D. Tex. 2005) (collecting cases).

Here, Legacy permitted Rowan and Longwood to communicate directly with Leeberg concerning the substance of the IFU's associated with the application of its human cell and tissue products it sold to Leeberg under the Agreements. From Leeberg's perspective, Legacy authorized Rowan and Longwood to furnish her with the IFU and to speak directly with Leeberg about the proper manner of application of its human cell and tissue products. [ECF 21, ¶¶ 18-24]. At no point did Legacy ever communicate to Leeberg that Rowan and Longwood were not associated with Legacy or otherwise disclaim their involvement in performing its contractual obligations. Legacy's silence is what ultimately led Leeberg to reasonably believe in Rowan and Longwood's apparent authority. Additionally, Legacy permitted Rowan and Long to communicate to Leeberg its "guarantee" to forego payment upon denied. [ECF 21, ¶ 31]. As set forth above, Leeberg was under no obligation under Texas law to inquire into the scope of Rowan and/or Longwood's authority. Thus, it was reasonable and prudent for Leeberg to assume that Rowan and Longwood were acting as Legacy's agents at all material times.

### ii. GUARANTEE LANGUAGE IN AGREEMENTS UNNECESSARY FOR LEEBERG TO JUSTIFIABLY RELY UPON LEGACY'S MISREPRESENTATION.

Leeberg also justifiably relied upon Legacy's verbal "guarantees," by and through its

agents Rowan and Longwood, that it would forego collection of payment from Leeberg if an insurance company or Medicare denied her claims for compensation. [ECF 21, ¶ 31]. Receiving such guarantees were "common practice" for medical providers, like Leeberg, such that her reliance upon Legacy's representation was justified. [ECF 21, ¶32]. "The justifiableness of the reliance is judged in light of the plaintiff's intelligence and experience." *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 358 (5th Cir. 1996) (Texas law) (citing *Scottish Heritable Tr., PLC v. Peat Marwick Main & Co.*, 81 F.3d 606, 615 (5th Cir. 1996)). "A plaintiff's reliance is unjustified when the reliance is in effect an act of negligence on the plaintiff's part." *Id.* (citing *Scottish Heritable Tr.*, 81 F.3d at 615). Here, Leeberg's reliance upon Legacy's representations, given her experience and intelligence as a medical practitioner, was reasonable under the circumstances because she was engaging with a purveyor of cutting-edge human cell and tissue products who was aggressively soliciting her business and agreed to make substantial concessions to secure her business. Thus, Leeberg justifiably relied upon Legacy's pre-contractual verbal "guarantees" despite the absence of such language in the Agreement. Further, and as set forth in detail below, the Agreement's integration clauses do not expressly disclaim prior representations such that those clauses, alone, are insufficient to establish that Leeberg's reliance upon Legacy's verbal representations was unjustified. As such, Legacy fails to establish that Leeberg's reliance was unjustified to warrant Count IV's dismissal.

### iii. AGREEMENT'S INTEGRATION CLAUSES DO NOT BAR CLAIMS FOR FRAUDULENT MISREPRESENTATION

The Agreement's integration clauses do not bar Leeberg's fraudulent misrepresentation claims because they do not expressly disclaim Leeberg's reliance on Legacy's representations prior to entering into the Agreement. Indeed, in each of the Agreements, the integration clauses merely provide:

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

**7. Miscellaneous**. This Agreement contains the entire agreement between the Parties concerning the subject matter hereof and is governed by Texas law. This agreement may be amended or modified only be written agreement signed by both parties.

*See* [ECF 21-1, -2, & -3].

Such barebones language does not expressly disclaim Leeberg's reliance upon Legacy's pre-contractual representations. The Supreme Court of Texas held that the parol evidence rule does not prevent proof of fraud even if the evidence is contrary to the agreement in writing. *Santos v. Mid-Continent Refrigerator Co.,* 471 S.W.2d 568, 569 (Tex. 1971). "[A] merger clause can be avoided based on fraud in the inducement, and the parol evidence rule does not bar proof of such fraud." *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 179 (Tex. 1997). Further, "a disclaimer of reliance or merger clause will not always bar a fraudulent inducement claim," but a release that clearly expresses the parties' intent to waive fraudulent inducement claims, or one that disclaims reliance on representations about specific matters in dispute, can preclude a claim of fraudulent inducement." *Id.* at, 181.

Paragraph 7's integration clauses do not clearly, specifically and/or unequivocally disclaim Leeberg's reliance upon Legacy's prior representations. The absence of such express disclaimer language precludes the Agreement's integration clauses from barring Leeberg's fraudulent misrepresentation claims. In contrast to the Agreement's integration clauses, the Fifth Circuit affirmed the dismissal of a fraudulent inducement claim where the integration clause expressly provided "in executing th[e] agreement, [the] customer [was] not relying on any advice or advertisement of ADT." *See Shakeri v. ADT Sec. Services, Inc.*, 816 F.3d 283, 296 (5th Cir. 2016). Indeed, the Fifth Circuit concluded that such language was "sufficient clear as to disclaim any reliance by Plaintiffs on any alleged misrepresentation ADT made prior to Plaintiffs entering into

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

the contract." *Id.* The same cannot be said here. As such, the integration clause does not bar Leeberg's ability to pursue claims for fraudulent misrepresentation against Legacy.

## E. LEEBERG'S CONTRACT CLAIMS NOT CONTRADICTED BY EXHIBITS

Under Texas law, "[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *See Smith Int'l., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Under each claim, Leeberg alleges that Legacy furnished her with non-conforming human cell and tissue products in material breach of Paragraph 1 of each Agreement. [ECF 21, ¶¶ 53-59, 60-66, & 67-73]. Legacy erroneously argues that Leeberg's claims contradict the Counterclaim's exhibits—the IFU attached as Exhibit D. [ECF 21-4]. While the IFU's left the manner of fixation to Leeberg, what is directly at issue under Leeberg's contract claims is the products Legacy furnished did not require application with sutures or other adhesives and could be applied upon patients without prior surgical procedures being performed. Indeed, Leeberg was advised by Legacy that the products could be "laid directly on the wound bed so that the membrane cells dissolved directly into the patient's wound." [ECF 21, ¶ 27]. Critically, Legacy's Motion overlooks that Leeberg alleges that Legacy directed her to disregard the IFU's. [ECF 21, ¶ 23]. The fact that Legacy advised that its IFU's were inaccurate underscores Leeberg's claims that she was furnished with non-conforming products in material violation of Paragraph 1 of each Agreement.

As to Count II, the Counterclaim is not factually inconsistent as Legacy purports. The Counterclaim provides that the IFU's Legacy furnished to Leeberg "inaccurately stated that the IMPAX and *Zenith* skin substitutes were to be used post-surgical and that the product was required to be stabled or sutured in place." [ECF 21, ¶ 41] (emphasis added). Count II specifically relates

- 13 -

to the Zenith products Legacy furnished to Leeberg which were non-conforming to its particular IFU. The contention of factual inconsistency is a red-herring argument and is the result of Legacy's deliberately constrained view of the Counterclaim's material allegations.

Finally, as set forth above, the integration clause in each of the Agreements do not expressly preclude Leeberg's reliance upon Legacy's pre-contractual representations. As such, that barebones clause does not operate to bar Leeberg's contract claims as a matter of Texas law. Based upon the foregoing, Legacy's Motion must be denied.

### F. LEGACY'S MATERIAL BREACHES WERE CAUSE OF LEEBERG'S DAMAGES.

Legacy erroneously attempts to disclaim causation under Leeberg's contractual claims by arguing that the inaccurate IFU imposes the obligation upon Leeberg to ascertain whether application of its products was "medically necessary" and that the Medicare denial letters are primarily predicated upon Medicare's assessment that the products' application was not medically necessary. Legacy's arguments fail for two critical reasons: (i) the inaccurate IFU was furnished to Leeberg by Legacy and Legacy directed Leeberg to disregard its contents; and (ii) Legacy mischaracterizes Medicare's denial letter's rationale for medical necessity. In a breach of contract claim, "actual damages may be recovered when loss is the natural, probable, and foreseeable consequence of the defendant's conduct." *See Mead v. Johnson Grp.*, 615 S.W.2d 685, 687 (Tex. 1981). Here, Leeberg's damages are the foreseeable consequences of Legacy's material breach of the Agreements.

Legacy's production of non-conforming human cell and tissue products, its knowing production of an inaccurate IFU, and its instructions to disregard that document and to follow its directives instead are the probable and foreseeable cause of Leeberg's damages under her breach of contract claims. But for Legacy's sale of non-conforming products in material breach of the

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428

Agreements, and its directives to disregard the IFU and instead listen to its directives as to the products proper application, Leeberg would not have been denied compensation from Medicare and/or insurance companies associated with her utilization and application of Legacy's IMPAX Membrane and Zenith products when treating her patients requiring acute and chronic care. Legacy's material breaches of the Agreements' are undoubted the probable and foreseeable cause of Leeberg's damages.

Additionally, the Medicare denial letters explain that the services Leeberg provided, and sought compensation upon were not medically necessary because "this skin substitute graft was applied for *wound healing and treatment, not merely as a cover or barrier for the wound.*" [ECF 21-5]. Legacy overlooks the substance of Medicare's rationale and hangs its hat on the mere denial statement on Page 2 of each of the Medicare Denial Letters. However, when taken in context, it is clear that the denials were based upon Leeberg's use of Legacy's human cell and tissue products—both IMPAX and Zenith—for purposes of treating patients requiring acute and chronic wound care. Indeed, wound healing was the fundamental purpose of procuring and utilizing Legacy's products. [ECF 21, ¶ 17]. While Legacy attempts to place the entire burden of medical necessity upon Leeberg, it was Legacy's product's intended use—wound healing—that led Leeberg to procure its products and apply the same upon her medically qualified patients. Nonetheless, Medicare denied Leeberg's claims for compensation because the products were not utilized in manners Medicare and other insurance companies deemed acceptable—despite Leeberg following Legacy's directives as to its products intended use and application. As such, Legacy's sale of non-conforming goods coupled with its misrepresentations as to their proper use and application caused Medicare and other insurance carriers to deny Leeberg's claims for compensation and thereby were the foreseeable and probable cause Leeberg damages.

## III. CONCLUSION.

Based upon the foregoing, Leeberg demonstrates that her Counterclaims against Legacy state valid claims for breach of contract and fraudulent misrepresentation warranting the denial of Legacy's Motion to Dismiss. Should the Court be inclined to dismiss any of Leeberg's claims, Leeberg respectfully requests that opportunity to replead such claims through an amended pleading to be filed within ten (10) days of the Court's Order.

WHEREFORE, Counter-Plaintiff/Defendant, CRISTI LEEBERG d/b/a PRACTITIONERS IN MOTION, PLLC, respectfully requests the entry of an Order denying Plaintiff/Counter-Defendant, LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, Motion to Dismiss [ECF 23], and grant such other and further relief deemed just and proper.

Dated: October 23, 2025            Respectfully submitted,

**THE LEAL LAW FIRM, LLC**
14180 N Dallas Pky, Suite 300
Dallas Texas 75254
Telephone: (214) 395-5325

By:    *Timothy M. Rutledge*
       **ABEL A. LEAL**
       Texas Bar No. 24026989
       E-mail: abel@leal.law
       **TIMOTHY M. RUTLEDGE**
       Texas Bar No. 24060538
       E-mail: tim@leal.law

and

**ZARCO EINHORN SALKOWSKI, P.A.**
One Biscayne Tower
2 S. Biscayne Blvd., 34th Floor
Miami, Florida 33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428

By:  *Alec R. Shelowitz*

**ROBERT M. EINHORN** (seeking pro hac vice admission)
E-mail: reinhorn@zarcolaw.com
Secondary: imorfi@zarcolaw.com
**ALEC R. SHELOWITZ** (seeking pro hac vice admission)
Email: ashelowitz@zarcolaw.com
Secondary: agarcia@zarcolaw.com

**ATTORNEYS FOR CRISTI LEEBERG**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this filing was served upon the below identified counsel of record through the Court's CM/ECF electronic filing system:

**BLANK ROME, LLP**
200 Crescent Ct #1000
Dallas, Texas 75201
717 Texas Avenue, Suite 1400 Houston, Texas 77002-2727
Audrey F. Momanaee (audrey.momanaee@blankrome.com)
Gregory J. Moore (greg.moore@blankrome.com)
Christopher McNeill (chris.mcneill@blankrome.com)
**ATTORNEYS FOR LEGACY MEDICAL CONSULTANTS, L.P.**

By:    *Timothy M. Rutledge*
       **TIMOTHY M. RUTLEDGE**

**Zarco Einhorn Salkowski, P.A.**
2. S. Biscayne Blvd., 34th Floor | Miami, FL 33131 | T: (305)374-5418 | F: (305) 374-5428