IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC,** | § § § § § | |
| Plaintiff, | § § | |
| v. | § § § | Case No. 4:25-cv-00319-P |
| **CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC,** | § § § § | |
| Defendant. | § | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

**BLANK ROME LLP**

Gregory J. Moore
Texas Bar No. 24055999
Audrey F. Momanaee
Texas Bar No. 24055993; Fed Bar No. 724132
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com
Audrey.Momanaee@BlankRome.com

-and-

Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1
II. ARGUMENT .................................................................................................................... 1
    A. Counts IV and v Are Not Pled With Specificity ..................................................... 1
        1. Count IV Lacks Specificity .......................................................................... 2
        2. Count V Lacks Specificity ........................................................................... 3
    B. The Economic Loss Rule Bars Count V .................................................................. 3
    C. Justifiable Reliance Fails as a Matter of Law .......................................................... 4
        1. It is Not Justifiable for Dr. Leeberg to Blindly Rely Upon Statements She Claims Legacy Made Regarding the Application of the Products She Chose to Use on Her Patients .......................................... 4
        2. Dr. Leeberg is Not Justified in Relying Upon Extracontractual Statements Contradicted by the Plain Language of Her Contract, Especially Where There is an Integration Clause ...................................... 5
    D. Distinguishing Defendant's "Integration Clause Doesn't Bar Fraud" Argument .................................................................................................................. 6
    E. Defendant's Exhibits Contradict Her Allegations ................................................... 7
    F. Causation Fails for Counts I–III .............................................................................. 9
III. CONCLUSION ............................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                  **Page(s)**

*AHBP LLC v. Lynd Co., et al.*,
   649 F.Supp.3d 371 (W.D. Tex. 2023) .................................................................................. 1, 2

*Breeden v. Weinberger*,
   377 F.Supp. 734 (M.D. La. 1974) ............................................................................................ 9

*Carter v. Target Corp.*,
   541 Fed.App'x 413 (5th Cir. 2013) .......................................................................................... 7

*DRC Parts & Accessories, LLC v. VM Motori, SPA*,
   112 S.W.3d 854 (Tex. App.—Houston 2003) ......................................................................... 7

*Gaines v. Kelly*,
   235 S.W.3d 179 (Tex. 2007) .................................................................................................... 6

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
   313 F.3d 305 (5th Cir. 2002) ................................................................................................. 10

*Grijalva v. Bally Total Fitness Corp.*,
   No. 01-14-00217-CV, 2015 WL 1544582 (Tex. App.—Houston 2015) ............................... 10

*Hunter v. Navy Fed. Credit Union*,
   749 F.Supp.3d 743 (N.D. Tex. 2024) ...................................................................................... 9

*In re Enron Corp. Secs., Derivative & "ERISA" Litig.*,
   238 F.Supp.3d 799 (S.D. Tex. 2017) ....................................................................................... 7

*Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc., et al.*,
   995 F.Supp.2d 587 (N.D. Tex. 2014) ...................................................................................... 9

*Miller v. CitiMortgage, LLC*,
   970 F.Supp.2d 568 (N.D. Tex. 2013) .............................................................................. 1, 3, 4

*Nat'l Prop. Holdings, L.P. v. Westergren*,
   453 S.W.3d 419 (Tex. 2015) ................................................................................................ 5, 6

*Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*,
   607 F.3d 1029 (5th Cir. 2015) ............................................................................................. 2, 3

**Other Authorities**

MEDICARE PROGRAM INTEGRITY MANUAL, Ch. 13, § 13.5.4 ............................................................ 5

Fed. R. Civ. P.
   § 9(b) .................................................................................................................. 1, 2, 3

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS AND MEMORANDUM OF LAW IN SUPPORT**

**I.     INTRODUCTION**

Defendant's counterclaims attempt to convert a straightforward collection action into fraud and contract theories that are foreclosed by the parties' integrated Agreements, contradicted by her own exhibits, and inadequately pleaded under Rule 9(b). This Reply streamlines the arguments and focuses on five dispositive points: (1) Counts IV and V fail Rule 9(b); (2) Count V is barred by the economic loss rule; (3) Defendant cannot plead justifiable reliance as a matter of law; (4) her allegations are contradicted by the IFU and Medicare correspondence she attached; and (5) Counts I–III fail causation. In addition, this Reply squarely addresses Defendant's contention that the Agreements' integration clauses do not defeat her fraud theories by distinguishing the parol evidence rule from Texas's justifiable reliance doctrine and explaining why, on this record, her reliance is not legally justifiable.

**II.     ARGUMENT**

**A.     COUNTS IV AND V ARE NOT PLED WITH SPECIFICITY**

When "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *AHBP LLC v. Lynd Co., et al.*, 649 F.Supp.3d 371, 385 (W.D. Tex. 2023) (quoting *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)). "Directly put, the who, what, when, and where must be laid out." *Id.* A conclusory explanation that "Defendant's representations were fraudulent because Defendant never intended . . . to honor its promises" is

"not sufficient to plead a claim of fraud . . . with the particularity that Rule 9(b) requires." *Miller v. CitiMortgage, LLC*, 970 F.Supp.2d 568, 583 (N.D. Tex. 2013).

### 1. Count IV Lacks Specificity

In Count IV, Dr. Leeberg alleges Legacy fraudulently induced her to enter the contracts by falsely "guarantee[ing]" it would not collect on Medicare-denied claims, despite never intending to do so. *See* Def. Countercl., ¶ 77. The pleading lacks Rule 9(b) specificity in three respects. First, Defendants pleads no medium of the alleged misrepresentation (email, phone, or in person). Rule 9(b) requires the who, what, when, where, and how of fraud. *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1034 (5th Cir. 2010) (emphasis added).

Second, the counterclaim alleges only that the statements began in March 2022 and continued until June 2024, without specific dates, speakers tied to particular statements, mediums, settings, or the precise content of the alleged guarantees. *See* Def. Countercl., ¶ 75. Rule 9(b)'s heightened standard aims to give defendants adequate notice of the claim's nature and grounds, and a broad two-year span without particulars does not suffice. *See AHBP LLC*, 649 F. Supp. 3d at 385.

Third, conclusory assertions of nonperformance or intent not to perform do not satisfy Rule 9(b). Dr. Leeberg pleads no facts showing Legacy lacked intent to honor its alleged "guarantee" at the time of contracting. *See* Def. Countercl., ¶¶ 81–88. A promise of future performance is actionable as fraud only if made with no intent to perform. *See Potter*, 607 F.3d at 1033–34; *see* Def. Countercl., ¶¶ 75-76. Failure to perform, standing alone, is not evidence of intent at formation, and general allegations that Legacy "never intended to honor its promises" do not meet Rule 9(b)'s particularity requirement absent facts that "transcend mere suspicion." *See id.*; *Miller*, 970 F. Supp. 2d at 583; Def. Countercl., ¶¶ 75–76.

### 2. Count V Lacks Specificity

Defendant alleges she was told to disregard the IFU but pleads no alternative instructions (application steps, fixation, or clinical protocols). *See* Def. Countercl., ¶¶ 82–86. She claims detriment from following those directives yet still omits the alternative instructions. *See* Def. Countercl., ¶ 88. She pleads no specific dates, speakers, mediums (email/phone/video), or locations. Because Count V omits the who, what, when, where, and how—failing to identify the specific alternative instructions, dates, speakers, mediums, or locations—the claim does not meet Rule 9(b)'s particularity requirement and should be dismissed.

### B.  THE ECONOMIC LOSS RULE BARS COUNT V

Count V repackages Defendant's contract theories as tort, arguing that Count V is not barred by the economic loss rule because the "Texas Supreme Court has carved out an exception . . . for fraudulent inducement claims[.]" Def. Opp. (Doc. 28), p. 5. Dr. Leeberg's argument is nonsensical because Count V is <u>not</u> a fraudulent inducement claim – the conduct she alleges occurred on March 12, 2024, almost two years *after* she began her contractual relationship with Legacy. *See* Def. Countercl., ¶¶ 81–88.

Count V alleges post-contract product-use directives; under Texas law, the duty alleged is contractual and the claimed injury is economic loss to the contract's subject matter; therefore, the economic loss rule bars Count V.  *See Miller*, 970 F.Supp.2d at 583-584. Defendant's own narrative confirms Count V is not about an independent duty; it is about how the products should be used under the contracts and IFU.  *See* Def. Countercl., ¶¶ 53–73. Fraudulent inducement does not save Count V; Defendant alleges post-contract misstatements about use made in March 2024, long after the Agreements were executed.

3

### C. JUSTIFIABLE RELIANCE FAILS AS A MATTER OF LAW

Dr. Leeberg alleges she justifiably relied upon two fraudulent misrepresentations: (i) Legacy's[1] directives to disregard the IFU and apply products "differently"; and (ii) an oral pre-contract "guarantee" not to pursue collections if Medicare denied claims. Def. Opp., p.7. Put simply, Dr. Leeberg claims her reliance was justified because Legacy knows more about the products than she does. *Id.* at pp.7–8.

As Defendant concedes, "In an arm's-length transaction[,] the defrauded party must exercise ordinary care for the protection of his own interests . . . [A] failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015)." Def. Opp., p.8. Defendant is also correct that "when a party fails to exercise such diligence, it is 'charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated.' *AKB Hendrick, LP v. Musgrave Enters, Inc.*, 380 S.W.3d 221, 232 (Tex. App. 2012)." *Id.* Finally, Legacy agrees with Dr. Leeberg that "[t]o this end, the party 'cannot blindly rely on a representation by a defendant where the plaintiff's knowledge, experience, and background warrant investigation into any representations before the plaintiff acts in reliance upon [them].' *See Shaftour v. Rischon Dev. Corp.*, No. 11-13-00212-CV, 2015 WL 3454219, at *8 (Tex. App.-Eastland May 29, 2015)." *Id.*

#### 1. It is Not Justifiable for Dr. Leeberg to Blindly Rely Upon Statements She Claims Legacy Made Regarding the Application of the Products She Chose to Use on Her Patients

Even taking as true Defendant's allegation in Count V that Legacy incorrectly advised her that the Impax™ IFU was inaccurate and then directed her to apply the products differently,

4

as the treating medical provider she would have an obligation to verify Legacy's representation. Indeed, both the Agreements and Medicare regulations place the onus solely on the provider to determine medical necessity and to ensure products are safe and effective for their patients. *See* MEDICARE PROGRAM INTEGRITY MANUAL ("PIM"), Ch. 13, § 13.5.4. As a board-certified practitioner, Defendant cannot abrogate her responsibility by "just following Legacy" sales communications. Reliance on sales directives, especially where clinical judgment, medical necessity, and documentation are provider duties, is not justifiable.

> **2. Dr. Leeberg is Not Justified in Relying Upon Extracontractual Statements Contradicted by the Plain Language of Her Contract, Especially Where There is an Integration Clause**

Texas law repeatedly holds that a party to a written, integrated contract cannot justifiably rely on oral misrepresentations that contradict the contract's unambiguous terms, particularly where the party had the opportunity to review the contract. *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015). Dr. Leeberg alleges that prior to the signing of her contract, Legacy "agents" guaranteed her that Legacy would not collect payment from her on claims denied by insurance. Def. Countercl., ¶¶ 74-80 (Count IV).

Here, the Agreements require payment within 30-60 days regardless of reimbursement, disclaim any guarantee of insurance payment, assign medical necessity/billing risk to the provider, and include integration provisions.

Apparent authority does not change this result. Apparent authority must be created by the principal's conduct; Defendant pleads no facts showing Legacy held out non-signatories as authorized to alter payment obligations or contradict integrated Agreements. *See* Def. Opp., pp.9-10. Nor does the record show Legacy communicated any authority to vary written terms.

---

[1] Apparent authority must be created by Legacy's conduct; the pleading alleges no facts showing Legacy held Rowan or Logwood out as authorized to alter payment terms or contradict integrated

"[T]o determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority." *Gaines v. Kelly*, 235 S.W.3d 179, 183 (Tex. 2007). "[O]nly the conduct of the principal is relevant." *Id.* at 182. In any event, even a purported agent's oral assurance cannot render reliance justifiable when it contradicts the contracts' unambiguous payment terms.

### D. DISTINGUISHING DEFENDANT'S "INTEGRATION CLAUSE DOESN'T BAR FRAUD" ARGUMENT

Defendant argues the Agreements' integration clauses do not bar her fraud claims. That argument conflates two distinct doctrines. Texas's parol evidence rule and merger clauses prevent using extrinsic evidence to vary an unambiguous written agreement. Fraudulent inducement is an exception to the parol evidence rule; a generic merger clause alone may not bar proof of fraud in the inducement. But even where fraud can be alleged, the plaintiff must still plead and prove justifiable reliance. On this point, Texas courts have consistently held that a party cannot justifiably rely on oral statements that contradict a contract's unambiguous terms, particularly where the party had the opportunity to read the agreement. That doctrine applies irrespective of whether the merger clause is "barebones." *See DRC Parts & Accessories, LLC v. VM Motori, SPA*, 112 S.W.3d 854, 859 (Tex. App.—Houston 2003) ("[T]he prevailing rule, recited above, is instead that a party who enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract.").

Thus, Defendant's reliance fails for two independent reasons: (1) the alleged oral "no collections" promise and purported billing/reimbursement assurances contradict the contracts' unambiguous payment and provider-duty terms, defeating justifiable reliance; and (2)

---

Agreements. Neither is a signatory, and the Agreements require written modifications.

6

Defendant's own exhibits (including the IFU and Medicare denials) undercut any claim that she reasonably relied on extra-contractual product-use directives for clinical application and billing compliance.

In short, even if a merger clause does not per se bar a fraud claim, justifiable reliance is still required—and it is not present when the oral statements conflict with the written Agreements or with the provider's independent statutory/regulatory duties.

### E.   DEFENDANT'S EXHIBITS CONTRADICT HER ALLEGATIONS

Courts may disregard allegations contradicted by exhibits attached to the pleading. *See In re Enron Corp. Secs., Derivative & "ERISA" Lit., et al. v. UBS PaineWebber, Inc., et al.*, 238 F.Supp.3d 799, 815 (S.D. Tex. 2017). Thus, "[w]hile it is true that [the Court] must accept all well-pleaded factual allegations as true for the purpose of a motion to dismiss, conclusory allegations and unwarranted deductions of fact are not admitted as true . . . when such conclusions are contradicted by facts disclosed by a document appended to the [counterclaim]." *Carter v. Target Corp.*, 541 Fed.App'x. 413, 417 (5th Cir. 2013).

First, Dr. Leeberg alleges in her counterclaims that despite the IFU, Legacy inaccurately advised her that its products did not need to be sutured or stapled to the patient and need not be used only post-surgically. *See* Def. Countercl., ¶¶ 21-23, 41; Def. Opp., p.13. This allegation is belied by the plain language of the IFU, which instructs the provider to determine how the product should be affixed to the wound bed. *See* Def. Countercl., Ex. D. ("The **graft is anchored based on the physician's choice of fixation** including staples or sutures in surgical procedures when medically necessary.") (emphasis added). Defendant's allegation that the products "must be sutured or stapled" and are "post-surgical only" is contradicted by the IFU.

Second, Dr. Leeberg alleges in each of her contract claims (Counts I through III) that in breach of Paragraph 1, Legacy "sold Leeberg human tissue and cell products that were non-

7

conforming to their intended use as described in the IFU[.]" Def. Opp., ¶¶ 56, 63, 70. In other words, Dr. Leeberg claims Legacy's products were not fit for the use described in the IFU. Def. Opp., p.13. This argument is also contradicted by the facts.

Neither the Impax™ nor Zenith™ IFUs are included in or referenced by her contracts; Legacy cannot have breached an agreement by delivering goods inconsistent with a set of instructions that are not part of the contract, especially where the provider determines the proper method of application. *See Grijalva v. Bally Total Fitness Corp.*, No. 01-14-00217-CV, 2015 WL 1544582, *8 (Tex. App.—Houston 2015) ("Grijalva claims that Bally breached the Membership Agreement by failing to keep the premises safe. But he cannot rely on an alleged breach of a promise outside of the written contract to raise a fact issue on breach."). Second, Dr. Leeberg's Count II alleges Legacy breached her Zenith™ agreement, but the IFU she attaches to her counterclaim is for Impax™. This product–exhibit mismatch undermines the causation and breach narratives and independently warrants disregarding the conclusory allegations tied to the wrong product instructions

Most Importantly, there is no basis for Dr. Leeberg's belief that the skin grafts she received were not fit for their intended use as described in the IFU. The IFU Dr. Leeberg attaches to her counterclaims specifically says:

> IMPAX Membrane grafts are in sheet form. IMPAX Membrane is intended for use as a Human Cell, Tissue, and Cellular Tissue-Based Product (HCT/P) for repair, reconstruction, replacement and/or supplementation by providing tissue in the form of scaffolding in partial and full-thickness acute and chronic wounds.

Def. Opp., Ex. D. Dr. Leeberg pleads no facts showing that Legacy's grafts were not fit for repair, reconstruction, replacement, and/or supplementation of chronic and acute wounds. *See* Def. Countercl., ¶¶ 53-73. Indeed, "CMS has long recognized skin substitute products such as [Legacy's] Impax, as the standard of care for **non-healing wounds**."

Plf. Mot. to Dis. Def. Countercl. (Doc. 20), Ex. B, *Gateway Foot and Ankle Center, PLC, OMHA* Appeal No. 314566262021 (OMHA A. L. J. April 8th, 2025)) (emphasis added). Therefore, her allegations that Legacy's grafts were not fit for their intended use as described in the IFU is plainly contradicted by her exhibits and must be disregarded.

    **F.    CAUSATION FAILS FOR COUNTS I–III**

For a breach of contract claim to survive under Texas law, the damages alleged must have resulted from the breach. *Hunter v. Navy Fed. Credit Union*, 749 F.Supp.3d 743, 748 (N.D. Tex. 2024); *see also Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc., et al.*, 995 F.Supp.2d 587, 602 (N.D. Tex. 2014). Defendant alleges denials "because the product was not utilized in accordance with the IFU," but her exhibits indicate denials grounded in medical necessity and documentation deficiencies—issues that rest with the treating provider.

Dr. Leeberg is responsible for the Medicare denials because she did not properly document the medical necessity of her claims. The denial letters uniformly state that the services were not medically necessary.[2] At least one denial cites missing clinical documentation required under the applicable coverage policy. *Id.* at Ex. E. The Agreements and IFU place medical necessity and application decisions on the provider; those independent obligations break the chain of causation." *See Breeden v. Weinberger*, 377 F.Supp. 734, 737 (M.D. La. 1974) ("Congress intended that the responsibility for determining what services the patient requires rests primarily with the treating physician."). That allocation is reinforced by Medicare program guidance and the provider's own certification on claims submissions. The Agreements assign product use to the provider's medical judgment; Medicare requires the provider to certify

---

[2] Medicare, for example, denied one of her claims serviced on October 4, 2022, because she failed to properly document, in a procedure note, the medical diagnosis, the necessity for the debridement, the type of anesthesia used, the wound characteristics, and other details. *See* Def. Countercl., Ex. E, p.8.

medical necessity and comply with LCDs and billing policies. Those independent obligations break the chain of causation. Additionally, the attached denials concern Zenith, not Impax, further severing any causal link between Legacy's alleged conduct and the claimed damages.

## III.   CONCLUSION

Legacy respectfully requests that this Court dismiss Dr. Leeberg's counterclaims with prejudice. Counts IV and V fail Rule 9(b); Count V is barred by the economic loss rule; and Defendant cannot plead justifiable reliance because her allegations contradict unambiguous contract terms and the IFU and because provider duties govern medical necessity and billing. Her exhibits contradict key allegations, and Counts I–III fail causation.

The defects cannot be cured by amendment, and any further attempt to replead would be futile. *See, e.g.*, *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Dismissal with prejudice is warranted.

Dated: November 6, 2025.                    Respectfully submitted,

**BLANK ROME LLP**

*/s/ Gregory J. Moore*
Gregory J. Moore (Tx. 24055999)
Audrey F. Momanaee (Tx. 24055993; Fed. 724132)
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com
Audrey.Momanaee@BlankRome.com;
-and-
Megan A. Altobelli (Tx. 24107116)
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been served on all parties and counsel of record through the Court's CM/ECF filing system on this 6th day of November, 2025, in accordance with the Fed. R. Civ. P. 5(b)(2).

                                                     */s/ Gregory J. Moore*
                                                     Gregory J. Moore