# EXHIBIT 3

**LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC**

**v.**

**CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC**

**CIVIL ACTION NO: 4:25-CV-00319-P**

**IN THE**

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF TEXAS**

**FORT WORTH DIVISION**

**EXPERT REPORT**

**of**

**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

**January 1, 2026**

APP_0101

**Expert Report—CONFIDENTIAL**
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

## Table of Contents

I.    OVERVIEW AND BACKGROUND ON CASE ................................................................. 3

II.   EXPERIENCE AND QUALIFICATIONS ....................................................................... 4

III.  SUMMARY OF OPINIONS.......................................................................................... 5

IV.   OVERVIEW OF THE MEDICARE PROGRAM ............................................................. 6

    A.    STATUTORY AND REGULATORY FRAMEWORK OF MEDICARE ............................... 6

    B.    MEDICARE REIMBURSEMENT PROCESS.................................................................. 7

    C.    PROVIDER'S RESPONSIBILITIES IN THE MEDICARE REIMBURSEMENT PROCESS .............. 9

V.    REVIEW OF INSTRUCTIONS FOR USE (IFU) ........................................................... 10

VI.   REVIEW OF LOCAL COVERAGE DETERMINATION.................................................. 10

VII.  REVIEW OF CLAIMANT'S DENIAL LETTERS ........................................................... 11

VIII. CONCLUSIONS ....................................................................................................... 13

IX.   USE AND DISCLOSURE OF EXPERT REPORT.......................................................... 15

**EXHIBITS**

Exhibit 1—Documents Relied Upon (additional citations included in footnotes.)

Exhibit 2—Charlotte L. Kohler Litigation CV

Expert Report—CONFIDENTIAL
Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC

> **LEGACY MEDICAL CONSULTANTS, LP,**
> **SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC**
> **(PLAINTIFF)**
> **v.**
> **CRISTI LEEBERG D/B/A PRACTIOTIONERS IN MOTION, PLLC**
> **(DEFENDANT)**

## I.    OVERVIEW AND BACKGROUND ON CASE

1.    I, Charlotte Kohler, submit this Expert Report in connection with the above referenced matter on behalf of Legacy Medical Consultants, LP, Successor in Interest to Legacy Medical Consultants, LLC (Legacy), to summarize my findings and opinions and the grounds and reasons for them as they relate to the responsibilities of Ms. Cristi Leeberg of Practitioners in Motion (PIM) from July 2023 through June 2024 regarding reimbursement from Medicare for Legacy skin graft products.

2.    During this time, Ms. Leeberg had contractual relationships with Legacy through which payment was to be made in exchange for skin graft products ordered, to be used in the treatment of patients. It is Ms. Leeberg's claim that denials and clawbacks of reimbursement for Medicare beneficiaries is due to incorrect Instructions for Use (IFU) documentation provided by Legacy from the manufacturers.

3.    Additionally, she describes verbal assurances from Rick Logwood of Apex[1], a distributor for Legacy, who she alleged claimed that no amounts are due to Legacy for purchases not paid by Medicare and those amounts covered by claims unpaid would not be collected on at a later date.[2] Ms. Leeberg is requesting in a counter-claim a return of all payments made to Legacy for the skin substitute products, amounting to a reported $6-8 million.

4.    This Report is confined to the issues regarding the conditions and requirements of Medicare reimbursement for the Legacy products and Ms. Leeberg's responsibilities regarding (a) clinical medical decision-making for product use, (b) creation and maintenance of documentation supporting medical necessity and coverage, and (c) pursuing and exhausting applicable Medicare appeals processes for her patients and for securing reimbursement.

---

[1] Deposition of Cristi Leeberg, dated December 5, 2025, pages 57 – 66; page 58, lines 24 and 25 (re Apex).
[2] Case 4:25-cv-00319-P, Document 21, PageID 260-264.

Expert Report—CONFIDENTIAL
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

## II.   <u>EXPERIENCE AND QUALIFICATIONS</u>

5.   I am President of Kohler HealthCare Consulting, Inc. (KHC) and was previously a Director at Navigant Consulting, Inc. I have over 40 years of healthcare industry experience that includes both a clinical background and extensive experience in healthcare finance, billing, coding, operations, and compliance matters. In these matters, I have worked with large teaching hospitals, rural and urban hospitals, independent and hospital laboratories, outpatient clinics, ambulatory surgery centers, durable medical equipment (DME), supplies, other providers and suppliers, and private physician practices. My experience includes serving as the Regulatory Compliance Officer for a five-hospital integrated health delivery system that provided services to patients in these settings.

6.   As part of litigation and for consulting engagements, I have worked with hospitals, both large and small, and other health organizations, using my background in nursing, coding, and related regulations to help establish and maintain proper coding and charging and compliance programs. I have evaluated existing facilities concerning patient flow, marketing, fee structures, use of ancillary services, and financial considerations and have developed strategic plans to improve profitability and productivity. I have applied my compliance expertise to assist free-standing facilities, specialty facilities, general acute care hospitals, critical care hospitals, FQHCs, physician practices, ASCs, and DME providers to assist with coding, charge capture, and broad-based regulatory policies and procedures regarding operations, medical records, documentation, and billing. For these engagements, I use my experience, knowledge, and certifications in healthcare coding, revenue cycle, accounting, and compliance to help maximize both profitability and reimbursement, as well as, addressing coding and billing issues for providers to curtail fraud, abuse, kickbacks, OIG, EMTALA, and IRS issues. In addition, I have written four published medical Billing guidebooks. I have conducted internal audits and provided training to staff and physicians to correct and/or avoid non-compliance on many business and regulatory matters, including DME and the use of skin grafts.

7.   My firm's compensation for my time in preparing this Report is $390.00 per hour. The rate paid to Kohler HealthCare Consulting, Inc. for me to provide testimony at the final hearing, including preparation, is $525.00 per hour. The compensation paid to Kohler HealthCare Consulting is in no way contingent on the outcome of this litigation. Other senior staff at Kohler

**Expert Report—CONFIDENTIAL**
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

HealthCare Consulting have assisted me in the research, analysis, writing, and review of this report. However, the opinions herein are my own and are made to a reasonable degree of professional certainty.

8.     I reserve the right to adjust or amend my opinions as additional information may be revealed through discovery, testimony, or otherwise.

### III.    SUMMARY OF OPINIONS

9.     Opinion 1: Ms. Leeberg is a clinician, a Nurse Practitioner (provider)[3] with a license to make the medical decisions required for the use of skin grafts and the related care to a patient.  In this role, she exercises independent clinical judgment and remains responsible for compliance with applicable Medicare coverage criteria.

10.     Opinion 2: Clinical decision making to determine reasonableness and necessity of treatment of a patient is the sole responsibility of the provider. This includes determining, documenting, and certifying medical necessity for each claim under Medicare standards.

11.     Opinion 3: Documentation of support and justification for clinical decisions and care is the sole responsibility of the provider, regardless of what is provided by a vendor. The provider must create and maintain records sufficient to demonstrate that Medicare coverage criteria are met for each service and item billed.

12.     Opinion 4: Reimbursement requests to Medicare necessitate and require that a cost is (or will be) incurred by the provider in the provision of care to beneficiaries.[4] Submission of a claim constitutes an attestation that a non-zero cost was incurred for a covered, medically necessary service or item, and Medicare does not pay for "free" items or services.

13.     Opinion 5: In the event of a disagreement with claim adjudication, providers have the right and responsibility to engage with the five levels of appeals instituted by the Centers for Medicare and Medicaid Services (CMS). These levels are: (1) redetermination by the MAC; (2) reconsideration by a QIC; (3) hearing before an Administrative Law Judge; (4) review by the Medicare Appeals Council;

---

[3] In the Medicare regulations, the term provider is used for facilities and the term supplier for health care practitioners. However, in terms of physicians and other advance practice licensed individuals, such as a nurse practitioner, it is common and aligns with the terminology defined in the Medicare Program Integrity Manual's Exhibit 1 to call these clinicians "providers". The term provider is used consistent with the latter definition throughout this Report.

[4] As a practical point, even though there is enough regulatory language to support this point, CMS added section 70.2 to very clearly state this dated June 6, 2025. Medicare Claims Processing Manual

APP  0105

Expert Report—CONFIDENTIAL
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

and (5) judicial review in federal court.

14. These opinions are mine and made to the highest degree of professional certainty.

15. The remainder of this Report supports these opinions. Each opinion is tied to Medicare statutes, regulations, CMS manuals, coverage policies, and the denial/appeal record discussed below.

## IV.   OVERVIEW OF THE MEDICARE PROGRAM

### A.   STATUTORY AND REGULATORY FRAMEWORK OF MEDICARE

16. The Medicare program administered through the Centers for Medicare and Medicaid Services (CMS) is established by Title XVIII of the Social Security Act and its implementation regulated by Title 42 of the Code of Federal Regulations (CFR). Section 1862(a)(1)(A) of the Act sets the requirement for covered items and services to be reasonable and necessary for the beneficiary. Section 1833(e) of the Act prohibits claims from being paid unless requisite information to determine coverage criteria is provided and the amounts are reasonably due. CMS promulgates additional, extensive rules and guidelines that dictate the standardized process by which federal monies reimburse providers for services and items provided to beneficiaries **provided that the documented services, items, and surrounding circumstances meet applicable statutory, regulatory, and policy-based coverage criteria** [my bolding]. In practice, Medicare contractors operationalize these requirements through National Coverage Determinations (NCDs), Local Coverage Determinations (LCDs), and claims editing that apply the "reasonable and necessary" standard to each claim.

17. The Medicare Program Integrity Manual (MPIM) outlines the factors that determine if a service is deemed reasonable and necessary, including that:

- It is safe and effective.
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
  - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
  - Furnished in a setting appropriate to the beneficiary's medical needs and condition;

APP 0106

Expert Report—CONFIDENTIAL
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

o        Ordered and furnished by qualified personnel; and,

o        One that meets, but does not exceed, the beneficiary's medical need. [5]

In each case, these requirements are the sole responsibility of the provider. For each claim, the provider must determine and document how these factors are satisfied for the individual patient encounter.

### B.   MEDICARE REIMBURSEMENT PROCESS

18.   The Medicare payment system is one which reimburses providers for providing its beneficiaries covered, medically necessary services and meeting administrative and documentation requirements. The MPIM describes the provider's responsibilities to create and maintain complete, sufficient documentation that justifies both the medical necessity and the specific details of each service for which reimbursement is sought. Payment is not made for improperly documented or inadequately justified services. Provider records must substantiate the clinical indications, the service furnished, and compliance with any LCD/NCD criteria and coding/billing rules applicable to the claim.

19.   Reimbursement is intrinsically linked to the provider having incurred an actual cost for rendering a service to a beneficiary. The Medicare Benefit Policy Manual establishes the principle of incurred expenses, and the underlying statute precludes payment for items or services for which no charge is made (i.e., "free"). Medicare payments to physicians, hospitals, and suppliers under systems like the Physician Fee Schedule (PFS) or the Outpatient Prospective Payment System (OPPS) are designed to reimburse the reasonable costs or resource expenditures for services that have been legitimately provided and documented.[6] This structure ensures that federal funds are paid only for actual, justified healthcare expenses incurred by a qualifying provider on behalf of the beneficiary. Submission of a claim is an attestation that a non-zero, in order words, an actual expense was incurred to furnish a covered, medically necessary service or item.

20.   The Medicare reimbursement process is a standardized interaction between providers and their designated Medicare Administrative Contractor (MAC), governed by a published set of rules[7]. Rather than having a pre-authorization approach, Medicare prescribes the coverage and documentation

---

[5] Medicare Program Integrity Manual, Pub 100-08, "Chapter 3 - Verifying Potential Errors and Taking Corrective Actions": https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/pim83c03.pdf
[6] https://www.cms.gov/medicare/payment/prospective-payment-systems
[7] The rules are outlined in Medicare Manuals and through information provided by the Medicare Administrative Contractor.

APP_0107

**Expert Report—CONFIDENTIAL**
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

requirements. The cycle begins when a provider submits a claim to their MAC. In submitting a claim for reimbursement, a provider is attesting that (1) the provided service was medically reasonable and necessary and (2) there is a non-zero cost incurred to provide that service to the beneficiary. The MAC then applies automated edits and policy rules and, when appropriate, requests records to verify compliance.

21. The typical CMS Form 1500 claims are submitted electronically using the HIPAA-standard 837 format, with the data required by the Health Insurance Claim Form[8] developed and maintained by the National Uniform Claim Committee (NUCC). This claim details the services rendered using Healthcare Common Procedure Coding System (HCPCS, which includes CPT) and diagnosis codes (ICD-10). Data submitted corresponding to Box 19 of the standardized Health Insurance Claim Form contains a catch-all for additional information, including specifics requested by LCDs such as the invoiced costs of or detailed descriptions of products reimbursement is requested for.[9] If requested, the provider will also send the supporting provider documentation or product invoices. The MAC's claims processing system then adjudicates the claim by applying a series of automated edits and policies.

22. A central component of this adjudication is the application of coverage determinations. National Coverage Determinations (NCDs), issued by CMS, are mandatory policies that outline whether a specific service or item is covered nationally.[10] Local Coverage Determinations (LCDs), developed by each MAC, provide further detail on coverage requirements within their jurisdiction, such as the diagnoses or clinical circumstances for which a service is considered reasonable and necessary.[11] The MAC's system checks each claim against relevant NCDs and its own LCDs; if the service does not meet the stated coverage criteria, the claim is denied. In the absence of an applicable NCD or LCD, contractors and ALJs apply the MPIM "reasonable and necessary" factors to the facts documented in the medical record.

23. Once adjudicated, the MAC issues payment and Remittance Advice (RA). The RA (the HIPPA-standard 835 transaction) is the legal and financial explanation of the claim's outcome. The 835 details every payment, adjustment, and denial, providing specific Remittance Advice Remark Codes

---

[8] https://www.cms.gov/medicare/cms-forms/cms-forms/downloads/cms1500.pdf
[9] https://www.nucc.org/images/stories/PDF/1500_claim_form_instruction_manual_2012_02.pdf
[10] https://www.cms.gov/medicare/coverage/determination-process
[11] https://www.cms.gov/medicare/coverage/determination-process/local

(RARCs) and Claim Adjustment Reason Codes (CARCs) that link each action to the precise Medical rule, statute, or coverage policy that justified it. Per the Medicare Claims Processing Manual (Chapter 22; paragraph 110), the RA serves as the provider's notice of payment and the vehicle for understanding the application of coverage rules, enabling proper posting of payments and identifying necessary corrections for denied or underpaid claims.[12]

24. If a provider disagrees with the denial or adjustment of a claim, providers have the right to five levels of appeal involving redetermination and reconsideration of the claim, as outlined by CMS.[13] At any time during the appeals process, a representative may be appointed to act on behalf of the appealing party. This process escalates up to a review at an Administrative Law Judge hearing. The five levels are: (1) Redetermination by the MAC; (2) Reconsideration by a Qualified Independent Contractor (QIC); (3) Administrative Law Judge (ALJ) hearing; (4) Medicare Appeals Council review; and (5) Judicial review in federal district court.

## C.    PROVIDER'S RESPONSIBILITIES IN THE MEDICARE REIMBURSEMENT PROCESS

25. Documentation is the basic, fundamental, and sole responsibility of the provider in Medicare reimbursements, as described in the Medicare Program Integrity Manual.[14] Proper documentation is relied upon by MACs to ascertain coverage criteria are met and services or items rendered meet the threshold for the "reasonable and necessary" standard. Documentation provided to MACs must substantiate why the service was performed, its direct relevance to the patient's condition, and any more conservative alternatives considered as required within the coverage criteria by Medicare. Creation and maintenance of medical documentation is a function of the provider in a clinical setting and the burden of proof for demonstrating the rationale for clinical decisions is solely the provider's responsibility. For skin substitute services, this typically includes: diagnosis and wound etiology, detailed wound measurements pre-/post-debridement, prior conservative treatment and duration, procedure narrative (including debridement details), product identity/lot/invoice, fixation method and rationale (if used), and follow-up plan.

---

[12] Medicare Claims Processing Manual (Ch22), https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/clm104c22pdf.pdf

[13] https://www.cms.gov/medicare/appeals-grievances/fee-for-service

[14] Medicare Program Integrity Manual, Pub 100-08, "Chapter 3 - Verifying Potential Errors and Taking Corrective Actions": https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/pim83c03.pdf

Expert Report—CONFIDENTIAL
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

26. If there is a disagreement with a reimbursement decision, it is also the provider's responsibility—directly or via a designated proxy—to engage with the appeals process instituted by CMS.

## V.   REVIEW OF INSTRUCTIONS FOR USE (IFU)

27. Instructions For Use (IFU) documentation are manufacturer-created regulatory documents required for medical products that provide safety and procedural guidance for healthcare providers, patients, and caregivers. While IFUs outline appropriate uses, contraindications, and procedural steps, they are not the sole or definitive resources in clinical practice. A provider's treatment decisions integrate this information with clinical knowledge, experience, patient-specific factors, and awareness of coverage criteria set by governing NCDs or LCDs, to determine what is medically reasonable and necessary for each individual patient. Accordingly, IFUs inform safe use, but Medicare coverage hinges on statutory/regulatory standards and contractor policies applied to the documented facts required from the provider.

28. Professional discretion is paramount to synthesizing an array of information used to make clinical decisions. Product distributors and sales representatives serve as a source of information regarding availability and basic specifications of supplies, but statements related to product use may be overly generalized. Clinical decision-making and documentation remain the provider's responsibility and cannot be delegated to vendors.

29. Coverage determinations made by MACs ultimately rely on NCDs and LCDs, and not individual products' IFUs. [15] Where no applicable or controlling NCD/LCD exists, contractors and ALJs evaluate medical necessity under the MPIM criteria based on the medical record.

## VI.   REVIEW OF LOCAL COVERAGE DETERMINATION

30. The relevant version of the LCD document titled "Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities" for First Coast Service Options, Inc. was reviewed, which was applicable to all services performed from 01/08/2019 through 12/31/2025.[16] The LCD provides clarification to providers of the criteria to meet the reasonable and necessary threshold for coverage pertaining to the application of skin substitute grafts for

---

[15] https://www.cms.gov/medicare/coverage/determination-process
[16] LCD Document, "Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities,"
https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=36377&ver=7&

APP  0110

Expert Report—CONFIDENTIAL
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

diabetic foot ulcers (DFU) and venous leg ulcers (VLU), including covered indications and coverage limitations. It also specifies documentation elements that must be present to establish medical necessity for these indications.

31. The LCD does not extend to alternative applications but does reinforce the fundamental Medicare principle that all services must meet the reasonable and necessary standard and stipulates that the supply must be used per its FDA requirements. Accordingly, when claims fall outside the LCD's scope, medical necessity is evaluated under MPIM factors rather than the LCD.

32. Skin substitute grafts are described to "include non-autologous human skin (e.g., dermal or epidermal, cellular and acellular) grafts (e.g., homograft, allograft), non-human skin substitute grafts (i.e., xenograft), and biological products that form a sheet scaffolding for skin growth." The products provided by Legacy meet this definition. Thus, for DFU/VLU within the LCD's scope, reimbursement is determined by satisfying the LCD's clinical and documentation criteria.

33. The LCD explicitly states that, "application of a skin substitute graft for lower extremity DFU and VLU will be covered when the following conditions are met and documented as appropriate for the individual patient."[17] As such, it would stand to reason that Legacy's skin substitute grafts would be reimbursed within the limitations of the LCD so long as claims are supported by proper and sufficient documentation that the coverage conditions were met. For uses not addressed by this LCD, providers should document and, if necessary on appeal, demonstrate safety, non-investigational status, and appropriateness per MPIM, supported by literature or TRG correspondence when applicable.

## VII.  REVIEW OF CLAIMANT'S DENIAL LETTERS

34. Ms. Leeberg provided four denial letters from First Coast describing the reversal of payments that were made to Practitioners in Motion. All four denial explanations contained information for multiple services, including the visit itself, debridement, application of dressings, and the Zenith skin substitute grafts. The reasons for denial stated by CMS described ***insufficient documentation*** as the primary reason for denial. The letters also identify coding/bundling issues and instruct the provider on additional evidence to submit on reconsideration (e.g.,

---

[17] [17] LCD Document, "Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities," https://www.cms.gov/medicare-coverage-database/view/lcd.aspx?lcdid=36377&ver=7&

Expert Report—CONFIDENTIAL
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

operative/procedure note details and literature/TRG materials).

35. Specifically for the Zenith skin substitute grafts, CMS provided a secondary reason in the provided denials, stating that Zenith was "not reasonable and necessary because the skin substitute graft was applied for wound healing and treatment, not merely as a cover or barrier for the wound."[18] The denial references FDA interpretation and a Tissue Reference Group[19] (TRG) determination indicating that use of an amniotic membrane for wound healing may be considered non-homologous use under 21 CFR Part 1271, which would place the product outside Section 361 of the Public Health Service Act.

36. A fourth denial presented provided an alternative reason for Zenith's denial, citing the lack of surgical anchors[20] which should have been challenged in an appeal.  As described by the Instructions for Use (IFU), anchoring is "based on the physician's choice of fixation including staples or sutures in surgical procedures when medically necessary."[21] It is within the physician's or provider's purview to apply clinical judgement to determine the method of fixation or if fixation is medically necessary. This clinical decision making and supporting information should be clearly documented. Where fixation is not clinically indicated, the record should state the rationale and alternative fixation (e.g., dressings) used.

37. In each of these cases. We have not seen the appeal response to the MAC.  Consequently, I am unable to review them and determine the adequacy of the appeal. The absence of appeal packets limits assessment of whether the contractor's stated deficiencies were substantively addressed.

38. Additionally, I have not seen Ms. Leeberg medical record documentation which is very pertinent since the MAC indicated a problem with Ms. Leeberg's documentation; thus, I cannot opine of the adequacy of her documentation.  Complete encounter notes, procedure narratives, and product documentation would be necessary to evaluate compliance.

39. Further, the Administrative Law Judge Dennis S. Scott of the Office of Medicare Hearings and Appeals provided opinions on the reimbursement and coverage of the skin substitute Dual Layer

---

[18] Case 4:25-cv-00319-P, Document 21, PageID 288-302.
[19] Tissue Reference Group | FDA
[20] Case 4:25-cv-00319-P, Document 21, PageID 303-309.
[21] Case 4:25-cv-00319-P, Document 21, PageID 285.

Expert Report—CONFIDENTIAL
**Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**

Impax Membrane in an appeal from Gateway Foot and Ankle Center, PLC, found that the use of Impax—also an amniotic membrane allograft—was covered and reimbursable in accordance with Medicare coverage guidelines.[22] In the absence of a LCD, as is the case with Ms. Leeberg in light of First Coast's LCD not pertaining to non-homologous use of skin substitute grafts, Judge Scott found the fundamental principles of the reasonable and necessary criteria found in the MPIM are controlling. The decision applied the MPIM factors to conclude the product was safe, not investigational, and appropriate based on the documented clinical course.

40.    The assessment of the criteria for reasonable and necessary made by Judge Scott concluded the following related to the non-homologous use of amniotic membrane skin substitute grafts' (1) safety and efficacy and that (2) it is not experimental or investigational:

> (As quoted) "Impax was approved by the FDA as an HCT/P under the 361 process. This essentially bypasses the formal FDA drug/biological device approval process. A product designated as an HCT/P does nor require animal and clinical trials to prove safety for use 111 lemons and to prove the effectiveness of the product in treating the condition the manufacturer intends to seek as an indication (i.e., a homologous use). 21 C.F.R. §§ 1271.l0(a), 1271.20. Additionally, while not binding in this case, I note that the Novitas LCD L35041 makes dear that skin substitute products such as Impax are considered the standard of care for chronic non-healing wounds. Thus, as of the date of service, peer-reviewed, evidence-based literature was not required. I am persuaded that Impax was not experimental and investigational and was safe and effective when used for chronic non-healing wounds in accordance with the manufacturer's guidelines and section 361 homologous use."

41.    Given the applicability of Judge Scott's opinion pinpointing coverage for the Legacy products, I would have expected to see it used in Ms. Leeberg's appeals. However, no documentation regarding the actual appeals were provided, and I cannot comment on the appropriateness or adequacy of her appeals.

## VIII.  CONCLUSIONS

42.    Based on the established framework required for Medicare reimbursement and the

---

[22] Case 4:25-cv-00319-P, Document 24, PageID 347-355.

explanations contained in the denial letters supplied by Ms. Leeberg, the MAC's denials appear to be based on a lack of documentation by Ms. Leeberg and not caused by Legacy. The provider failed to provide sufficient documentation to support her claims. The denial rationales repeatedly identify documentation insufficiency (including lack of separately identifiable E/M, inadequate debridement operative details, and missing clinical elements), and direct the provider to supply corrective materials on reconsideration (e.g., additional procedure-note details, literature/TRG correspondence) to establish medical necessity. If Ms. Leeberg documented the use of Zenith skin substitute grafts in a manner that did not align with its documented Medicare coverage criteria or approved use, the provider is solely responsible for it falling outside the scope of coverage. Medicare coverage turns on the provider's clinical judgment and documentation that the "reasonable and necessary" standard is met; vendor materials, including IFUs, do not shift that responsibility.

43.   Additionally, the MAC's denial of Zenith skin substitute grafts on the grounds of its use being non-homologous ignores that the reasonable and necessary criteria outlined in MPIM should be applied. As described by the assessment made by Judge Scott in the appeal by Gateway Foot and Ankle Center, PLC, the first two criteria were met. The third and final criterion is the appropriateness of the services, which would be demonstrated through sufficient documentation. Accordingly, where no applicable or controlling NCD/LCD applies or where jurisdictional LCDs do not address a specific use, adjudicators evaluate safety, non-investigational status, and appropriateness based on the medical record; providers can address non-homologous concerns with peer-reviewed literature and TRG materials and by documenting the clinical course, prior conservative therapy, and procedure details.

44.   The denial letters are also specific to the first step of the Medicare appeals process, and without additional communiques suggests that the provider has not duly exhausted the five levels of appeal to which they are entitled and responsible for engaging with if they disagree with a claim's adjudication. The Remittance Advice and redetermination decisions identify next-step appeal rights and the precise curative evidence requested; effective advocacy typically includes tailoring the reconsideration to the cited CARC/RARC codes and supplying the missing clinical documentation and literature.

45.   The contract period for the use of these skin grafts is over two years.  This is adequate time for

Ms. Leeberg to get responses and to identify her internal issues regarding her documentation, and necessary clarifications/requirements for coverage by the MAC. Whatever damage Ms. Leeberg claims could have been mitigated early on, but it appears she did not follow up on claim denials or clawbacks. In my opinion, timely audits of denial trends, targeted documentation remediation (e.g., debridement operative detail, wound measurements, fixation rationale), and pursuit of reconsideration/ALJ review with supporting literature/TRG correspondence would have materially reduced exposure and improved outcomes over this period.

## IX.   USE AND DISCLOSURE OF EXPERT REPORT

46.   This Expert Report is to be used only for purposes of this litigation. To the extent that I am provided with additional information or new data is produced, I reserve the right to amend my opinions accordingly. I also reserve the right to respond to any additional information and expert opinions offered by any other parties to this litigation.

   *[End of Report]*

Submitted by:

*Charlotte L Kohler*          Date: <u>January 1, 2026</u>

Charlotte L. Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC
President

# EXHIBIT 1

APP_0116

Exhibit 1

**LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC v. CRISTI LEEBERG D/B/A PRACTIOTIONERS IN MOTION, PLLC**
**Case No. 4:25-cv-00319-P**
**Charlotte L. Kohler - Expert Report**
**Documents Received and Relied Upon**

| Ref | | File Type | File Name |
|---|---|---|---|
| 1 | Document 06 PageID 59-92 | PDF | 2025.04.07 [DOC 06] First Amended Complaint w.Exhibits |
| 2 | Document 18 PageID 182-192 | PDF | 2025.07.18 [Doc 18[ Defendant's Answer & Affirmative Defenses |
| 3 | Document 21 PageID 258-309 | PDF | 2025.09.15 [Doc 21] Defendant Leeberg's Counterclaim Against Legacy |
| 4 | Document 24 PageID 343-355 | PDF | 2025.09.25 [Doc 24] Appx ISO Pltf's MTD Counterclaims |
| 5 | Document 31 PageID 389-403 | PDF | 2025.11.06 [Doc 31] Reply to Defendant's Response to Legacy's Motion to Dismiss Counterclaims |
| 6 | | PDF | Deposition of Cristie Leeberg, December 5, 2025. |

# EXHIBIT 2

APP_0118

 

**KOHLER**
HEALTHCARE CONSULTING

Exhibit 2

**Charlotte L. Kohler**
**President**
ckohler@kohlerhc.com

**Headquarters**
2929 Hernwood Rd.
Woodstock, MD 21163
**Phone: 410.461.5116**
**Cell: 443.956.1434**
**Fax: 410.461.5117 (HIPAA Secure)**

**Education and Professional**
University of Maryland—Business, 1973
University of Maryland/WAVE— Nursing
    [RN no longer maintained]
State of Maryland—Springfield—LPN, 1965
    [LPN no longer maintained]
Certified Public Accountant, 1974
Certified Patient Accounting Manager, [CRCE], 1998
Certified Valuation Analyst, 1996
Certified Professional Coder, 2004
Board of Advanced Medical Coding, 2006
Certified Healthcare Business Consultant, 2008
Certified Professional Compliance Officer, 2020

**Prior Employment**
Navigant Consulting, Inc. 2003-2009
Kohler HealthCare Consulting, Inc. 2000-2003; 2009
Kohler HealthCare Consultants, Inc. 1993- 1999
Kohler & Co. 1984-1996
Helix Health, Inc. 1996-2000
Walpert, Smullian & Blumenthal, P.A. 1994-1996
Professional Health Services, Inc. 1980-1984
Arthur Andersen & Co. 1973-1979

**Professional Associations**
Medical Group Management Association (MGMA)
    national and local member, 1984 to present,
    President 1996
Healthcare Financial Management Association
    (HFMA), advanced, national, and local member
    1984 to present. Awards: Follmer Bronze, Reeves
    Silver, and Muncie Gold Merit, and The
    President's Award
American Association of Health Administrative
    Management (AAHAM), national and local
    member 1984 to present
National Association for Ambulatory Urgent Care
    (NAFAC), National Treasurer and board member
    1991-1997, national member 1991 to present
National Association of Certified Healthcare
    Consultants (NACHC), formation member
Society of Ambulatory Care Professionals  [Now  AHA]
National Association of Certified Valuation Analysts
    (NACVA) 1996 to present
American Institute of Certified Public Accountants
    (AICPA), 1973 to present
Maryland Association of CPA (MACPA),
    current and active Maryland License No. 4052,
    1973 to present
Healthcare Business Management Association
(HBMA)
American Health Lawyers Association (AHLA), non-
    attorney member, 2008 to present
Urgent Care Association of America (UCAOA)

**Charlotte Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC** is President of Kohler HealthCare Consulting, Inc. She specializes in healthcare regulatory compliance, finance, coding, consulting, litigation, and investigation. She has over 40 years of healthcare experience starting with the clinical nursing side to the finance, operational, and compliance side of healthcare.

**Professional Experience**

Ms. Kohler has assisted clients in evaluation of issues, expert testimony, litigation support, valuation damages, medical coding/billing related to potential fraud, abuse, and kickback issues, as well as damage  disputes. Ms. Kohler has assisted in many complex regulatory matters including:

- Specific issues relating to a joint defense group in a nationwide managed care litigation brought by a class of 700,000 physicians against large health insurers, all Blue Cross/Blue Shield plans and similar state cases.
- Claims by payers against hospitals, physicians, and other suppliers/providers for billing practices and non-compliance.
- Claims by providers against payers regarding non-payment.
- Claims of improper coding and billing practices on both State and Federal levels, including Hierarchical Condition Category (HCC) risk adjustment.
- Disputes between payers and providers regarding payment.
- Disputes regarding Medicare, Medicaid, and Tricare Qui Tam cases.
- Challenge of documentation to support services claimed.
- Inappropriate placement of patients in inpatient status.
- Litigation between providers and billing companies
- Reimbursement issues involving hospital, pro-fee, other suppliers/ providers.
- Disputes regarding valuations, including damages and covenant not to compete.

During her years at Kohler HealthCare Consulting (KHC), she and her firm have provided regulatory compliance services to over 60% of the hospitals in Maryland, as well as hospitals and other health related organizations across the United States on an ongoing basis. For any litigation engagement, it is based on a foundation of a broad range of consulting services including reimbursement regulatory support to providers and attorneys regarding billing, coding, documentation in the areas of home care, radiology, hospital billing, DME, Therapy, ASC, anesthesia, laboratory, pharmacy, and physician practices. KHC,  under the direction of Ms. Kohler, provides services as an Independent Review Organization (IRO) for providers under Integrity Agreements.

APP_0119

Ms. Kohler spent eight years at the Arthur Andersen & Co. audit and consulting practice, where she progressed from Staff Auditor to Manager. Her audit and consulting experience included publicly traded, privately owned, governmental and not-for-profit organizations. Significant audit clients include health care organizations, hospitals, manufacturing, and retail establishments. Ms. Kohler prepared cost reports and provided national training on cost reports while at Arthur Andersen & Co.

Later, Ms. Kohler was the Regulatory Compliance Officer and an internal consultant for a five-hospital integrated health delivery system in Baltimore.  In that role, she provided overall compliance guidance and provided the necessary assistance to investigate/evaluate and resolve compliance issues at the hospitals. She also developed an Ambulatory Surgery Center, a Home Care Agency, and maintained overall administrative and management responsibility for a wholly owned physician billing company, which billed for over 500 teaching and non-teaching physicians.

Ms. Kohler currently assists attorneys and their clients (hospitals and other healthcare providers and suppliers) in understanding the regulatory requirements to code and bill properly often related to self-reporting situations.  She also performs educational surveys, including the review of Revenue Integrity, current charging, and coding methodology (CPT and ICD-10 CM) to determine potential "audit liability." She provides training to staff and physicians regarding documentation and coding to correct misunderstandings and avoid future problematic issues.

Compliance is a significant component of the professional services provided by Ms. Kohler from the application of standards to the investigation of how and why standards are not met. KHC performs compliance reviews for hospitals, specialty medical practices, home health agencies, and other health care organizations and often acts as an Independent Review Organization (IRO) under government mandated integrity agreements.

For litigation, Ms. Kohler provides investigative assistance to legal counsel and works to develop a strategy for trial defense and corrective action plans. In the consulting arena, many clients have been working with Ms. Kohler and KHC for over 30 years.

**LITIGATION SUPPORT**

Due to the nature of litigation support, not all cases in which Ms. Kohler has been designated as an expert have required deposition or testimony beyond the preparation of an Expert Report. Ms. Kohler is qualified in both Federal and State Courts.  For criminal cases, demonstratives have been developed.

➢ Provided Expert and Consulting Services to Norton Rose Fulbright: Baylor University Medical Center (Claimant) v Aetna Health, Inc. (Respondent). Case No. 01-23-0001-9634. Settled January 2025.

➢ Provided Expert and Consulting Services to Norton Rose Fulbright: Health Services Network Hospital, Inc., et al., v. Blue Cross and Blue Shield of Texas. Case No. AAA-01-23-0001-9755. Ongoing.

➢ Provided Expert and Consulting Services to Gunster, Yoakley & Stewart, P.A.: East Florida Division,

APP_0120

Exhibit 2

Inc., and North Florida Division, Inc. vs. AmeriHealth Caritas Florida, Inc. f/k/a Florida True Health, Inc. formerly d/b/a Prestige Health Choice. Case No. 01-23-0003-5621. Settled November 2024.

➢ Provided Expert and Consulting Services to Dentons Sirote: Robin Stephens v. Zachary Blake Pearson; American Southern Insurance Company; State Farm Mutual Automobile Insurance Company; University of Alabama Hospital. Civil Action No: CV-2021-900376. Ongoing.

➢ Provided Expert and Consulting Services to Steptoe LLP: Memorial Hermann Health System, Claimant v. Health Care Service Corporation d/b/a Blue Cross and Blue Shield of Texas, and HCSC Services Group, and GHS Insurance Co. Case No. 01-23-0004-2218. Settled January 2025.

➢ Provided Expert and Consulting Services to Burg Simpson: Andrew S. Brown, D.O., and Belmarie Roman-Maradiaga, M.D., k/n/a Bel Reid, M.D., for themselves and on behalf of all others similarly situated, V. Defendants: Banner Health, an Arizona Nonprofit Corporation, and Banner Medical Group Colorado, a Colorado Nonprofit Corporation. Case No. 2020CV30620. Ongoing.

➢ Provided Expert and Consulting Services to The Simon Law Firm, P.C.: Sharon Vernor, individually and as the surviving mother of Lequon Marquis Vernor, deceased, v. Thomas W. Jenkins, PA-C, Gabriela Sales De Bruin, M.D., Sekorai A. Wiggins, R.M.A., The Washington University, and Lincare, Inc. Cause No.: 2222-CC09317. Declaration prepared. Ongoing.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: Dinesh Verma Medical P.C. and State Farm Mutual Automobile Insurance Company. Case No. 17-20-1158-7147. Settled.

➢ Provided Expert and Consulting Services to Fredrikson & Byron, P.A.: Amerita Inc. v. Optum Public Sector Solutions, Inc. et al, AAA Case No. 01-23-0000-7997. Settled September 2024.

➢ Provided Expert and Consulting Services to Duane Morris, LLP: Knox County Hospital District v. Aetna Health Management, LLC. AAA Case No. 01-22-0004-5541. Expert Report. Settled January 2025.

➢ Provided Expert and Consulting Services to Charles River Associates: Life Point Corporate Services General Partnership et al. v. Cigna Health and Life Insurance Company. Claim No. 6721. Testified February 2023. Settled.

➢ Provided Expert and Consulting Services to Walraven & Westerfeld, LLP: The Regents of the University of California, UCLA v. United Healthcare Military Veterans Services, LLC. Case No. 2:19-cv-06190. Settled February 2024.

➢ Provided Expert and Consulting Services to King & Spalding, LLP, and Prime HealthCare Services: Prime Healthcare Services vs. CalOptima, Varis, LLC. Case No. 30-2023-01315976. Settled.

➢ Provided Expert and Consulting Services to Thomas Farrington, Esq. Taivon Giles v. David Dean Marler, International Marketing Group, Inc. Settled December 2023.

➢ Provided Expert and Consulting Services to Torricella Law, PLLC.: Gabrielle Assouline v. Southwest Airlines. Case No. CACE-22-003982. Settled January 2024.

➢ Provided Expert and Consulting Services to Morgan, Lewis & Bocklus, LLP and TEVA Pharmaceuticals: Fort Payne Hospital Corporation et. Al. v. McKesson Corporation. Case No. CV-2021-900016. Settled.

➢ Provided Expert and Consulting Services to Markham Read Zerner, LLC.: Health Care Service

APP_0121

Exhibit 2

Corporation, A Mutual Legal Reserve Company v. Toth Enterprises II, P.A. D/B/A Victory Medical & Family Care, and Victory Urgent Care, LLC. Claim No. 6644. Settled July 2023.

➢ Provided Expert and Consulting Services to King & Spalding, LLP: Prime HealthCare Services-St. Francis Medical Center, Centinela Hospital Medical Center, Garden Grove Hospital Medical Center, Desert Valley Hospital, San Dimas Community Hospital, West Anaheim Medical Center V. Kaiser Foundation Health Plan, Inc., Medliminal, LLC. Ongoing.

➢ Provided Expert and Consulting Services to King & Spalding, LLP: Valley Health System, LLC D/B/A Valley Hospital Medical Center, et al. v. JSA P5 Nevada, LLC D/B/A Healthcare Partners Nevada. Settled June 2023.

➢ Provided Expert and Consulting Services to King & Spalding, LLP: Prime Healthcare Centinela, LLC dba Centinela Hospital Medical Center et. Al. v. Easy Choice Health Plan et al. Settled June 2023.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: Southeast MI Surgical Hospital, LLC, Integrated Hospital Specialists, P.C. Alliance Anesthesia, P.L.L.C., and Insight Anesthesia, P.L.L.C., (Anthony Duane Jackson, Jr.) v. Allstate Insurance Company. Case No. 21-006296-NI. Settled.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: Walker vs. Allstate Insurance Company. Case No. 22-000511-NF. Settled October 2023.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: Great Lakes Professional D/B/A Doc's Physical Therapy & Rehab Services, (Tony Brantley) v. Allstate Insurance Company. Case No. 21-014823-CZ. Settled.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: Therapy Professionals, PLLC, (Deaivon Buckley) v. Allstate Insurance Company. Case No. 2021-191078-NF. Settled June 2023.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: CET Pharmacy Service, (Fatema Jackson) v. Allstate Insurance Company. Case No. 22-000306-NF. Settled August 2023.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: American Center for Pain Management, Paramount Physical Rehab, Discount Drugs (Tabria Moore) v. Allstate Insurance Company. Case No. 21-012380-NI. Settled August 2023.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: McLaren Macomb, Lakeside Anesthesia Associates, PLLC, GLPS Staffing Solutions, LLC, and Movement Orthopedics, PLLC, (Pricilia Rodriguez-Trillo) vs. Allstate Insurance Company. Case No. 22-008486-NF. Settled in August 2023.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: Paramount Physical Rehab, LLC, and A-Z Rides, LLC (Jaylen Pharr) v. Allstate Insurance Company. Case No. 2021013102-NF. Settled 2023.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: The Surgical Institute of Michigan, LLC, Northland Radiology, Michigan Business Management Group, Dependable

APP_0122

Transportation (Hussein Sayed), v. Cedrick Garner Vanhook, Allstate Insurance Company. Case No. 21-008285-NI. Settled 2023.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: Aquatic Solutions Physical Therapy, Discount Drugs Pharmacy, Elite Diagnostics, Inc., Michigan Business Management Group, Inc., Northland Radiology, Pioneer Labs Houston, Waller Health Center on Cathedral Green, (Sarah McGee& Darian Ward) v. Allstate Insurance Company). Case No. 20-008472-NI. Settled 2023.

➢ Provided Expert and Consulting Services to King, Tilden, McEttrick & Brink, P.C.: Flint Region ASC, MI Clinic Neurosurgery, PLLC, (Bridget Strick), v. Allstate Insurance Company, Case. No. Settled 2023.

➢ Provided Expert and Consulting Services to VerisLaw, PLLC. NextGen Wellcare Group, LLC. v. WellHealth Ventures, LLC, et al. Case No. 471-06681-2021. Ongoing.

➢ Provided Expert and Consulting Services to Akerman LLP: Jerry Berg v. Northwest Texas HealthCare System, Inc. Cause No. 110799-2-CV. Settled July 2023.

➢ Provided Expert and Consulting Services to Charles River Associates: Ambry Genetics Corporation v. Anthem Blue Cross and Blue Shield. JAMS Ref. No. 1220071554. Testified September 2022. Settled.

➢ Provided Expert and Consulting Services to Reminger Co., LPA: Concord Psychiatry, LLC V. Advanced Billing and Consulting Services, Inc. Case No. 21CV7476. Settled July 2023.

➢ Provided Expert and Consulting Services to GS Labs LLC vs. Blue Cross Blue Shield of Kansas City. No. 4:21-cv-00525-FJG. Report to Counsel. Settled.

➢ Provided Expert and Consulting Services to Butler Snow, LLP: Apolonia Scott vs. Tennessee Steel Haulers, LLC. No. 4:22-CV-00063-DMB-JMV. Settled April 2023.

➢ Provided Expert and Consulting Services to Thompson Hine LLP. Gravity Diagnostics, LLC v. Laboratory Billing Solutions, INC. Civil Action No.:2:21-cv-00002. Settled April 2023.

➢ Provided Expert and Consulting Services to Miles & Stockbridge: Infusion Management, L.L.C. and Altus Infusion Billings, L.L.C., v. Matthew P. Mardiney, M.D., P.C. Civil Action No. 4:22-cv-679. Settled December 2023.

➢ Provided Expert and Consulting Services to Charles River Associates. United States of America against Harold Bendelstein. Case No. 1:18-cr-00309-SJ. Testified July 2022. Case Concluded.

➢ Provided Expert and Consulting Services to Pain Specialists of America regarding laboratory testing. Vivek Mahendru, M.D., Central Texas Pain Institute vs. Pain Specialists of America LLC, and PSA Group Holdings. Settled November 2021.

➢ Provided Expert and Consulting Services to Charles River Associates. EABS III, LLC vs. Project Build Behavioral Health, LLC. Arbitration No. 01-19-0000-8657. Settled August 2021.

➢ Provided Expert and Consulting Services to Charles River Associates. United States of America vs. Crescendo Bioscience, Inc. and Myriad Genetics, Inc. Case No. 3:16-CV-2043-TSH. September 2021.

➢ Provided Expert and Consulting Services to Nichols Brar Weitzner & Thomas LLP. Spectrum Diagnostic Labs LLC vs. Health Care Service Corporation, a Mutual Legal Reserve Company, d/b/a Blue Cross and

APP_0123



 Exhibit 2

Blue Shield of Texas. Case No. 01-21-0004-7229. Settled  August 2022.

➢ Provided Expert and Consulting Services to Nichols Brar Weitzner & Thomas LLP regarding insurance payment dispute. Jason Bailey, MD., P.S. vs. CJS Pathways LLC d/b/a Christian Brothers Automotive Health Benefit Plan and United Healthcare Services, Inc. Completed November 2021. Settled.

➢ Provided Expert and Consulting Services to Markham & Read; Mission Toxicology, LLC and Sun Clinical Laboratory, LLC et al vs. UnitedHealthcare Insurance Company, Inc., et al. Settled 2022.

➢ Provided Expert and Consulting services through Charles River Associates to Bardy Diagnostics Inc. Bardy Diagnostics, Inc. a Delaware Corporation vs. Hill-Rom Inc. C.A. No. 2021-0175-JRS. Testified May 2021. Arbitration ruling and settlement July 2021.

➢ Provided Expert and Consulting Services to the Gunster Law firm and Physician Partners of America LLC regarding Cigna's Clinical Review of ambulatory surgery center billing. In settlement discussions  as of September 2022. Settled June 2023.

➢ Provided Expert and Consulting Services to Scripps Health, regarding Analysis of Revenue Cycle process and Damages claimed by the Plaintiff. Scripps Health vs. nThrive Revenue Systems LLC, formerly known as MedAssets Analytical Systems LLC. United States District Court for Southern District of California. Case No. 19-CV-0760-H-BLM. Expert Report Submitted January 4, 2021. Settled October 2021.

➢ Provided Expert and Consulting services to Knox County Hospital District regarding failure to pay for covered laboratory service claims. Knox County Hospital District vs. Blue Cross & Blue Shield of Texas, an Unincorporated Division of Health Care Services Corporation, a Mutual Legal Reserve Company. Arbitration Claim No. 5608. Settled March 2022.

➢ Provided Expert and Consulting Services to relators Gregory Duncan, M.D., and Gary Hulbert regarding hospital billings of recovery times. The State of California, ex rel Gregory Duncan and Gary Hulbert vs. Sutter Health, et al.; State of California Superior Court. Case No. RG17846895. Partial exclusion. Testified July 2023.

➢ Provided Expert and Consulting Services to Hausfeld LLP regarding the billing of services. District Council #16 Northern California Health and Welfare Trust Fund vs. Sutter Health. Case No. RG15753647. Concluded.

➢ Provided Expert and Consulting Services to RA Pain Services to determine damages. Tox Design Group, LLC vs. RA Pain Services, PA; Expert Report. Settled June 2022.

➢ Provided Expert and Consulting Services to Krishna Parchuri, MD regarding alleged insurance fraud, kickbacks, and bribes. Criminal Case. The United States of America vs. Krishna Parchuri, et al.; U.S. District Court for the Northern District of Oklahoma. Case No. 18-CR-251-CVE; Dismissed without Prejudice. Case closed August 2020.

➢ Provided Expert and Consulting Services to Jaimee Martocci under Attorney-Client Privilege, Civil Matter. Jaimee Martocci vs. MDX Diagnostics, et al.; State of New Jersey Superior Court—Monmouth County. Case No. MON-L-2450; Expert Report submitted December 31, 2019. Settled October 2022.

➢ Provided Expert and Consulting Services to Gerald Champion Regional Medical Center regarding

APP_0124

payment issues between the hospital and the insurance company. Otero County Hospital Association d/b/a Gerald Champion Regional Medical Center vs. United Healthcare Insurance Company. Case No. 01-18-0002-5952. Arbitration settled March 2022.

➢ Provided Expert and Consulting Services to Gerald Champion Regional Medical Center regarding payment issues between the hospital and the insurance company. Otero County Hospital Association d/b/a Gerald Champion Regional Medical Center vs. BlueCross BlueShield. Case No. 01-19-0002- 8871. Arbitration. Concluded.

➢ Provided Expert and Consulting Services to Butzel Long regarding a federal fraud case. United States of America vs. James Letko, Steven King, Rami Lazecki, Patricia Flannery, and Katherine Peterson. Case No. 19-CR-20652. Settled October 2022.

➢ Provided Expert and Consulting Services to Jeffrey Gross, MD regarding alleged mail fraud, wire fraud, and conspiracy. Criminal Case. United States of America vs. Jeffrey David Gross; United States District Court for the Central District of California. Case No. 18-00014-CJC. Settled October 2020.

➢ Provided Expert and Consulting Services to Remus Repta, MD regarding licensing and accreditation. Pablo Prichard, MD vs. Remus Repta, MD and Pablo Prichard, MD vs. Arizona Aesthetics Associates, LLC, et al.; Superior Court of the State of Arizona in and for the County of Maricopa. Case Nos. CV2018- 009323 and CV2018-056062. Expert Report. Settled December 2021.

➢ Provided Expert and Consulting Services to WellCare of Florida regarding wrongful denials and underpayments of claims for reimbursement submitted to WellCare. Multiple hospitals within the Steward Healthcare system of Florida vs. Wellcare of Florida, Inc. Case No: 2018-022675-CA-01. Settled August 2021.

➢ Provided Expert and Consulting Services to Hallett & Perrin regarding HIPAA violations. Stephen Courtney, M.D. and Stephen P. Courtney, M.D., P.A. vs. Plano Orthopedic and Sports Medicine, P.A. Cause No. 417-03159-2018. Settled January 2022.

➢ Provided Expert and Consulting Services to Wheeler Trigg O'Donnell LLP regarding medical billing and reimbursement. Premier Medical Corporation vs. Quality Air LLC. Settled September 2021.

➢ Provided Expert and Consulting Services to Pribanic & Pribanic regarding physician negligence. Marilyn J. Mogush vs. Allegheny Health Network; Forbes Regional Hospital. Settled September 2021.

➢ Provided Expert and Consulting Services to WellCare of Georgia regarding alleged reimbursement issues. North Fulton Medical Center, Inc., et al. vs. WellCare of Georgia, Inc. American Arbitration Association. Case No. 01-18-0002-7150. Expert Report provided May 2020. Settled December 2020.

➢ Provided Expert and Consulting Services to Douglas Sung Won, M.D. and Nick Nicholson, M.D., [21 total defendants] regarding alleged insurance fraud, kickbacks, and bribes for a Grand Jury Indictment case. Criminal Case. United States vs. Barker, et al.; U.S. District Court for the Northern District of Texas, Dallas Division, January 24, 2017, Case No. 3:16-CR-516-D (N.D. Tex. Jan. 24, 2017). Provided trial testimony. Case closed April 2019.

➢ Provided Expert and Consulting Services to Victory Medical Center Landmark regarding failure to pay for services rendered. Neil Gilmour, III, Solely in his Capacity as Trustee of the Victory Medical Center Landmark Center Landmark Unsecured Creditors' Grantor Trust vs. HealthSmart Benefit Solutions,

APP_0125

**Charlotte Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**                    **Page 7**


Inc., et al.; U.S. District Court for the Southern District of Texas, Houston Division, Case No. 4:17-CV-02714. Partial exclusion of testimony. Settled December 2019.

➢ Provided Expert and Consulting Services to Victory Hospitals regarding HCSC failure to pay Victory according to the Out-of-Network reimbursement terms contained in the governing plans for services provided to HCSC insureds during the Period of Interest. Victory Medical Center Beaumont, LP, et al., (Plaintiffs) vs. Health Care Services Corporation, (Defendants); Civil Action No. 3:17-cv-00110. Provided deposition, partially excluded. Case resolved/settled.

➢ Provided Expert and Consulting Services to Management Services Network LLC regarding failure to pay. Casper Medical Imaging, PC; and Outpatient Radiology, LLC vs. Management Services Network, LLC; American Arbitration Case No. 01-18-0001-3752. Deposed. Settled December 2019.

➢ Provided Coding and Reimbursement Consulting Services to Blank Rome Aventis; U.S. ex rel. Gohil vs. Aventis; Provided Expert Report December 2020. Settlement under seal, August 2021.

➢ Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company vs. Elite Center for Minimally Invasive Surgery LLC; Houston Metro Ortho and Spine Surgery Center LLC; and Elite Ambulatory Surgery Centers LLV d/b/a Elite Surgical affiliates. Civil Action No. 4:16-cv-571, U.S. District Court for the Southern District of Texas. Expert Report. Settled May 2018.

➢ Medical Transcription Billing, Corp. (Plaintiff) vs. Associated Gastroenterology Medical Group and AGMG Endoscopy Center (Defendant); DOCKET No. SOM—L 1428 15. Settled May 2018.

➢ Provided Expert Support on billing company process in The United States District Court for The Eastern District of Pennsylvania; Moore Eye Care, P.C., et al., Plaintiffs - CIVIL ACTION NO: 15-CV-05290-SD vs. SOFTCARE SOLUTIONS INC., et al., Defendants. Expert Report. Settled May 2019.

➢ SHARP—ASC, et al; Litigation Assistance and Possible Expert Testimony for two lawsuits by several entities. April 2017. Settled May 2019.

➢ Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire and Casualty Insurance Company, Plaintiffs, vs. David Shawa, M.D., Andrew Morris, D.C., Nicholas Loloee, D.C., the S.H.A.R.P. Treatment of South Bay, Inc., Sharp Surgery, Inc., and DOES 1 through 100, Inclusive. Case No. BC525911, located in the Superior Court of the State of California, County of Los Angeles-Central District. Deposition given. Settled November 2018.

➢ Community United Methodist Hospital, Inc. vs. WellCare Health Insurance Company of Kentucky, Inc., Commonwealth of Kentucky, Jefferson Circuit Court. Case No. 16-CI-001536. Settled April 2018.

➢ Provided Billing Review Litigation Support and Expert Testimony. Tyler vs. Dong Thy Vn, LLC, Case #CO15-867, Circuit Court of Fredericksburg, VA. Deposition provided. Settled June 2017.

➢ Provided Professional Services as an Independent Review Organization (IRO) for Zwanger Pesiri Radiology Group, LLP and all other covered entities as defined in the Corporate Integrity Agreement (CIA) effective November 1, 2016, including a Claims Review. 2017-2021.

➢ Review documentation and provide consultation regarding third party payer issues for Faith Hospital vs. Blue Cross Blue Shield of Texas. July 2017. Expert Report. Ruling August 2019. Testified in Arbitration.

APP_0126

➢ Litigation Assistance and potential Expert Testimony—Re: Cause No. 2014-73373—Nool P. Nigam, M.D., Plaintiff, vs. Anjali Jain, M.D. and Houston Physical Medicine Associates, P.A. in the District Court, Harris County, Texas, regarding breach of contract, fiduciary duty, defamation, and fraud. Settled August 2017.

➢ American Anesthesia Associates (Willis) vs. Allstate Property and Casualty Insurance Company, Case No. 15-002772-NP in the State of Michigan. Litigation Assistance and Expert Testimony for Allstate Property and Casualty Insurance Company regarding Anesthesia Billing and Charges (Initial and Subsequent Engagements). Deposition provided. Settled June 2017.

➢ Litigation Support, including record reviews in the areas of insurance billing, coding, providing research and analysis, providing written report and potential Expert Witness. Nick Nicholson, M.D. d/b/a Nicholson Clinic vs. Aetna Health, Inc. IMS Project #10748, Case # 01-2015-0005-9783. American Arbitration Association of Dallas, TX. August 2016. Settled January 2017.

➢ Litigation Support for Dr. Mehta for presentation to New Jersey Board of Examiners challenging allegations by N.J. Office of the Attorney General-John J. Hoffman, Acting AG of NJ. Testified at hearing.

➢ Carlascio Orthopedics vs. Horizon New Jersey Health in the Superior Court of New Jersey. Provided support assistance to Plaintiff for billings challenged by Horizon. Settled November 2016.

➢ Ochsner Clinic Foundation v. Lexington Insurance Company. Litigation and evaluation of Business Interruption Loss Assistance; Expert Report and Deposition provided. Settled and sealed February 2017.

➢ Several small cases during 2016 regarding Medical Board License issues and Insurance Company payment issues. Varied—depositions and testimony at hearings. Sealed.

➢ Litigation Assistance and Expert Testimony in support of St. Joseph Medical Center—Case No. 10-10290 (SR); Berks Behavioral Health, LLC, vs. St. Joseph Regional Health Network d/b/a St. Joseph Medical Center, et al. in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania. Expert Report submitted July 2015. Deposition December 2019. The case settled January 2021.

➢ Provided Expert services to Law offices of Joseph M. Jagielski regarding reasonableness of charges. Kecia Northington vs. Eileen Frances Stopa. Settled 2019.

➢ Litigation Assistance and Expert Testimony. Gulf Coast Billing, Inc. vs. Texas Neurodiagnostic Associates, Inc. in the County Court of Law No. 4, Harris County, Texas in support of Gulf Coast Billing, Inc. Case No. 1047666; Cause #2014-42455. Deposition provided and data submitted. Settled April 2015.

➢ Kettering Anesthesia Associates, Inc. vs. PST Services, Inc. Civil Action No. 3:13-cv-00145; September 2014. Expert report provided and deposition on February 11, 2015. Settled July 2015.

➢ Alliance Oncology, LLC vs. Harvard Vanguard Medical Associates, Inc., et al.; Case NO. 13-CV-11438-NMG. Provided Expert Report; Deposition April 2015. Settled and sealed November 2015.

➢ Provide Litigation Support and Potential Expert Testimony - United States of America and State of Texas, ex rel. Katherine J. Simms vs. Austin Radiological Association. Civil Action No. A-10-CA-914- AWA regarding Adequacy of Internal Controls and Processing Standards Utilized within defendants'

APP_0127

**Charlotte Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**                                              **Page 9**

 

operations for credit balance handling. February 2014. Settled and sealed June 2014.

- Acacia Mental Health Clinic, LLC—Results of Probe Audit of Services Provided by Acacia Mental Health Clinic, LLC, and Answer to DOJ/AUSA Demands/Comments. Provided testimony at hearing. Settlement with Government June 2015.

- Radiology LTD., an Arizona professional limited liability company; and Tucson Imaging Associates, L.L.C., an Arizona limited liability company vs. Carondelet Health Network, an Arizona non-profit corporation; private arbitration settled before testimony. Expert Report. Settled January 2014.

- Aetna Life Insurance Co. vs. Humble Surgical Hospital, LLC, No. 4:12-cv-1206 in United States District Court, Southern District of Texas. Reasonableness of charges. Finalized June 2017.

- Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company vs. Humble Surgical Hospital, LLC. Civil Action No. 4:13-CV-03291. United States District Court, Southern District of Texas. Reasonableness of charges and non-participating provider billing and related damages for non-payment of claims by Cigna. Expert Report and testimony. Judgement June 2016 in   favor of Humble. Subsequently overturned on appeal.

- US Imaging—Provide Litigation Support and Potential Expert Testimony—for Chopra & Associates, PA in dispute regarding reading fees owed. Case No. 2012-26531. Deposition given. Settled April 2015.

- Litigation Support and Potential Expert Testimony for X-Ray X-Press. Damages for breached contract: X-Ray X-Press Corporation v. Cantex Continuing Care, LLC et al. Case No. 2012-60883; October 2013. Settled October 2014.

- Litigation Support and Potential Expert Testimony—Hanley Limited Partners, LLC, Ray Hanley, Marsha Hanley vs. Doctors Express Franchising, LLC, Rhino 7 Franchise Development Corp, Doug Schedule, Peter Ross, Scott Burger, Tony Bonacuse; March 2013. Expert Report. Settled January 2014.

- Alliance Healthcare, Inc. vs. Argonaut Private Equity, LLS and Medical Outsourcing Services, Inc. Case No. 73 103 Y0027 10. Expert Report support position for Argonaut, et al regarding billing of fluorodeoxyglucose (FDG). May 2011. Settled 2013.

- Tushar Tripathi, MD vs. Centrastate Medical Center; No. A-032510-822—American Health Lawyers Association Arbitration, New Jersey. Hospital's obligation to make guaranty payments to a physician  under agreement. Testified February 2010. Settled 2010.

- Guardianship of Dana Clyde Jones. Circuit Court of the 17th Judicial Circuit in and for Palm Beach County, Florida (Broward County Courthouse). File No: 06-1125(60). Reasonableness of charges and balance billing. Expert Report. Settled without testimony 2010.

- Stephen B. Eigles vs. Jong Kook Kim, et al. Civil Action No. AMD 1:07-CV-2223. Expert assistance to attorney  in radiologist's compensation and  restraint of business services  at the hospital. September 2009. Settled 2013.

- South Florida Bone Marrow/Stem Cell Transplant Institute; Case No. 1:06-CR-028-SPM and United States of America vs. Dipnarine Maharaj and Jacqueline Gouvea; Case No. 9:07-CR-80024-DTKH. The inappropriateness of billing to private medical payers (Mail Fraud). South Florida District Court. Testified April 2008. Settled April 2008.

APP_0128

 

➢ Troy M Rowland vs. Wesley Medical Center LLC and American Family Mutual Insurance; Case No. 06- CV-300. 18th Judicial District, District Court, Sedgwick County, Kansas, Civil Department. Settled 2007.

➢ USA vs. John A. Kiely, MD. Case No. 1:11-CV-00668. Litigation Support in providing Expert Report for first attorney. Government review of laser procedures 2006. Concluded March 2007.

➢ Dennis G. Kleban, M.D. vs. Jacqueline S. Eghrari-Sabet, M.D. in the Circuit Court for Montgomery County, Maryland. Civil Action #256314. Deposed December 13-14, 2005. Qualified with limited testimony. Trial February 2006.

➢ Albemarle Eye Center, PLLC vs. Marshall Redding, MD Case # 01-CVS 342 and Marshall Redding, M.D. vs. Albemarle Eye Center, LLC, Case #01-CVS 382 in the General Court of Justice Superior Court Division, Pasquotank County North Carolina. Deposition June 2004. Settled December 2004.

➢ Group Anesthesia Services vs. American Medical Partners of North Carolina, Inc.; Case# CV817199. Breach of contract, fraud, and negligent misrepresentation. Superior Court of California, City and County of Santa Clara. Filed May 2003. Expert Report, Deposition, Testimony, March 2005.

➢ Jimmy L. Nungesser vs. Wesley Medical Center, LLC, a Delaware limited liability company and Quinlyn Foules; Case No. 03 CV 0171. 18th Judicial District, District Court, Sedgwick County, Kansas Civil Department. Provided Expert Report. Settled 2005.

➢ Tenet Health System Hospitals, Inc. dba Doctors Medical Center, Modesto, Inc. vs. Aetna U.S. Healthcare, Inc. DOES 1-20, Inclusive. Case No. 348881 Trial Date: June 7, 2005. Expert Declaration. April 27, 2005. Settled 2005.

➢ Compliance Dispute on Behalf of Bayside Medical Group under Navigant Consulting. Aetna Modifier Case. Compliance dispute of Dr. Budd N. Shenkin and California Medical Association against Aetna. Mediation Testimony 2005. Case settled.

➢ Managed Care Litigation, MDL 1334. As an expert under Navigant Consulting for the defendants (Aetna). Provided expert testimony on the sun issue that was arbitrated in Chicago regarding the use of modifiers. 2005.

➢ Strauss vs. Strauss, No. 92-7978-S Civil, Remanded from: Howard Strauss v. Josephine M. Strauss,  101 Md. App. 490, 647 A.2d 818 (1994). Court of Special Appeals of MD 1994. Testified 1994, Circuit Court Allegany County Maryland.

➢ State of MD vs. Tsinberg. Expert Report December 2000. Testimony to State of Maryland for settlement, 2001. Baltimore, Maryland. Resolved.

➢ United States of America vs. Mary H. Fang, et al. 97-0444. Medicare fraud; mail fraud; selling drug samples; aiding and abetting. Final Order and Consent Order 1999.

➢ Michael J. Webb, M.D. as general partner of Webb Medical Services, Ltd. vs. Marion Community Hospital, Inc. d/b/a Columbia Ocala Regional Medical Center. Case No. 00-1047-CAG. Litigation Support for breach of contract regarding sales management agreement. Circuit Court of the Fifth Judicial Circuit in and For Civil Action, Marion County, Florida, 2000. Settled.

APP_0129

Exhibit 2

- Marion Community Hospital, Inc. vs. WEBB Medical Services, Ltd., No. 99-0103-CA-D. Eviction, breach of lease. Circuit Court of the Fifth Judicial Circuit in and For Civil Action-Marion County, Florida, 1999. Settled.

- United States of America vs. Richard Markoll, Ernestine Markoll and Bio Magnetic Therapy Systems, Inc. Case No. 3:00CR133 (EBB). Inappropriate device billing. United States District Court of Connecticut, 2001. Settled.

- Eutaw Oncology Associates vs. Carol L. Rubin, Esq. et al. Case No 9812/13/CC37988. Legal malpractice in the Circuit Court for Baltimore City, 2000. Closed.

- Matossian Eye Associates P.C. vs. Barry Oppenheim, MD. Litigation support regarding buy-in valuation; breach of contract; shareholder agreement; covenant not to compete. Testified June 1999. Settled.

- Timothy Huzzard and Hanna Huzzard vs. Douglas Caldwell, M.D. of Redi Care Medical Center of Taylor, Inc. No. 94-CV-4631. Civil Action. Jury trial demanded. Medical malpractice. Testified for Court of Common Pleas of Lackawanna County Pennsylvania, 1997. Resolved.

- FCMC vs. Furst vs. FCMC (Falls Church Medical Center); At. Law No. 145972. Covenant not to compete and damages. In the Circuit Court for the County of Fairfax, Virginia. Settled after Expert Report, 1997.

- Carolyn J. Harrington, M.D. vs. Erik B. Young, M.D., P.C.; No. 154701-V. Breach of contract; duty of good faith and fair dealing. Circuit Court Montgomery County, Maryland 1996. Settled.

- Leo I. Donovan, M.D. vs. Albert K. Lee, M.D.; Civil #43705. Breach of contract on sale of practice. Circuit Court Montgomery County, Maryland 1992. Settled.

- Ducey vs. Ducey; #FM-07-2977-06. Valuation of ownership interest in the Femino-Ducey Orthopedic Group, P.A. (two cases). Ocala, Florida 1994. Settled.

**Continuing Professional Education**

Ms. Kohler has published several manuals in the areas of billing, coding, and practice management. She continues to provide educational courses to clients on a local and national basis. Her most recent books are by Kohler Healthcare Consulting via Amazon.

She has also been awarded the status of LIFE MEMBER in the Maryland Association of Certified Public Accountants. effective 7/1/2015. This is considered a special status awarded only to those who have been MACPA members in good standing for a period of 40 continuous years or more.

**Community Involvement**

Ms. Kohler is a current Board Member for the Jayne Koskinas Ted Giovanis Foundation.

Ms. Kohler has received the Follmer Bronze Merit Award, Reeves Silver Merit Award, Muncie Gold Merit Award, as well as the President's Award from HFMA. She continues to be active with HFMA and served on educational committees as Chair and member. Additionally, she was named President of the Maryland MGMA in the 1990s.

APP_0130



Exhibit 2

**Publication/Articles and Presentations by Charlotte Kohler**

- *KHC—Pieces for Success—*Industry newsletter sent to 1800+ distribution list of interested parties. Articles in each issue; monthly from 2010 to present.

- *HCPro-Physician Practice Billing from A to Z—*Book, April 2015—in Process of Updating under Kohler HealthCare Consulting.

- *HCPro-Hospital Billing from A to Z—*Book, June 2014 -- in Process of Updating under Kohler HealthCare Consulting.

- *HCPro-Long Term Care Billing from A to Z—*Book, November 2016 -- in Process of Updating under Kohler HealthCare Consulting.

- *Revenue Integrity and Revenue Cycle A to Z—*Book, April 2022  [Amazon}

**Copyrighted Manuals by Kohler HealthCare Consulting, Inc. (Many are now out of print.)**

- Billing Compliance and HIPAA Checklist for Medical Practices

- Collector's Assessment Tool

- HCPro: Hospital Billing from A to Z (Available from HCPro)

- HCPro: Physician Practice Billing from A to Z (Available from HCPro)

- Health Insurance Training Manual

- Imaging Center Policies & Procedures Manual—Published under License from KHC/NCI (copyright). For use by Radiology Business Management Association.

- Improving Collections in the Physician's Office

- Medical Office Biller's Questionnaire (Assessment Tool)

- Navigating Denial—Tools to Stay Afloat-For Hospitals

- Policies and Procedures for the ASC

- Policies and Procedures for the Medical Office and Ambulatory Care Centers

- Revenue Integrity and Revenue Cycle A to Z (Published April 2022)

**Speaking Engagements Held for the Following Organizations**

- Federal Ambulatory Surgery Association (FASA)
- National Association for Ambulatory Care Centers (NAFAC)
- HealthCare Financial Management Association (HFMA)—National, Maryland, Pennsylvania, North Carolina, Iowa
- American Healthcare Administrative Management Association (AAHAM)—National and Maryland
- AHIMA—Western Region
- Temple University
- National Health Care Lawyers Association
- Florida Bar Association
- National Health Care Lawyers Association
- Maryland Association of Certified Public Accountants (MACPA)
- American College of Medical Genetics
- National Society of Healthcare Business Consultants

APP_0131

- Maryland Association of Home Care (MAHC)
- Medical Group Management Associations (MGMA-MD, MGMA-DC, MGMA-Eastern Section)
- National Association for Home Care (NAHC)
- Urgent Care Association of America

- Maryland Hospital Association
- Maryland Hospital Education Institute
- Ohio Health Information Management Association (OHIMA)
- Health Ethics Trust—National Symposium on Quality and Compliance
- American Academy of Professional Coders (AAPC)

## Seminars and Speaking Engagements

**Many speaking engagements over the years and continuing.** Providing educational session regarding coding, litigation in health care, revenue cycle, revenue integrity, regulatory issues, and compliance. On local and national level and organizations.

## Quick Bits Education Series

Charlotte Kohler with others at Kohler HealthCare Consulting, Inc. host virtual discussions regarding various healthcare topics that can be found on our website or YouTube.

APP_0132

**Charlotte Kohler, [RN], CPA, CVA, CRCE, CPC, CPCO, CEMC**                                    **Page 14**