# EXHIBIT 5

Kimberly Bini Volume 1
January 07, 2026

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LEGACY MEDICAL CONSULTANTS,     )
LP, SUCCESSOR IN INTEREST TO    )
LEGACY MEDICAL CONSULTANTS,     )
LLC,                            )
                                )
    Plaintiff,               )
v.                              )
                                )
CRISTI LEEBERG D/B/A            )
PRACTITIONERS IN MOTION, PLLC,  )
                                )
    Defendant,               )
                                )
And                             )          NO. 4:25-cv-00319-P
                                )
CHRISTI LEEBERG D/B/A           )
PRACTITIONERS IN MOTION, PLLC,  )
                                )
    Counter-Plaintiff,       )
v.                              )
                                )
LEGACY MEDICAL CONSULTANTS,     )
LP, SUCCESSOR IN INTEREST TO    )
LEGACY MEDICAL CONSULTANTS,     )
LLC,                            )
                                )
    Counter-Defendant        )

*****************************************************
ORAL AND VIDEOTAPED DEPOSITION OF

KIMBERLY BINI

JANUARY 7, 2026

VOLUME 1

*****************************************************

    ORAL AND VIDEOTAPED DEPOSITION OF KIMBERLY BINI, produced

as a witness at the instance of the Plaintiff, and duly sworn,

was taken in the above-styled and numbered cause on

APP_0134

Page 98

products, correct?

MS. ALTOBELLI:  Object to form.

A.  I believe so, yes.  If Ms. Leeberg placed the order, we assumed that she verified benefits of it.

Q.  (BY MR. SHELOWITZ)  Right.  So Legacy's primary concern was the verification of insurance benefits, not necessarily the form that was used, correct?

A.  Well, the form's important.  I'm not sure what you're asking me.

Q.  Yeah.  I guess what I'm trying to understand is, once insurance verification was secured, Legacy felt comfortable releasing its products to Ms. Leeberg for use, correct?

MS. ALTOBELLI:  Object to form.

A.  She would have had to know that.  The practitioner would have to know that the insurance was verified.

Q.  (BY MR. SHELOWITZ)  Right.  So I guess --

A.  Once the call was called to place the order to us, we are assuming that she has taken all steps to verify her patient's insurance and is comfortable ordering the product.

Q.  Right.  In other words, Legacy doesn't ensure that the insurance verification form has been received.  It's only relying on representations either by Apex or Ms. Leeberg that insurance was verified; is that correct?

A.  Yes.

Q.  Do you know whether or not the parties entered into

Page 99

any amendment of this contract that provided the Apex form was an acceptable form to use?

MS. ALTOBELLI:  Object to form.

A.  I -- I don't believe so.

Q.  (BY MR. SHELOWITZ)  Okay.  So in other words, it's your understanding the parties agreed to deviate from the terms of this contract in using Apex form versus Legacy form, correct?

MS. ALTOBELLI:  Object to form.

A.  It appears so.

MR. SHELOWITZ:  To the extent that there are any Legacy IVR forms, I'm going to make a request they be produced to the extent Ms. Leeberg submitted any or to the extent that form even exist.

Q.  (BY MR. SHELOWITZ)  Okay.  Let's look at paragraph 3, Ms. Bini, of Exhibit 7, which is the contract.  And I appreciate you going back and forth.  Thank you so much.  It's on paragraph 3 of the November 7, '23.  Do you see that?

A.  I'm here.

Q.  And it says:  After a customer submits an IVR and receives confirmation of patient's benefits, the Customer places an order and Legacy Medical Consultants accepts the order and generates the Invoice, which will reflect that the Customer has agreed to purchase the Products identified on the Invoice and the terms of the purchase.  Legacy Medical

Page 100

Consultants shall, on Customer's behalf, promptly pack and ship the Products identified on the Invoice for delivery to the Customer using second-day delivery.  Legacy Medical Consultants shall provide delivery status information from the carrier to the Customer for shipping.  Do you see that?

A.  I do.

Q.  Okay.  And when -- I know we just talked about it, but when it says:  After customer submits an IVR, does not -- does the contract not contemplate that submission occurs to Legacy, not Apex?

MS. ALTOBELLI:  Object to form.

A.  I'm sorry.  Say that one more time.

Q.  (BY MR. SHELOWITZ)  Yeah.  The contract, you would agree, contemplates that submission of the IVR, in paragraph 2, was submitted to Legacy, not Apex, correct?

MS. ALTOBELLI:  Object to form.

A.  Well, the IVR is a Legacy Medical Consultants form, and we have a third party that verifies the IVRs, and that's what's outlined in our agreement.  It -- yeah.  Okay.

Q.  (BY MR. SHELOWITZ)  I'm sorry.  Is there anywhere in the contract that provides that a third party's going to verify the IVR form?

A.  No, I don't believe so, just that it's Legacy Medical Consultants IVR.

Q.  Which we just discussed was never submitted?

Page 101

MS. ALTOBELLI:  Object to form.

A.  I'm not aware.

Q.  (BY MR. SHELOWITZ)  So after Legacy gets confirmation of the insurance benefits, the patient's benefits, Ms. Leeberg places the order, and that order was placed through Apex; is that correct?

A.  It may have been.  I'm not sure.

Q.  What is your understanding of the process through which a client, like Ms. Leeberg, would place an order for Legacy skin substitute products?

A.  She could contact our customer service team directly or she could go through her ISR to make the order.

Q.  And when you say:  ISR, independent sales rep?

A.  Independent sales rep, yes.

Q.  Okay.  And if she goes through the ISR, which is how I understand the overwhelming majority of these products were secured, can you explain what your understanding of that process looks like?

A.  I believe Apex would place the order through our customer service team, usually by e-mail, to customer service.

Q.  Okay.  And let me take it a step back.  So Ms. Leeberg would confirm the patient has insurance benefits, and then, thereafter, would she -- to the best of your knowledge, or Legacy's knowledge, contact Mr. Logwood and say: XYZ patient has benefits; I need X amount of product?

Kimberly Bini Volume 1
January 07, 2026

Page 114

A.  That's accurate.

Q.  Is it generally issued one month thereafter, two months thereafter?

A.  About -- yes.

Q.  Now, when we spoke earlier, I believe we tried saying that the contracts were forms, but you would agree with me that in the other agreements, there is no reference to this rebate calculation.  Is that accurate?  It seems to be only in this July 25, 2022, contract.

A.  That is accurate.

Q.  Can you explain to me why that was removed from the subsequent agreements between Legacy and Ms. Leeberg?

A.  It was a different agreement.  So this is what we consider a rebate agreement, and her subsequent agreements were purchase agreements.

Q.  Okay.  And help me understand the distinguishing factor between the two.

A.  There were no rebates afforded in the purchase agreements.

Q.  And is that something that the parties had negotiated to exclude from the agreements?  Is that a decision Legacy made on its own?  How did it -- I'll ask those questions first.

A.  I'm sorry.  I'm not sure what the question is.

Q.  Did the parties negotiate, in subsequent agreements after July 2022, to remove the rebate qualification?

Page 115

A.  At some point going forward, it was presented to Ms. Leeberg a purchase agreement.  I'm not sure of the nature of why it went from rebate to purchase, but it was after the -- July 21st, the original rebate agreement.

Q.  Right.  So, after this contract, there's no further inclusion of rebates as part of the agreements, right?

A.  That's correct.

Q.  And -- I believe we talked about this earlier -- but you weren't involved in preparing or drafting any of these contracts, correct?

A.  Correct.

Q.  And you weren't involved in calculating any rebates that may have been issued?

A.  Correct.

Q.  And so do you know whether or not any rebates were issued under any other contract beyond this July 25, 2022, contract --

A.  I don't.

Q.  -- to Ms. Leeberg?

A.  I don't believe.  No, sir.

Q.  Do you know what credit memos are?

A.  Yes.

Q.  What is a credit memo?

A.  A credit memo is a credit issued back to the account that could be for a returned product or if there was some issue

Page 116

with the amount, it may have calculated incorrectly for the price of the product, we could have issued a credit memo to reflect back on her balance.

Q.  Okay.

(Exhibit 11 was marked.)

Q.  (BY MR. SHELOWITZ)  What I'm handing you is Exhibit 11, Ms. Bini.

Would you pass that down to Megan, as well?

MS. ALTOBELLI:  Thank you.

Q.  (BY MR. SHELOWITZ)  So my first question is, Ms. Bini:  Have you seen this document before?

A.  Having -- the actual physical document -- I mean, I wrote the e-mail, so I've seen this communication.

Q.  Right.  And are you familiar with who Michael Johnson is?

A.  Not specifically, no.

Q.  Okay.

A.  He was a representative for Practitioners in Motion.

Q.  And do you recall sending this e-mail, the one at the top, dated February 7th, 2024, to Mr. Johnson?

A.  I don't recall whether I sent it.

Q.  Okay.  It says that you've:  Attached the spreadsheet that shows all invoices paid, unpaid, and partially paid which includes payments and or credits.  And you say you:  Arrive at the same amount as you, of all of your bills, 6,139,078.  Do

Page 117

you see that?

A.  I do.

Q.  Is it your understanding that this $6,139,078 is what Ms. Leeberg paid to Legacy?

A.  I believe so, yes.

Q.  Okay.  Do you know, approximately, how much money, over the course of these five contracts, Ms. Leeberg paid to Legacy?

A.  I do not.

Q.  Okay.  Is it more than $7 million?

A.  I'm not sure.

Q.  Do you know whether it's more than $8 million?

A.  I don't know the exact amount.

Q.  But it's definitely at least the $6,139,078, correct?

A.  Correct.  At that time.

Q.  Okay.  And the next sentence reads:  The discrepancy is the credit memos we issued $113,111.65 in credit in '23 and '24.  Do you see that?

A.  I do.

Q.  And so the credit memos that we just talked about, is that what that $113,000 represents?

A.  At that time, that was the amount of credit memos, yes.

Q.  Okay.  And you say:  Please see the attached spreadsheet which identifies all credit memos.  FYI, we

Page 178

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

LEGACY MEDICAL CONSULTANTS, )
LP, SUCCESSOR IN INTEREST TO )
LEGACY MEDICAL CONSULTANTS, )
LLC, )
                              )
     Plaintiff,               )
                              )
v.                            )
                              )
CRISTI LEEBERG D/B/A          )
PRACTITIONERS IN MOTION, PLLC, )
                              )
     Defendant,               )
                              )
And                           )     NO. 4:25-cv-00319-P
                              )
CHRISTI LEEBERG D/B/A         )
PRACTITIONERS IN MOTION, PLLC, )
                              )
     Counter-Plaintiff,       )
                              )
v.                            )
                              )
LEGACY MEDICAL CONSULTANTS,   )
LP, SUCCESSOR IN INTEREST TO  )
LEGACY MEDICAL CONSULTANTS,   )
LLC,                          )
                              )
     Counter-Defendant        )

THE STATE OF TEXAS :
COUNTY OF TARRANT:

     I, STACEY R. CRUZ, a Certified Shorthand Reporter in and for the State of Texas, do hereby certify that the facts as stated by me in the caption hereto are true; that the above and foregoing answers of the witness, KIMBERLY BINI, to the interrogatories as indicated were made before me by the said witness after being first duly sworn to testify the truth, and same were reduced to typewriting under my direction; that the

Page 179

above and foregoing deposition as set forth in typewriting is a full, true, and correct transcript of the proceedings had at the time of taking of said deposition.

     I further certify that I am not, in any capacity, a regular employee of the party in whose behalf this deposition is taken, nor in the regular employ of his attorney; and I certify that I am not interested in the cause, nor of kin or counsel to either of the parties;

     That the amount of time used by each party at the deposition is as follows:

     MR. SHELOWITZ - 03:19:49
     MS. ALTOBELLI - 00:00:00

     GIVEN UNDER MY HAND AND SEAL OF OFFICE, on

this, the 20th day of January, 2026.

STACEY R. CRUZ, TEXAS CSR 8209
EXPIRATION DATE: 01.31.2026
U.S. Legal Support, Inc.
16825 Northchase Dr #900
Houston, TX 77060
Phone: (713) 653-7100
Firm No. 122