# EXHIBIT 11

# AGENCY COMMISSION AGREEMENT

This AGENCY PURCHASING AGREEMENT, hereinafter referred to as the "Agreement," effective as of the 20th day of May, 2022 (the "Effective Date") is by and between **Legacy Medical Consultants, LLC** (the "Company") and **Apex Medical** ("Agent").

WHEREAS, the Company is in the business of selling medical products and services;

WHEREAS, Agent has the ability to market the Company's products and services to customers in the Territory (as defined below);

WHEREAS, the Company desires to engage Agent as an independent contractor on a non-exclusive basis to solicit orders for Products (as defined below) in the Territory upon the terms and conditions herein set forth;

NOW, THEREFORE, for and in consideration of the mutual covenants contained herein, the Company and Agent do hereby agree as follows:

1. **Term:** The term of this Agreement will begin as of the Effective Date and will continue for a period of one (1) year thereafter unless earlier terminated as permitted by Section 11. The term of this agreement will automatically renew for additional periods of one (1) year per extension unless otherwise terminated as provided herein.

2. **Appointment as Agent:** Subject to the terms and conditions of this Agreement, Company appoints Agent on a non-exclusive basis as its marketing agent for the promotion and sales of the Company's products described in Exhibit A (the "Products"), in the territory described in Exhibit B (the "Territory"), a minimum sales objective and compensation described in Exhibit C (the "Objective"), and fees to be paid as described in Exhibit D (the "Fees"). Exhibits A, B, C and D are attached hereto and are incorporated herein by reference. Company maintains the right, in its sole discretion, to make unilateral changes to Exhibit A, provided it provides written notice of change to Agent. Any changes to Exhibits B, C or D must be reduced to writing, dated and signed by the Parties.

3. **Agent's Duties:** Agent will perform the following duties as an independent contractor and or stocking distributor of Company at Agent's expense.

a. **Promotion of Products:** Agent will use reasonable efforts and resources to stimulate interest in and obtain orders for Products in the Territory that are equal to or greater than the Objective as defined in Section 6(a). Agent will investigate and follow-up with all inquiries from potential customers in the Territory, however arising, and will promptly handle all correspondence and personal contact with such potential customers as may be necessary or appropriate.

APP_0228

b. **Solicitation of Orders:** Agent will solicit orders for the Products in agents name only. If Stocking Distributor, Agent will be responsible for invoicing and collections from agents accounts.

c. **Payment terms:** Company is not legally bound to ship product to Agents accounts if accounts has invoice(s) past due.

d. **Customer Complaints:** Agent will immediately report to Company any complaints about Products from customers in the Territory and, at Company's request, will investigate and report to Company about any such complaints.

e. **Product Returns:** Agent will adhere to Company's policies regarding returned Products as they may change from time to time. All Product returns sought by customers in the Territory must be approved in writing by Company before any return of Products will be accepted by Company.

f. **Sales Outside the Agent's Territory:** Unless prior approval is given, Agent will not promote the Products or solicit orders for Products or deliver Products, directly or indirectly, outside of the Territory.

g. **Alteration:** Agent will not alter or modify any of the Products, literature or packaging of Products without Company's prior written consent.

h. **Records:** Agent will maintain records regarding the use of Products where Company's Products are utilized. Agent will permit the Company access to such records during normal business hours.

i. **Product Warranties:** Agent will not make any warranty or representation about Products or the use or efficacy of Products except such written warranties, representations, and statements concerning use or efficacy of Products as Company may provide to Agent from time to time for delivery to or use with customers or potential customers in the Territory.

j. **Advertising:** Agent will secure Company's prior written approval of all advertising materials, sales or Product literature, publicity releases and other promotional materials regarding Products or Company's services. See Exhibit "E"

k. **Use of Company's name:** Agent will not use the name **"Legacy Medical Consultants, LLC"** (and/or names of its affiliated companies) or any other similar name or any of the Company's (and/or its affiliated companies) other trademarks, trade names or service marks in any way that is not approved, in advance of proposed use, is subsequently objected to by Company (and/or its affiliated companies), or which may in any way result in confusion or lead any third party to believe that Company (and/or its affiliated companies) and Agent are not separate and distinct entities.

APP_0229

LMC-Leeberg_001553

l.  **Product Recall:** In the event of a recall of any of the Products, Agent will cooperate fully with Company in effecting such recall, including, without limitation, promptly returning any Products in Agent's possession or in the possession of any customers in the Territory, contacting any customers that Company desires be contacted and communicating to any customers such information or instructions about the recall that Company may want communicated.

m.  **Litigation:** If Company becomes involved in any litigation regarding Products, Agent will cooperate fully with Company and will provide any documents or information in Agent's possession or under Agent's control relating to the litigation.

n.  **Hold Harmless:** Agent shall indemnify and hold Company (and its affiliated companies and their officers, directors, members, and employees) harmless for the negligent or intentional acts of Agent or its representatives. Company shall indemnify and hold harmless Agent for the negligent or intentional acts of Company or its representatives.

o.  **Expenses:** Agent will pay when due all costs, expenses, taxes and liabilities that Agent incurs in connection with Agent's performance under this agreement.

p.  **Confidentiality:** Confidential information regarding the Company (and/or its affiliated companies) and its business, Products, services, customers and other trade secrets (collectively, the "Confidential Information") may be disclosed to Agent. Agent acknowledges that such information is confidential and of great value to the Company and/or its affiliates. For the term of this Agreement and for a period of two (2) years following termination, Agent agrees not to disclose the Confidential Information of Company or its affiliates to anyone without prior express written consent of Company.

q.  **Insurance**: Agent shall acquire and maintain its own workers compensation (if required by law), comprehensive liability and property insurance at commercially reasonable levels, and shall name Company as additional named insured. Agent shall provide evidence of insurance on request.

**4. Consigned Products:**

a. **Consignment Inventory:** The Company may, from time to time, deliver to Agent Products to hold on consignment for the purpose of filling orders for such Products from customers in the Territory (the "Consigned Products"). Agent agrees to adequately safeguard, store, preserve and hold all Consigned Products in trust for Company's account. The amount and type of Consigned Products to be maintained by Agent will be determined by the Company.

b. **Title and Inspection:** The title to all Consigned Products will remain with the Company until the Consigned Products have been delivered to customers in the Territory subject to purchase orders accepted in writing by the Company. Upon Company's written request, Agent will return to the Company, at the Company's

APP_0230

expense, such Consigned Products as are in Agent's possession or under Agent's control. The Company may at any time inspect and inventory the Consigned Products in Agent's possession or under Agent's control and Agent will give the Company access to such Consigned Products.

c. **Damaged or Misplaced Consigned Products:** Agent will be responsible to the Company for any Consigned Products in Agent's possession, under Agent's control, or in the possession of customers in the Territory which are missing or which otherwise cannot be accounted for by Agent. Agent will be liable to the Company for such damaged or missing Consigned Products in accordance with the Company's policies regarding Consigned Products. Company reserves the right to change such policies from time to time.

5. **Samples:** The Company may provide the Agent samples of the Company's Products as needed (the "Sample Products"). Agent will be liable to the Company for lost, missing, or damaged Sample Products.

6. **Objective:** To market and sell Legacy Medical products

7. **Company's Duties:** The Company will perform the following duties at the Company's expense.

a. **Drop Ship Product to Client Accounts**.  The Company will have access to Agent's Insurance Verification, Order Management and Claims Management Portal.  Upon receipt of Client Orders, Company will expeditiously drop-ship ordered product to Client location via Client desired express shipment.

b. **Product Literature:** The Company will furnish Agent with sales literature, descriptions of surgical techniques, videos, or other sales material developed by the Company or the Product manufacturers for use in the promotion of the Products and solicitation of orders for Products.

c. **Advertising and Publicity:** The Company will, as it deems necessary in its sole discretion: (I) conduct advertising and publicity, (ii) participate in trade shows, and (iii) engage in other promotional activities with respect to the Products.

d. **Liability Insurance:** Product manufactures typically maintain Product Liability Insurance covering the Company's Products. The Agent agrees to provide to its customers and accounts all relevant product indications, instructions for use, and operative techniques (both video and written) that are supplied to it by the Company to ensure the correct use of the Company's products. The Agent additionally agrees to advise its customers and accounts of any and all contra-indications which relate to the Company's Products and as detailed in the Product insert contained within the packaging of each product or as detailed in the written operative technique. The Agent acknowledges that the Company is not providing Errors and Omissions

APP_0231

Insurance, or any other insurance which covers negligence or misrepresentations of the Agent or the Agent's employed agents, officers or employees. Agent shall be responsible for acquiring and maintaining its own insurance as detailed in Section 3.q. above. Agent is encouraged to acquire its own Errors and Omissions Insurance.

8. **Reporting:**  Company agrees to utilize Agent's online Verifications and Order Management portal, to receive all Insurance Verification Requests, post all Patient Benefits Reports, and receive all Product Orders.

   a. **Non-Solicitation**: (24) months after the termination of this Agreement for any reason, Agent (or Company) shall not directly or indirectly do any of the following except in fulfilling its duties to Company (or Agent) hereunder or as otherwise agreed to by the Company (or Agent) in writing:

      . (i) Encourage or solicit, or help any other person or entity to encourage or solicit, any employee, representative, consultant or independent contractor to leave the employment or service of Company (or Agent) for any reason, or interfere in any other manner with such relationships;

      . (ii) Employ, hire or retain, or help any other person or entity to employ, hire or retain, Company (or Agent) employees or independent contractors to work or provide independent consulting for any other person or entity;

      .
      .

   The Parties acknowledge and agree that the provisions of this Section 8 are reasonable in light of their legitimate business needs, that the restrictions and limitations contained in this Section 8 are reasonable as to scope and duration and are necessary to protect Company's (or Agent's) interests and to preserve for Company (or Agency) its competitive advantage, and that Agent (or Company) will not be unduly burdened by the restrictions imposed hereby. Agent (or Company) hereby acknowledges that monetary damages may not be sufficient to compensate Company (or Agent) for any economic loss which may be incurred by reason of my breach of the foregoing restrictive covenants. Accordingly, in the event of any such breach, Company (or Agent) shall, in addition to terminating this Agreement at the time of such breach, exercise any and all remedies available to Company (or Agent) at law or in equity, which may include but not be limited to obtaining equitable relief in the form of an injunction precluding Agent (or Company) from continuing such breach or in the form of a decree requiring specific performance of the covenants set forth herein.

9. **Trademarks:** As between Agent and the Company, the Company (and/or its

APP_0232

CONFIDENTIAL

affiliated companies) is the sole and exclusive owner of the trademarks, trade names, and service marks for the Products. Agent will not take any action which is inconsistent with such ownership and will not directly or indirectly challenge the Company (and/or its affiliated companies') title to the Trademarks.

10.**Independent Contractor:** Agent is and will remain an independent contractor and shall not be deemed to be an employee, joint venture, partner or franchisee of the Company for any purpose whatsoever. Accordingly, Agent is exclusively responsible for the manner in which Agent performs Agent's duties under this Agreement and for the profitability or lack of profitability of Agent's activities under or in connection with Agreement. Agent does not have, and will not represent Agent as having, any right or authority to obligate or bind the Company in any manner whatsoever. Agent, and not the Company, will be responsible to Agent's employees and agents for any compensation due them and for compliance with all applicable laws with respect to worker's compensation, withholding taxes, unemployment compensation, social security payments, and any other charges against compensation imposed by any governmental authority as to Agent's Employees and Agents.

**11.  Termination:**

a. This Agreement shall continue in full force and effect until the date set forth in a written notice given by one party to the other indicating such party's election to terminate this agreement, which termination date shall be at least thirty (30) days after the date notice of such election is given.

b. This Agreement shall terminate upon the occurrence of any of the following:

(I) **Agreement:** By mutual written agreement executed by both parties.

.    (ii) **Failure to Meet Objective; Breach:** By the Company effective ten (10) calendar days after the Company gives Agent written notice of such termination if
(A) Agent does meet the objective described in Exhibit C, or (B) Agent otherwise materially breaches this Agreement.

.    (iii)  **Inability to Perform:** By either party, effective immediately upon the giving of written notice or verbal to the other party, if the other party: (A) ceases actively to conduct business, (B) files a voluntary petition under the Bankruptcy Code or has filed against it an involuntary petition under the Bankruptcy Code, (C) applies for the appointment of a receiver or trustee for substantially all of such party's property or ASSETS or permits the appointment of any such receiver or trustee who is not discharged within thirty (30) calendar days of such appointment, (D) becomes unable to pay such party's debts as they become due, or (E) makes a general assignment for the benefit of such party's creditors.

APP_0233

CONFIDENTIAL

a.  **Effect of Termination:** Following the termination of this Agreement for any reason.

b.  **Return of Consigned Products and Confidential Information**: Within ten (10) business days after termination of this Agreement for any reason, or at such earlier time as the Company may request, Agent will return to the Company all property belonging to the Company, including without limitation all Consigned Products, Sample Products, Product literature, and all Confidential Information, including, without limitation, records, computer lists, policy manuals, blank forms or copies thereof which come into Agent's possession or control during the term of this Agreement, in such manner as the Company may direct.

c.  **Termination of Marketing Efforts:** Upon termination of this Agreement, Agent: (I) will immediately discontinue all use of the Trademarks ; (ii) will immediately discontinue all promotion of the Products and solicitation of orders for the Products; and (iii) will not make any representation that Agent has the right to promote the Products or solicit orders for the Products.

## 12.  General Provisions:

a. **Entire Agreement:** This Agreement, together with the Exhibits, constitutes the entire Agreement between the parties and supersedes any and all prior and contemporaneous oral or written understandings between the parties relating to the subject matter of this Agreement.

b. **Governing Law:** This Agreement shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

c. **Jurisdiction and Venue:** In the event that there is a dispute arising under or related to this Agreement or a Party seeks to enforce this Agreement, each party agrees that all legal proceedings shall be instituted only in the federal or state courts located in the State of Texas. Each party irrevocably consents to the jurisdiction and venue of such courts.

d. **Amendments:** This Agreement may not be amended, changed or terminated orally, and no alteration, change, termination, or attempted waiver of any of the provisions hereof shall be binding without the written consent of both Parties and such alteration, change, termination or attempted waiver shall in no way effect the other terms and conditions of this Agreement which in all respects shall remain in full force and effect.

e. **Relationship**: In all matters relating to this Agreement, Agent shall be acting as an

APP_0234

independent contractor and shall bear all of its expenses in connection with this Agreement and shall be responsible for any and all claims, liabilities or damages or debts of any type that may arise on account of Agent's activities, or those of its employees or agents, in the performance of this Agreement. Agent is solely and personally responsible for all of its employees and agents, if any, and its labor and other costs and expenses arising in connection therewith. Agent will assume full responsibility for the proper reporting and payment of all taxes, contributions and special levies imposed or required from Agent under unemployment insurance, social security, income tax, and other laws or regulations, with respect to the performance of Agent and Agent's employees and agents of this Agreement. Agent shall indemnify and hold Company harmless from any liability, loss, damage, or claim arising against or incurred or paid by Company by reason of any failure by Agent to fully or timely assume such responsibilities. Agent shall not have any authority to assume or create any obligation, express or implied, on behalf of Company. Agent shall not make quotations or write letters under the name of Company, but shall in all cases use its own name.

APP_0235

CONFIDENTIAL

The Parties have executed this Agreement in the manner appropriate for each as of the date written on the first page of this Agreement.

**COMPANY: Legacy Medical Consultants, LLC**

By:_*Brian Rowan*_____

Name: Jonathan Knutz

Title: President/C.E.O.

**AGENT: Apex Medical**

By:_____

Name: Rick Logwood

Title: <u>President/Owner</u>

***The rest of this page is intentionally left blank***

APP_0236

CONFIDENTIAL

**Exhibit A**

**"PRODUCTS and SERVICES"**

Marketing approved 361 HCT/P products.

**Exhibit B**

**"TERRITORY"**

Defined by Agent's network of clinics, hospitals, surgery centers and physicians.

**Exhibit C**

**"OBJECTIVE"**

To market and sell Legacy Medical products

**Exhibit D**
**"COMPENSATION"**

**Zenith Amniotic Membrane:**
65% of collected revenue

**\*\* Commission payments are paid to agent from Company on or about the 1st seven days of the month for the previous month's collections received by the company. \*\***

*\*\*The rest of this page is intentionally left blank\*\***

APP_0237

CONFIDENTIAL                                                      LMC-Leeberg_001561

# AGENCY COMMISSION AGREEMENT

This AGENCY COMMISSION AGREEMENT, hereinafter referred to as the "Agreement," effective as of the 8th day of December, 2022 (the "Effective Date") is by and between **Legacy Medical Consultants, LLC** (the "Company") and **APEX MDCL, LLC** ("Agent").

WHEREAS, the Company is in the business of selling medical products and services;

WHEREAS, Agent has the ability to market the Company's products and services to customers in the Territory (as defined below);

WHEREAS, the Company desires to engage Agent as an independent contractor on a non-exclusive basis to solicit orders for Products (as defined below) in the Territory upon the terms and conditions herein set forth;

NOW, THEREFORE, for and in consideration of the mutual covenants contained herein, the Company and Agent do hereby agree as follows:

1. **Term:** The term of this Agreement will begin as of the Effective Date and will continue for a period of one (1) year thereafter unless earlier terminated as permitted by Section 11. The term of this agreement will automatically renew for additional periods of one (1) year per extension unless otherwise terminated as provided herein.

2. **Appointment as Agent:** Subject to the terms and conditions of this Agreement, Company appoints Agent on a non-exclusive basis as its marketing agent for the promotion and sales of the Company's products described in Exhibit A (the "Products"), in the territory described in Exhibit B (the "Territory"), a minimum sales objective and compensation described in Exhibit C (the "Objective"), and fees to be paid as described in Exhibit D (the "Fees"). Exhibits A, B, C and D are attached hereto and are incorporated herein by reference. Company maintains the right, in its sole discretion, to make unilateral changes to Exhibit A, provided it provides written notice of change to Agent. Any changes to Exhibits B, C or D must be reduced to writing, dated and signed by the Parties.

3. **Agent's Duties:** Agent will perform the following duties as an independent contractor of Company at Agent's expense.

a. **Promotion of Products:** Agent will use reasonable efforts and resources to stimulate interest in and obtain orders for Products in the Territory that are equal to or greater than the Objective as defined in Section 6(a). Agent will investigate and follow-up with all inquiries from potential customers in the Territory, however arising, and will promptly handle all correspondence and personal contact with such potential customers as may be necessary or appropriate.

b. **Solicitation of Orders:** Agent will solicit orders for the Products in agents name only.

APP_0238

LMC-Leeberg_001562

c. **Payment terms:** Company is not legally bound to ship product to Agents accounts if accounts has invoice(s) past due.

d. **Customer Complaints:** Agent will immediately report to Company any complaints about Products from customers in the Territory and, at Company's request, will investigate and report to Company about any such complaints.

e. **Product Returns:** All Product returns sought by customers in the Territory must be approved in writing by Company before any return of Products will be accepted by Company. Products cannot be damaged or opened.

f. **Sales Outside the Agent's Territory:** Unless prior approval is given, Agent will not promote the Products or solicit orders for Products or deliver Products, directly or indirectly, outside of the Territory.

g. **Alteration:** Agent will not alter or modify any of the Products, literature or packaging of Products without Company's prior written consent.

h. **Records:** Agent will maintain records regarding the use of Products where Company's Products are utilized. Agent will permit the Company access to such records during normal business hours.

i. **Product Warranties:** Agent will not make any warranty or representation about Products or the use or efficacy of Products except such written warranties, representations, and statements concerning use or efficacy of Products as Company may provide to Agent from time to time for delivery to or use with customers or potential customers in the Territory.

j. **Advertising:** Agent will secure Company's prior written approval of all advertising materials, sales or Product literature, publicity releases and other promotional materials regarding Products or Company's services.

k. **Use of Company's name:** Agent will not use the name **"Legacy Medical Consultants, LLC"** or any other similar name or any of the Company's other trademarks, trade names or service marks in any way that is not approved, in advance of proposed use, is subsequently objected to by Company (and/or its affiliated companies), or which may in any way result in confusion or lead any third party to believe that Company (and/or its affiliated companies) and Agent are not separate and distinct entities.

l. **Product Recall:** In the event of a recall of any of the Products, Agent will cooperate fully with Company in effecting such recall, including, without limitation, promptly returning any Products in Agent's possession or in the possession of any customers in the Territory, contacting any customers that Company desires be contacted and communicating to any customers such information or instructions about the recall that Company may want communicated.

APP_0239

CONFIDENTIAL

LMC-Leeberg_001563

m. **Litigation:** If Company becomes involved in any litigation regarding Products, Agent will cooperate fully with Company and will provide any documents or information in Agent's possession or under Agent's control relating to the litigation.

n. **Hold Harmless:** Agent shall indemnify and hold Company (and its affiliated companies and their officers, directors, members, and employees) harmless for the negligent or intentional acts of Agent or its representatives. Company shall indemnify and hold harmless Agent for the negligent or intentional acts of Company or its representatives.

o. **Expenses:** Agent will pay when due all costs, expenses, taxes and liabilities that Agent incurs in connection with Agent's performance under this agreement.

p. **Confidentiality:** Confidential information regarding both the Company and Agent and its business, products, services, customers and other trade secrets (collectively, the "Confidential Information") may be disclosed to both the Company and Agent. Both company and Agent acknowledge that such information is confidential and of great value to both the Company and Agent. For the term of this Agreement and for a period of two (2) years following termination, the Company and Agent mutually agree not to disclose the Confidential Information of the Company or Agent or its affiliates to anyone without prior express written consent of both parties.

q. **Insurance**: Company shall maintain a comprehensive liability and property insurance at commercially reasonable levels, and shall name Agent as additional named insured. Company shall provide evidence of insurance on request.

4. **Consigned Products:**

a. **Consignment Inventory:** The Company may, from time to time, deliver to Agent Products to hold on consignment for the purpose of filling orders for such Products from customers in the Territory (the "Consigned Products"). Agent agrees to adequately safeguard, store, preserve and hold all Consigned Products in trust for Company's account. The amount and type of Consigned Products to be maintained by Agent will be determined by the Company.

b. **Title and Inspection:** The title to all Consigned Products will remain with the Company until the Consigned Products have been delivered to customers in the Territory subject to purchase orders accepted in writing by the Company. Upon Company's written request, Agent will return to the Company, at the Company's expense, such Consigned Products as are in Agent's possession or under Agent's control. The Company may at any time inspect and inventory the Consigned Products in Agent's possession or under Agent's control and Agent will give the Company access to such Consigned Products.

c. **Damaged or Misplaced Consigned Products:** Agent will be responsible to the Company for any Consigned Products in Agent's possession, under Agent's control. Agent will be liable to the Company for such damaged or missing Consigned Products. Company reserves the right to change such policies from time to time. Consignment to Customers needs to

APP_0240

under a consignment agreement to the Customer and the Customer assumes liability for the Product.

5. **Samples:** The Company may provide the Agent samples of the Company's Products as needed (the "Sample Products"). Agent will be liable to the Company for lost, missing, or damaged Sample Products.

6. **Objective:** To market and sell Company's products

7. **Company's Duties:** The Company will perform the following duties at the Company's expense.

a. **Drop Ship Product to Client Accounts**. The Company will have access to Customer's Insurance Verification, Order Management and Claims Management Portal. Upon receipt of Client Orders, Company will expeditiously drop-ship ordered product to Client location via Client desired express shipment.

b. **Product Literature:** The Company will furnish Agent with sales literature, descriptions of techniques, videos, or other sales material developed by the Company or the Product manufacturers for use in the promotion of the Products and solicitation of orders for Products.

c. **Advertising and Publicity:** The Company will, as it deems necessary in its sole discretion: (I) conduct advertising and publicity, (ii) participate in trade shows, and (iii) engage in other promotional activities with respect to the Products.

d. **Liability Insurance:** Product manufactures typically maintain Product Liability Insurance covering the Company's Products. The Agent agrees to provide to its customers and accounts all relevant product indications, instructions for use, and operative techniques (both video and written) that are supplied to it by the Company to ensure the correct use of the Company's products. The Agent additionally agrees to advise its customers and accounts of any and all contra-indications which relate to the Company's Products and as detailed in the Product insert contained within the packaging of each product or as detailed in the written operative technique. The Agent acknowledges that the Company is not providing Errors and Omissions Insurance, or any other insurance which covers negligence or misrepresentations of the Agent or the Agent's employed agents, officers or employees. Agent shall be responsible for acquiring and maintaining its own insurance as detailed in Section 3.q. above. Agent is encouraged to acquire its own Errors and Omissions Insurance.

8. **Reporting:** Company agrees to utilize Agent's online Verifications and Order Management portal, to receive all Insurance Verification Requests, post all Patient Benefits Reports, and receive all Product Orders.

APP_0241

CONFIDENTIAL

LMC-Leeberg_001565

a. **Non-Solicitation**: (12) months after the termination of this Agreement for any reason, Agent (or Company) shall not directly or indirectly do any of the following except in fulfilling its duties to Company (or Agent) hereunder or as otherwise agreed to by the Company (or Agent) in writing:

. (i) Encourage or solicit, or help any other person or entity to encourage or solicit, any employee, representative, consultant or independent contractor to leave the employment or service of Company (or Agent) for any reason, or interfere in any other manner with such relationships;

. (ii) Employ, hire or retain, or help any other person or entity to employ, hire or retain, Company (or Agent) employees or independent contractors to work or provide independent consulting for any other person or entity;

The Parties acknowledge and agree that the provisions of this Section 8 are reasonable in light of their legitimate business needs, that the restrictions and limitations contained in this Section 8 are reasonable as to scope and duration and are necessary to protect Company's (or Agent's) interests and to preserve for Company (or Agency) its competitive advantage, and that Agent (or Company) will not be unduly burdened by the restrictions imposed hereby. Agent (or Company) hereby acknowledges that monetary damages may not be sufficient to compensate Company (or Agent) for any economic loss which may be incurred by reason of my breach of the foregoing restrictive covenants. Accordingly, in the event of any such breach, Company (or Agent) shall, in addition to terminating this Agreement at the time of such breach, exercise any and all remedies available to Company (or Agent) at law or in equity, which may include but not be limited to obtaining equitable relief in the form of an injunction precluding Agent (or Company) from continuing such breach or in the form of a decree requiring specific performance of the covenants set forth herein.

9. **Trademarks:** As between Agent and the Company, the Company (and/or its affiliated companies) is the sole and exclusive owner of the trademarks, trade names, and service marks for the Products. Agent will not take any action which is inconsistent with such ownership and will not directly or indirectly challenge the Company (and/or its affiliated companies') title to the Trademarks.

10. **Independent Contractor:** Agent is and will remain an independent contractor and shall not be deemed to be an employee, joint venture, partner or franchisee of the Company for any purpose whatsoever. Accordingly, Agent is exclusively responsible for the manner in which Agent performs Agent's duties under this Agreement and for the profitability or lack of profitability of Agent's activities under or in connection with Agreement. Agent does not have, and will not represent Agent as having, any right or authority to obligate or bind the Company in any manner whatsoever. Agent, and not the Company, will be responsible to Agent's employees and agents for any compensation due them and for compliance with all applicable

APP_0242

CONFIDENTIAL

LMC-Leeberg_001566

laws with respect to worker's compensation, withholding taxes, unemployment compensation, social security payments, and any other charges against compensation imposed by any governmental authority as to Agent's Employees and Agents.

**11. Termination:**

a. This Agreement shall continue in full force and effect until the date set forth in a written notice, for cause as defined in Agreement, given by one party to the other indicating such party's election to terminate this agreement, which termination date shall be at least thirty (30) days after the date notice of such election is given.

b. This Agreement shall terminate upon the occurrence of any of the following:

(I) **Agreement:** By mutual written agreement executed by both parties.

.    (ii) **Failure to Meet Objective; Breach:** By the Company effective ten (10) calendar days after the Company gives Agent written notice of such termination if (A) Agent does meet the objective described in Exhibit C, or (B) Agent otherwise materially breaches this Agreement.

.    (iii)  **Inability to Perform:** By either party, effective immediately upon the giving of written notice or verbal to the other party, if the other party: (A) ceases actively to conduct business, (B) files a voluntary petition under the Bankruptcy Code or has filed against it an involuntary petition under the Bankruptcy Code, (C) applies for the appointment of a receiver or trustee for substantially all of such party's property or ASSETS or permits the appointment of any such receiver or trustee who is not discharged within thirty (30) calendar days of such appointment, (D) becomes unable to pay such party's debts as they become due, or (E) makes a general assignment for the benefit of such party's creditors.

a.    **Effect of Termination:** Following the termination of this Agreement for any reason.

b.    **Return of Consigned Products and Confidential Information**: Within ten (10) business days after termination of this Agreement for any reason, or at such earlier time as the Company may request, Agent will return to the Company all property belonging to the Company, including without limitation all Consigned Products, Sample Products, Product literature, and all Confidential Information, including, without limitation, records, computer lists, policy manuals, blank forms or copies thereof which come into Agent's possession or control during the term of this Agreement, in such manner as the Company may direct.

c. **Termination of Marketing Efforts:** Upon termination of this Agreement, Agent: (I) will immediately discontinue all use of the Trademarks ; (ii) will immediately discontinue all promotion of the Products and solicitation of orders for the Products; and (iii) will not make any representation that Agent has the right to promote the Products or solicit orders for the Products.

APP_0243

LMC-Leeberg_001567

**12. General Provisions:**

a. **Entire Agreement:** This Agreement, together with the Exhibits, constitutes the entire Agreement between the parties and supersedes any and all prior and contemporaneous oral or written understandings between the parties relating to the subject matter of this Agreement.

b. **Governing Law:** This Agreement shall be governed by and shall be construed and enforced in accordance with the laws of the State of Texas, without giving effect to the principles of conflicts of law thereof.

c. **Jurisdiction and Venue:** In the event that there is a dispute arising under or related to this Agreement or a Party seeks to enforce this Agreement, each party agrees that all legal proceedings shall be instituted only in the federal or state courts located in the State of Texas. Each party irrevocably consents to the jurisdiction and venue of such courts.

d. **Amendments:** This Agreement may not be amended, changed or terminated orally, and no alteration, change, termination, or attempted waiver of any of the provisions hereof shall be binding without the written consent of both Parties and such alteration, change, termination or attempted waiver shall in no way effect the other terms and conditions of this Agreement which in all respects shall remain in full force and effect.

e. **Relationship**: In all matters relating to this Agreement, Agent shall be acting as an independent contractor and shall bear all of its expenses in connection with this Agreement and shall be responsible for any and all claims, liabilities or damages or debts of any type that may arise on account of Agent's activities, or those of its employees or agents, in the performance of this Agreement. Agent is solely and personally responsible for all of its employees and agents, if any, and its labor and other costs and expenses arising in connection therewith. Agent will assume full responsibility for the proper reporting and payment of all taxes, contributions and special levies imposed or required from Agent under unemployment insurance, social security, income tax, and other laws or regulations, with respect to the performance of Agent and Agent's employees and agents of this Agreement. Agent shall indemnify and hold Company harmless from any liability, loss, damage, or claim arising against or incurred or paid by Company by reason of any failure by Agent to fully or timely assume such responsibilities. Agent shall not have any authority to assume or create any obligation, express or implied, on behalf of Company. Agent shall not make quotations or write letters under the name of Company, but shall in all cases use its own name.

APP_0244

CONFIDENTIAL

LMC-Leeberg_001568

The Parties have executed this Agreement in the manner appropriate for each as of the date written on the first page of this Agreement.

**COMPANY: Legacy Medical Consultants, LLC**

By:_____

Name:

Title:

**AGENT: APEX MDCL, LLC**

By:_____

Name:

Title: <u>President/Owner</u>

***The rest of this page is intentionally left blank\****

APP_0245

CONFIDENTIAL                                                                LMC-Leeberg_001569

**Exhibit A**

**"PRODUCTS and SERVICES"**

Marketing approved 361 HCT/P products.


**Exhibit B**

**"TERRITORY"**

<u>Non-Exclusive Territory</u> defined by Agent's network of clinics, hospitals, surgery centers and physicians that <u>sign an Onboarding Agreement with Legacy Medical.</u> Once Agent signs up a customer, it will remain in their territory for as long as this agreement is active. If a customer does not order product for 90 days or more, it will no longer be in Agent's territory.

Agent cannot sign up Customers that are currently ordering Product from Company. This could be grounds for the termination of this agreement.


**Exhibit C**

**"OBJECTIVE**

To Market and Sell Legacy Medical Consultants' Products


**Exhibit D**
**"COMPENSATION"**
Zenith Amniotic Membrane - 65% on Collected Revenue


**\*\* Commission payments are paid to agent from Company on or about the first 10 days of the month for the previous month's collections received by the company. \*\***


**\*\*The rest of this page is intentionally left blank\*\***


APP_0246

# Complete and Return with Agreement

DISTRIBUTOR NAME:

ADDRESS:

AGENT PRINCIPAL NAME:

AGENT PRINCIPAL PHONE:

AGENT PRINCIPAL EMAIL:

TERRITORY COVERED:

Rep 1 w/ PHONE & EMAIL:

Rep 2 w/ PHONE & EMAIL:

Rep 3  w/ PHONE & EMAIL:

CUSTOMERS:

CUSTOMERS:

CUSTOMERS:

Email to: customerservice@legacymedicalconsultants.com

APP_0247

CONFIDENTIAL

LMC-Leeberg_001571