UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:25-cv-00319-P |
| CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC, | § § § § | |
| Defendant. | § | |

**PLAINTIFF LEGACY MEDICAL CONSULTANTS, LP'S OPPOSITION TO DEFENDANT CRISTI LEEBERG'S MOTION TO STRIKE EXPERT REPORT AND TESTIMONY OF CHARLOTTE L. KOHLER AND BRIEF IN SUPPORT**

Gregory J. Moore
Texas Bar No. 24055999
Audrey F. Momanaee
Texas Bar No. 24055993
Fed Bar No. 724132
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com
Audrey.Momanaee@BlankRome.com

Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. STATEMENT OF FACTS ................................................................................................... 3

    A. The Parties Mutually Exchange Expert Designations via Email Per the Court's Scheduling Order ..................................................................................................... 3

    B. Both Parties Submitted a Joint Request to the Court for an Extension of Discovery and Other Deadlines Without Objecting to Either Side's Expert Disclosure, Participated in Mediation Without Objecting to Either Side's Expert Disclosure, and the Defendant Did Not Raise Any Issues Until Nearly Four Weeks After Receiving the Plaintiff's Expert Report ........................................................................ 3

III. THE BARRETT FACTORS WEIGH IN FAVOR OF PLAINTIFF AND AGAINST DENFANT'S MOTION TO STRIKE ......................................................... 4

    A. The Parties, By Their Conduct, Mutually Acknowledged the Sufficiency of Each Other's Disclosures, and therefore the First Barrett Factor Should be Weighed Neutrally if not in Plaintiff's Favor ............................................................................ 5

    B. Now Having Had the Kohler Report Almost Two Months, and With Trial Still Not Until Next Quarter, Little Prejudice Extends to Defendant if the Motion to Strike is Denied, Especially Where the Opinions Are of No Ambush or Surprise and Plaintiff Has Made its Expert Available for Deposition ..................................... 7

    C. Defendant's Dilatoriness Has Artificially Limited the Availability of a Continuance as a Remedy, but Even So, a Continuance is Not Required if Defendant Deposes Plaintiff's Expert Soon and Prepares a Rebuttal Report as part of Her Pretrial Disclosures on April 22, 2026, and Plaintiff Forgoes Any Objection to Her Rebuttal Expert's Report, Which it Would Agree to Do ............. 10

    D. Ms. Kohler's Expert Testimony Is Necessary to Plaintiff's Case ........................... 11

IV. CONCLUSION ................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander v. McAdams, et al.*,
   No. 3:16CV190-MPM-RP, 2017 WL 5642327 (N.D. Miss. Mar. 1, 2017) ................ 11, 13-14

*Barrett, et al. v. Atl. Richfield Co., et al.*,
   95 F.3d 375 (5th Cir. 1996) .......................................................................................... *passim*

*Geiserman v. MacDonald*,
   893 F.2d 787 (5th Cir. 1990) ................................................................................................8, 10

*Goodson v. Nasco Healthcare, Inc.*,
   No. 3:21-CV-01467-N, 2025 WL 1260816 (N.D. Tex. Apr. 30, 2025) .......................5, 6, 9, 11

*Nat'l Ins. Tr. Co. v. A&A Landscape & Irrigation*,
   No. 3:21-CV-2616-B, 2022 WL 3139751 (N.D. Tex. Aug. 5, 2022).......................................11

**Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................................... *passim*

Fed. R. Civ. P. 26(a) ........................................................................................................5

Fed R. Civ. P. 26(a)(2)..................................................................................................3, 5

Fed. R. Civ. P. 37............................................................................................................11

**PLAINTIFF LEGACY MEDICAL CONSULTANTS' OPPOSITION TO DEFENDANT CRISTI LEEBERG'S MOTION TO STRIKE EXPERT REPORT AND TESTIMONY OF CHARLOTTE L. KOHLER AND BRIEF IN SUPPORT**

Plaintiff Legacy Medical Consultants, LP, successor in interest to Legacy Medical Consultants, LLC ("Plaintiff"), by and through its undersigned counsel, hereby submits this Opposition to Defendant Cristi Leeberg's Motion to Strike Expert Report and Testimony of Charlotte L. Kohler (hereinafter, "Motion"). For the reasons stated herein, the Motion should be denied.

**I.  INTRODUCTION**

Defendant Cristi Leeberg now asks this Court to strike the expert report and testimony of Charlotte L. Kohler—not because Ms. Kohler's written report itself fails to meet the requirements of Fed. R. Civ. P. 26—but because of the "sufficiency" of Legacy's initial designation and the "timeliness" of the report, even though Defendant herself submitted an initial designation almost identical to Legacy's, and she waited four months to complain about it, including the four weeks she waited to object to the written expert report she has since made no effort to read or address. Defendant's Motion is a transparent attempt to manufacture prejudice where none exists, seeking the most extreme sanction—complete exclusion—while ignoring the reasonable remedies available to her all along.

The undisputed facts reveal that both parties exchanged nearly identical expert designations on September 19 and 22, 2025, neither accompanied by a full-blown written report and with no objections by either party for months. At that time, Defendant had not yet responded to Plaintiff's written discovery requests or provided responsive documentation, and she had not yet been deposed. Indeed, on November 13, 2025, the parties requested an extension of discovery noting that Defendant had not provided to Legacy the Medicare "claims appeals" Legacy had been requesting. The Court ruled and reset dates, including extending the deadline for expert objections

1

to April 27, 2026. The Defendant never raised any issues concerning Legacy's initial expert designation in that joint motion. The parties also mediated this matter without raising concerns about expert disclosures. After explaining that Defendant was unavailable for her deposition until December, she was deposed on December 4, 2026. Shortly after receiving the transcript of that deposition, which Plaintiff's expert relied upon, Plaintiff provided its written expert report on January 2, 2026, and Defendant said nothing for nearly four weeks. Even after discovery closed, when Plaintiff offered to make Ms. Kohler available for deposition at Defendant's convenience— and to forego any reciprocal right to object to any late-filed rebuttal expert's report—Defendant declined to take Plaintiff up on the offer. Instead, Defendant filed this Motion, hoping that her own inaction would somehow transform into grounds for excluding critical testimony.

The *Barrett* factors uniformly weigh against granting Defendant's Motion. There is no ambush or surprise: Defendant has known since September 2025 that Plaintiff retained an expert in Medicare reimbursement, and the report's opinions align precisely with the parties' well-defined claims and defenses and mirrors her own expert's designated subjects. There is no prejudice that cannot be cured: trial is still months away, Plaintiff has offered its expert for deposition, and Defendant can still prepare a rebuttal report before the April 27 objection deadlines. Finally, Ms. Kohler's testimony is essential to Plaintiff's case, directly rebutting Defendant's affirmative defenses and counterclaims, particularly the claim that Legacy, rather than Defendant's own documentation failures, caused Medicare to deny reimbursement.

Striking Ms. Kohler's testimony would reward Defendant's gamesmanship while depriving Plaintiff of evidence central to its case. The Court should deny the Motion.

## II.   STATEMENT OF FACTS

### A. The Parties Mutually Exchange Expert Designations via Email Per the Court's Scheduling Order

Per the Court's Scheduling Order, "Unless otherwise stipulated or directed by court order, the party with the burden of proof on the issue subject to the expert designation must file a written designation of the name and address of each expert witness who will testify at trial for that party and must comply with Rule 26(a)(2) of the Federal Rules of Civil Procedure by **September 20, 2025**." Doc. 11, ¶4a (emphasis in original). In an email dated September 19th, Plaintiff designated Kohler Healthcare Consulting as its expert in general Medicare reimbursement rules and procedures. Def. Mot., Ex. 1. At these early stages before Defendant provided her responses to Legacy's written discovery requests, Plaintiff did not accompany its designation with a written report but did disclose the subject matter on which the witness is expected to present evidence. *Id.* Also via email, on September 22, 2025, Defendant designated Dr. Daniel Kapp from Medical Necessity Audit Consultants as her expert in "the proper application of human skin cell tissue products as well as the process for seeking reimbursement of claims through insurance companies." *See* Defendant's Expert Designation at **Exhibit A** (App. 001-002). Defendant likewise did not accompany her designation with a written report, but did disclose, exactly like Legacy, the subject matter on which the witness is expected to present evidence.

### B. Both Parties Submitted a Joint Request to the Court for an Extension of Discovery and Other Deadlines Without Objecting to Either Side's Expert Disclosure, Participated in Mediation Without Objecting to Either Side's Expert Disclosure, and the Defendant Did Not Raise Any Issues Until Nearly Four Weeks After Receiving the Plaintiff's Expert Report

On November 13, 2025, the parties submitted a joint request to the Court for an extension of time for discovery and for other deadlines, including the expert objections deadline, without raising any issue regarding either side's expert disclosures. *See* Doc. 32 (Joint Motion to Extend

3

Time for Pretrial Deadlines); *see also* Declaration of Megan A. Altobelli ("Altobelli Decl.") at **Exhibit B**, ¶3 (App. 003). The parties also met for in-person mediation on December 3, 2025. Neither party objected to the other party's expert designation at the mediation, nor raised any issues with the disclosures in their Joint Mediation Report to the Court. *See* Doc. 38 (Joint Medication Report); *see also* Altobelli Decl., ¶3 (App. 003). Indeed, following mediation and the deposition of Defendant Cristi Leeberg on December 4, 2025, which transcript Plaintiff's expert relied upon, and before the close of discovery, Plaintiff timely provided Defendant with its written expert report (the "Kohler Report") on January 2, 2026. *See* Def. Mot., Ex. 1; *see also* App. 017-048. Defendant did not raise any issues on January 2, 2026, related to the timeliness of the report. In fact, Defendant did not raise any issues with Plaintiff's expert disclosure or the Kohler Report until nearly four weeks later, on January 26th. *See* Defendant's Objection to Plaintiff's Expert Disclosure at **Exhibit C** (App. 005-006). Moreover, within 48 hours of Defendant's objection, on January 28, 2026, Plaintiff offered to make Ms. Kohler available for deposition at Defendant's convenience, even offering to forgo any reciprocal right to object to any late filing of Defendant's rebuttal expert report. *See* Ex. B (Altobelli Decl.), ¶4 (App. 004).

Defendant does not claim the Kohler Report fails to meet the requirements of Rule 26. Rather, Defendant objects to the sufficiency of Plaintiff's September initial designation before discovery was exchanged (a disclosure Defendant received four months prior to filing this Motion), and the timeliness of the report. *Id.*

### III. THE *BARRETT* FACTORS WEIGH IN FAVOR OF PLAINTIFF AND AGAINST DENFANT'S MOTION TO STRIKE

Like the proverbial pot calling the kettle black, Defendant, four months following Plaintiff's September 2025 expert disclosure and nearly four weeks following receipt of Plaintiff's written expert report, moves to exclude the initial disclosure as insufficient and the report as

4

untimely. As a remedy, Defendant seeks not to depose Plaintiff's expert or re-open discovery, but to exclude her testimony entirely despite lack of ambush, surprise, or prejudice, and its relative importance to the parties' claims and defenses. The Motion should be denied because any failure to follow the strict Rule 26 disclosure requirements has been cured; the importance of Plaintiff's expert is too great; and the prejudice to Defendant cannot be demonstrated.

The parties agree that when considering whether to grant a motion to strike based on a violation of Rule 26, the Court considers: (1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony. *Goodson v. Nasco Healthcare, Inc.*, No. 3:21-CV-01467-N, 2025 WL 1260816, *2 (N.D. Tex. Apr. 30, 2025) (citing *Barrett, et al. v. Atl. Richfield Co., et al.*, 95 F.3d 375 (5th Cir. 1996)). "The Court has broad discretion in deciding whether a violation of Rule 26(a) is substantially justified or harmless." *Goodson*, at *2. Here, these *Barrett* factors weigh in favor of allowing the expert and against granting Defendant's Motion.

### A. The Parties, By Their Conduct, Mutually Acknowledged the Sufficiency of Each Other's Disclosures, and therefore the First *Barrett* Factor Should be Weighed Neutrally if not in Plaintiff's Favor

Per the Court's Scheduling Order, the parties were required to designate their expert witnesses last Fall and in accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure "**[u]nless otherwise stipulated** or directed by court order." Doc. 11, ¶4a. (emphasis added). Defendant now objects to the sufficiency of Plaintiff's September 2025 initial disclosure, and the timeliness of its expert report, even though Defendant herself sent an identical disclosure by email three days later. Plf. Opp., Ex. A (Def. Expert Designation) (App. 017-048). Moreover, Defendant never objected to the disclosure in the parties' joint request for the extension of discovery. Doc. 32; *see also* Altobelli Decl., ¶3 (App. 003). The parties also mediated without objecting to each

5

other's disclosures and neither raised an issue in their Joint Mediation Report. *See* Doc. 38; *see also* Altobelli Decl., ¶3 (App. 003). Indeed, it was not until nearly four weeks *after* Defendant received the written expert report did she claim issue with either the initial disclosure or the report's timeliness. Further, Defendant does not claim the Kohler Report fails to meet the requirements of Rule 26. Rather, Defendant simply says she should have received it in September, which was before Defendant responded to any written discovery and before any documents were received; it was also an objection never raised until just a few days before Plaintiff's Motion for Summary Judgment was due.

The first *Barrett* factor is "the explanation, if any, for the party's failure to comply with the discovery order." *Goodson*, at *2. This factor is, at worst, neutral in that while Plaintiff technically did not accompany its expert disclosure with a written report in September 2025, Defendant did the same thing, and by their conduct the parties effectively agreed to use informal disclosures before the completion of discovery. Moreover, at the time of the parties' initial designations, neither Defendant nor Legacy's corporate designee had been deposed, and document production was ongoing. *See* August 2025 Emails Regarding Document Production at **Exhibit D** (App. 007-011); *see also* November 2025 Emails Regarding Depositions at **Exhibit E** (App. 012-016). Indeed, shortly after receiving the transcript of Defendant's deposition, which took place on December 4, 2025—and not earlier because of Defense counsel's schedule (*see* Ex. E (App. 015))—which transcript Plaintiff's expert relied upon, Plaintiff's expert provided the written expert report to Defendant. Def. Mot., Ex. 1. It is especially true that this *Barrett* factor weighs at worst neutrally (if not entirely in Plaintiff's favor) because Defendant waited four months *after* the initial disclosure, and four weeks *after* receiving the written report, to raise any complaint. Accordingly, this factor should, at worst, weigh neutrally or entirely in Plaintiff's favor.

**B. Now Having Had the Kohler Report Almost Two Months, and With Trial Still Not Until Next Quarter, Little Prejudice Extends to Defendant if the Motion to Strike is Denied, Especially Where the Opinions Are of No Ambush or Surprise and Plaintiff Has Made its Expert Available for Deposition**

At the time Plaintiff designated Kohler Healthcare Consulting as its expert, the pleadings were almost closed. *See* Doc. Nos. 6 (First Amended Complaint), 18 (Def. Answer and Affirmative Defenses), 20 (Def. Amended Answer and Affirmative Defenses), 21 (Def. Counterclaims). This means that, by the time Legacy disclosed who its expert would be and the subject matter upon which she would be expected to testify, Defendant had, at least, a notional understanding of the claims and likely defenses at issue in the case, namely: (a) Plaintiff's claim that Defendant violated the unambiguous terms of their contracts by failing to pay for products purchased, and (b) Defendant's claims that Plaintiff promised Defendant she would not need to pay unless she was reimbursed by Medicare; that Plaintiff caused her Medicare denials; and that Plaintiff delivered skin grafts non-conforming for their approved use. Given this backdrop, it is unsurprising that Plaintiff retained an expert in Medicare reimbursement rules and procedures and that Defendant retained and expert in "the proper application of human skin cell tissue products as well as the process for seeking reimbursement of claims through insurance companies." *See* Def. Mot., Ex. 1; *see also* Plf. Opp., Ex. A (App. 001).

It is equally unsurprising that Plaintiff's expert, then, offered the following opinions in support of Plaintiff's claims and defenses against Defendant's counterclaims, five months before the scheduled Trial date: (1) Ms. Leeberg, in her role as a clinical provider licensed to make medical decisions for the use of skin grafts, remains responsible for compliance with applicable Medicare coverage criteria; (2) clinical decisions related to reasonableness and necessity of treatment is the sole responsibility of the provider, to include determining, documenting, and certifying medical necessity for each claim under Medicare standards; (3) documenting and

justifying clinical decisions to meet Medicare coverage criteria is the sole responsibility of the provider, regardless of what a vendor says; (4) submitting a claim to Medicare is an attestation that the provider already paid or incurred the cost for the product used; and (5) in the event of a disagreement with claim adjudication, providers have the right and responsibility to engage with the five levels of appeals instituted by the Centers for Medicare and Medicaid Services (CMS). *See* the Kohler Report at **Exhibit F** (App. 017-048).

In short, there was no ambush or surprise. This is in stark contrast with the case, *Geiserman v. MacDonald*, 893 F.2d 787 (5th Cir. 1990), that Defendant cites to support her argument that "allowing [Plaintiff] to introduce [Ms. Kohler's testimony] would cause immeasurable prejudice to [Defendant]." *Geiserman* is distinguishable.

First, unlike here, the plaintiff in *Geiserman* disclosed two experts, for the first time, less than 75 days before trial and missing two expert discovery deadlines. 893 F.2d at 789. Second, the defendant in *Geiserman* specifically "chose and designated his own expert witness in reliance on Plaintiff's apparent decision to forgo expert testimony." *Id.* at 791. That defendant was further prejudiced because "his own trial strategy was affected by Geiserman's extensive delay," because of "the degree of unfair surprise associated with the last-second designation of [the] unscheduled witness[es]," and because of the corresponding, inevitable "disrupt[ion] [to] the court's discovery schedule." *Id.*

Those elements are not present here. In contrast, Defendant Leeberg (1) received Plaintiff's expert designation eight months before trial along with a summary of the subject matter; (2) never requested to depose the expert; and (3) received the written report before the close of discovery shortly after her deposition in four weeks in advance of this Motion, and almost five months before trial. Moreover, the opinions that Plaintiff's expert intends to provide are neither surprising nor

8

novel but rather align with the parties' claims and defenses. Further, contrary to Defendant's contention that Plaintiff's untimeliness prevented her from "engag[ing] a rebuttal expert to timely prepare and produce a written rebuttal report," Defendant already designated a rebuttal expert on September 22, 2025, following Plaintiff's initial disclosure and chose not to provide an expert report. Indeed, Defendant has not offered a shred of proof that she even consulted her designated rebuttal expert in the four weeks she had the Kohler Report before objecting.

Defendant claims that had Plaintiff provided her with the Kohler Report back in September, Defendant would have deposed Plaintiff's expert and questioned Plaintiff's corporate designee about the expert's opinions. Def. Mot., p.7. This is hard to believe given that Defendant did not once notice Plaintiff's expert for deposition even though she knew who they were since September 19, 2025. Moreover, upon making her objection, Plaintiff *has* offered Ms. Charlotte Kohler up to be deposed at Defendant's convenience over a month ago. Ex. B (Altobelli Decl.), ¶4 (App. 004). Defendant also deposed Plaintiff's corporate designee *twice* following the receipt of the Kohler Report in January and never once asked a single question about it. What is clear from this record is not that Defendant has had insufficient time to evaluate and respond to Plaintiff's evidence, but rather that Defendant consciously chooses not to prepare against it to manufacture a prejudice argument in the hope the Court excludes it.

The second *Barrett* factor is "the prejudice to the opposing party of allowing the witnesses to testify." *Goodson*, at *2. As outlined above, now having had the Kohler Report almost two months, and with trial still not until next quarter, little prejudice extends to Defendant if the Motion to Strike is denied, especially where the opinions are of no ambush or surprise and Plaintiff has made its expert available for deposition. Moreover, Defendant cannot on the one hand claim prejudice while on the other hand Defendant continues to produce documents requested *before*

9

discovery closed *well after* the discovery deadline. Indeed, Plaintiff has been asking Defendant for her Medicare appeals documentation for months (*see, e.g.,* Deficiency Letter at **Exhibit G**) (App. 049-051), only some of which Defendant provided in her first supplemental production on January 21, 2026, almost two weeks after the discovery deadline. This factor weighs in favor of denying Defendant's Motion.

> **C. Defendant's Dilatoriness Has Artificially Limited the Availability of a Continuance as a Remedy, but Even So, a Continuance is Not Required if Defendant Deposes Plaintiff's Expert Soon and Prepares a Rebuttal Report as part of Her Pretrial Disclosures on April 22, 2026, and Plaintiff Forgoes Any Objection to Her Rebuttal Expert's Report, Which it Would Agree to Do**

Defendant has had the Kohler Report since January 2, 2026. What has Defendant done with it in the four weeks between then and the date of the filing of this Motion? Defendant has offered no proof that she provided it to her designated expert witness for review, nor has Defendant requested to depose Plaintiff's expert or asked for a continuance of discovery to do so. Indeed, within 48 hours of Defendant's objection to the Kohler Report, on January 28, 2026, Plaintiff offered to make Ms. Kohler available for deposition at Defendant's convenience, even offering to forgo any reciprocal right to object to the timeliness of a rebuttal expert report. Ex. B (Altobelli Decl.), ¶4 (App. 004). To date, Defendant has not sought to depose Ms. Kohler. Instead, Defendant's plan is unapologetically transparent: consciously forego seeking to question the expert to feign an absence of time to do so four weeks later in a motion to strike.

Defendant's conduct has artificially limited the availability of a continuance as a remedy, though a continuance is still available and would *not* encourage dilatory conduct as Defendant suggests. *See* Def. Mot., p.8 ("Legacy's untimely disclosure cannot be cured without rewarding its noncompliance[.]"). This case is not like *Geiserman* where Plaintiff missed two expert discovery deadlines and tried to name two experts for the first time less than 75 days before trial. 893 F.2d at 789. Here, Defendant consciously chooses not to prepare herself in seeking to manufacture a

10

prejudice argument. This conduct should not be rewarded by granting this Motion to Strike. Instead, following Rule 37, the Court could fashion a more reasonable remedy that acknowledges Defendant's delay in raising the issue, but still provides adequate time to prepare for trial without a continuance. Plaintiff respectfully requests that the Court re-open discovery for the limited purpose of having Defendant depose Ms. Kohler on her expert report and for Defendant to prepare a rebuttal expert report if she so wishes, by the April 22, 2026 pre-trial disclosure deadline. Plaintiff would forgo any objection to the timeliness of a rebuttal report. A continuance is not necessary.

The third *Barrett* factor is "the possibility of curing such prejudice by granting a continuance." *Goodson*, at *2. For the reasons described above, this factor also weighs in favor of denying the Motion.

### D. Ms. Kohler's Expert Testimony Is Necessary to Plaintiff's Case

The fourth *Barrett* factor is "the importance of the witnesses' testimony." *Goodson*, at *2. This factor "requires the court to consider the necessity of [the expert witness] to plaintiff's case." *Alexander v. McAdams, et al.*, No. 3:16CV190-MPM-RP, 2017 WL 5642327, *3 (N.D. Miss. Mar. 1, 2017); *see also Nat'l Ins. Tr. Co. v. A&A Landscape & Irrigation*, No. 3:21-CV-2616-B, 2022 WL 3139751 (N.D. Tex. Aug. 5, 2022). Here, the testimony of Ms. Kohler is of central importance to Plaintiff's case—it directly rebuts Defendant's affirmative defenses and counterclaims.

Defendant asserts eight affirmative defenses and five counterclaims, including:

| **Affirmative Defense** | **Basis** |
|---|---|
| Unclean Hands | "Plaintiff engaged in wrongful conduct by selling Defendant human tissue products that were improperly labeled or misrepresented for their intended use. Specifically, Plaintiff misrepresented the intended use of the human tissue products by indicating they were suitable for [] applying [] without sutures. In reality, the products [] were designated for a specific post-surgical application, required a physician's prescription, and needed to be applied with sutures or staples. As a |

11

| | |
|---|---|
| | direct and proximate result of Plaintiff's representations, [] Defendant endured [] denial of each and every [Medicare] claim [] resulting in non-payment, claw backs and demands for repayment to CMS[.]" ECF No. 20, First Affirmative Defense. |
| Promissory Estoppel | "Plaintiff misrepresented the intended application of the human tissue products by indicating that they could be applied without sutures, without a doctor's prescription, and did not need to be applied after surgery. In reality, the products supplied by Plaintiff were erroneously designated for a specific post-surgical application, requiring a doctor's prescription and the use of sutures or staples. As a result of Defendant's detrimental reliance upon Plaintiff's prior misrepresentations, Defendant endured [] denial of each and every [Medicare] claim [] resulting in non-payment, claw backs and demands for repayment to CMS[.]" *Id.* at Second Affirmative Defense. |
| Prior Material Breach | "Plaintiff first breached the Agreements by selling Defendant human tissue products that were improperly labeled or misrepresented as to their intended use." *Id.* at Third Affirmative Defense. |
| Fraud | "Plaintiff knowingly misrepresented the intended use of the human tissue products by indicating they were suitable for Defendant's intended purposes, i.e., applying the product without sutures. [] As such, payment could not be processed through Medicare." *Id.* at Fourth Affirmative Defense. |
| **Counterclaim** | **Allegation** |
| Breach of Contract | "In material breach of Paragraph 1, Legacy sold Leeberg human tissue and cell products that were non-conforming to their intended use as described in the IFU furnished by Legacy to Leeberg." ECF No. 21, ¶¶56, 63, 70. |
| Fraudulent Misrepresentation | "Legacy sought compensation from Medicare for applying the IMPAX Membrane products in the manners Legacy advised were acceptable and was denied compensation by Medicare[.]" *Id.* at ¶87. |

The expected testimony of Ms. Kohler is central to each of these affirmative defenses and counterclaims. *See* Ex. F (Kohler Report), ¶¶4, 9–13, 16–45 (App. 019, 021, 022-031). Specifically, Defendant claims she does not have to pay for any of the skin graft products she ordered from Legacy because the grafts she received "were non-conforming to their intended [or advertised] use," that is, Legacy "indicat[ed] they were suitable for [] applying [] without sutures" when in reality they "needed to be applied with sutures or staples." Not so.

12

As Ms. Kohler is expected to testify, skin substitute grafts are described to "include non-autologous human skin [] grafts [] and biological products that form a sheet scaffolding for skin growth," and Legacy's products meet this definition. Ex. F (Kohler Report), ¶32 (App. 027). In other words, Legacy's products conform to their intended use. Moreover, as Ms. Kohler will testify, while the "Instructions for Use (IFU)" documentation[1] Defendant claims provided incorrect instructions may inform proper use, they do not replace clinical judgment. *Id.* at ¶27–28 (App. 026).

Ms. Kohler's expected testimony also directly addresses Defendant's causation argument. Defendant claims that she does not need to pay for the products she ordered and used on her patients because Medicare denied reimbursement, and the reimbursements denied were caused by Plaintiff. These causation arguments are directly refuted by Ms. Kohler's expected testimony, which is that Defendant caused her own denials by failing to properly document medical necessity. Indeed, the first conclusion listed in Ms. Kohler's report is, "Based on the established framework required for Medicare reimbursement and the explanations contained in the denial letters supplied by Ms. Leeberg, the MAC's denials appear to be based on a lack of documentation by Ms. Leeberg and not caused by Legacy." Ex. F (Kohler Report), ¶42 (App. 029-030).

Because of the importance of Ms. Kohler's testimony to Plaintiff's case, this factor weighs in favor of denying Defendant's Motion. Indeed, other district courts within the Fifth Circuit, applying *Barrett*, have weighed this factor in favor of plaintiffs with even *less* information than this Court has. In *Alexander v. McAdams*, the court weighed this factor in plaintiff's favor based on "bare" expert designations that "an economics professor that will testify to the loss suffered by

---

[1] IFUs are manufacturer-created regulatory documents required for medical products that provide safety and procedural guidance for healthcare providers, patients, and caregivers. Ex. F (Kohler Report), ¶27 (App. 026). They are not created by Legacy.

13

plaintiff, an engineer that will testify to 'flood water run and diversion to the Plaintiff's property,' and a real estate agent to opine concerning the 'negative impacts to efforts to market the Plaintiff property.'" 2017 WL 5642327, *3. Specifically, the court in *Alexander* said, "While it is difficult to truly evaluate the necessity of these expert witnesses to plaintiff's case because the designation of the witnesses is so bare, it does appear that these witnesses may assist plaintiff in establishing damages at trial. Accordingly, the fourth *Barrett* factor weighs against striking plaintiff's expert witnesses at this time." *Id.* This Court has more information about Ms. Kohler's relevance than the court in *Alexander* did, providing even more of a reason to deny Defendant's Motion to Strike.

## IV.   CONCLUSION

For these reasons, the Court should deny Leeberg's Motion to Strike and permit Ms. Kohler's testimony at trial consistent with her expert report.

Dated: March 10, 2026

Respectfully submitted,

/s/ *Megan A. Altobelli*
Gregory J. Moore
Texas Bar No. 24055999
Audrey F. Momanaee
Texas Bar No. 24055993
Fed Bar No. 724132
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com
Audrey.Momanaee@BlankRome.com

-and-

Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document has been served on all parties and counsel of record through the Court's CM/ECF filing system on this 10th day of March 2026, in accordance with the Fed. R. Civ. P. 5(b)(2).

                                                         */s/ Megan A. Altobelli*
                                                         Megan A. Altobelli