## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC,** | § § § § | |
| *Plaintiff,* | § § | |
| **v.** | § § | |
| **CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC,** | § § § § | |
| *Defendant.* | § § | |
| **and** | § § | **Civil Action No. 4:25-cv-00319-P** |
| **CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC,** | § § § | |
| *Counter-Plaintiff,* | § § § | |
| **v.** | § § | |
| **LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC,** | § § § § | |
| *Counter- Defendant.* | § § | |

## PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND FOR SANCTIONS

**BLANK ROME LLP**

Gregory J. Moore (*admission PHV*)
Texas Bar No. 24055999
Audrey F. Momanaee
Texas Bar No. 24055993; Fed Bar No. 724132
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com
Audrey.Momanaee@BlankRome.com

Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com
**ATTORNEYS FOR PLAINTIFF**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL BACKGROUND........................................................................................ 3

    A.    THE RELEVANCE OF DEFENDANT'S MEDICARE APPEALS
          DOCUMENTATION AND COMMUNICATIONS WITH RICK
          LOGWOOD AND NICHOLAS PETRILLO ........................................................ 3

          1.    Defendant Failed to Produce (or Suppressed) Communications Between
               Herself and Rick Logwood .......................................................................... 4

          2.    Defendant Failed to Produce (or Suppressed) a Medicare Appeals
               Decision Denying Reimbursement for Services Alleged to Have Been
               Fraudulently Billed by Defendant to the Tune of More than $80,000........ 4

    B.    PROCEDURAL HISTORY OF DISCOVERY........................................................ 5

    C.    OUTSTANDING THIRD-PARTY DISCOVERY FROM TWENTY
          WON SALES AND CONSULTING LLC ............................................................ 7

III.  ARGUMENT................................................................................................................ 8

    A.    GOOD CAUSE EXISTS TO REOPEN DISCOVERY......................................... 8

          1.    Defendant Produces Tranches of Documents Past the Discovery Deadline8

          2.    There Exist Substantial Deficiencies Which Have Recently Come to Light
               ...................................................................................................................... 10

          3.    Defendant's Search Methodology Was Fundamentally Inadequate......... 11

    B.    SANCTIONS ARE WARRANTED UNDER RULE 37 ..................................... 12

          1.    Adverse Inference Instruction.................................................................... 12

          2.    Court-Ordered Forensic Examination........................................................ 13

IV.   CONCLUSION............................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Registry of Radiologic Technologists v. Bennett*,
No. SA-09-CA-767-XR, 2010 WL 11603028 (W.D. Tex. Sept. 8, 2010) ...............................13

*Baker v. Walters*,
652 F.Supp. 768 (N.D. Tex. 2023) ......................................................................................11

*Fuqua v. Horizon/CMS Healthcare Corp.*,
199 F.R.D. 200 (N.D. Tex. 2000) ......................................................................................8, 9

*Realpage, Inc. v. Enterprise Risk Control, LLC*,
No. 4:16-CV-00737, 2017 WL 1180420 (E.D. Tex. Mar. 30, 2017) ......................................14

*Rimkus Consulting Group, Inc. v. Cammarata*,
688 F.Supp. 598 (S.D. Tex. 2010) ......................................................................................12

*S&W Enter., L.L.C. v. South Trust Bank of Ala., NA*,
315 F.3d 533 (5th Cir. 2003) ..............................................................................................8

**Statutes**

Code 15275 ............................................................................................................................5

**Other Authorities**

Fed. R. Civ. P.

16(b)(4) .............................................................................................................................8

26(g)(1) ...........................................................................................................................11

34......................................................................................................................................11

37...................................................................................................................................2, 12

37(e) ................................................................................................................................12

ii

**PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND FOR SANCTIONS
AND MEMORANDUM OF LAW IN SUPPORT**

## I.    INTRODUCTION

When a party places her own conduct squarely at the center of a lawsuit—asserting counterclaims and affirmative defenses that hinge on what she was told, what she relied upon, and what caused her alleged harm—she cannot then withhold the very documents that would test those claims. Yet that is precisely what Defendant Cristi Leeberg d/b/a Practitioners in Motion, PLLC ("Defendant") has done throughout the course of discovery in this case.

Defendant has asserted eight affirmative defenses and five counterclaims against Plaintiff Legacy Medical Consultants, LP ("Legacy"), each resting on two central narratives: first, that Legacy misrepresented the intended use of its human tissue products by indicating they could be applied without sutures; and second, that Legacy, through its representative Rick Logwood, verbally guaranteed that Defendant would not need to pay for products on which Medicare denied reimbursement. According to Defendant, it was Legacy's misconduct—not her own—that caused Medicare to deny her claims for reimbursement, resulting in non-payment, claw backs, and demands for repayment.

Despite the centrality of these issues, Defendant has systematically failed to produce—or has suppressed—documents directly relevant to her own claims and defenses. Legacy now has direct proof of at least two critical documents that Defendant withheld. The first is an email dated January 12, 2023, between Defendant and Rick Logwood, in which Defendant acknowledged she "may eat the cost and still do it" after being told Medicare would not reimburse a particular treatment combination—an admission that fatally undermines her claim that payment to Legacy for products was contingent on reimbursement. The second is a Medicare Appeals Decision dated March 14, 2024, which denied reimbursement for services

1

rendered to a patient and included a letter from the patient's family member alleging that Defendant fraudulently billed Medicare for more than $80,000 in services never rendered—directly negating her allegations that all her Medicare claims were denied because of Legacy's misrepresentations. Legacy obtained both documents only through third-party subpoenas—not from Defendant.

The record before this Court reveals a pattern of dilatory and obstructive conduct. Defendant missed her initial production deadline, produced documents in piecemeal fashion well past the close of discovery, conducted her own collection without counsel oversight using improperly narrowed search terms, failed to collect from her cell phones or search for communications with key individuals, and then certified that her production was complete when it demonstrably was not. Her explanation for the missing Logwood email—that it is "no longer accessible" in any of her electronic inboxes—only deepens the concern that responsive documents have been deleted or otherwise made inaccessible.

Legacy respectfully submits this Motion asking the Court to reopen discovery for the limited purpose of allowing Legacy to depose Defendant regarding her supplemental productions, to compel Defendant to conduct an adequate and supervised document search, and to obtain outstanding third-party productions from Twenty Won Sales and Consulting LLC, one of Defendant's business partners and a sub-distributor of Rick Logwood's for Legacy products. Legacy further requests that the Court impose sanctions under Federal Rule of Civil Procedure 37, including an adverse inference instruction and, in the alternative or in addition, a court-ordered forensic examination of Defendant's electronic devices, given the demonstrable inadequacy of Defendant's search methodology and the strong inference that responsive documents remain unproduced.

II.    **FACTUAL BACKGROUND**

A.    **THE RELEVANCE OF DEFENDANT'S MEDICARE APPEALS DOCUMENTATION AND COMMUNICATIONS WITH RICK LOGWOOD AND NICHOLAS PETRILLO**

Defendant asserted eight affirmative defenses and five counterclaims, asserting that she does not have to pay for any of the skin graft products she ordered from Legacy because she claims that: (1) Legacy, by and through Rick Logwood, indicated to her that Legacy's products were suitable for applying without sutures when in reality they needed to be applied with sutures or staples; and (2) Legacy, by and through Rick Logwood, verbally guaranteed that she would not need to pay on grafts for which Medicare denied reimbursement. *See* ECF Nos. 20 (Affirmative Defenses), 21 (Counterclaims). The discovery requested by Legacy is central to each of these affirmative defenses and counterclaims.

Because Defendant's claim is that Rick Logwood made these representations to her verbally (*see, e.g.*, ECF No. 21, ¶31), any written communications or documents to the contrary would be directly relevant to her affirmative defenses and counterclaims. Moreover, because Defendant's claim rests entirely upon her testimony, documents or communications which may undermine her credibility at trial are directly relevant to her claims and defenses. Defendant also claims that, as a direct and proximate result of Legacy's conduct, Medicare denied Defendant's claims for reimbursement for the products used on her patients. *See, e.g.*, ECF No. 21 (Counterclaims), ¶¶57, 64, 71. Because Defendant's claim is that *Legacy* caused her Medicare denials—as opposed to her own failure to adequately document medical necessity of her claims for payment—any written communications or documents, including Medicare appeals documentation or EOB denials, to the contrary would directly undermine Defendant's causation arguments.

3

Legacy first served discovery requests on July 18, 2025, including, among other things, requests for these exact types of documents: all documents and **communications with any third party relating to Legacy products**, any documents and **communications concerning insurance reimbursements for Legacy products**, including Explanation of Benefits (EOB) denials, and any documents relating to payment for Legacy products, **including any representations that payments were not required until insurance reimbursement**. *See* Plaintiff's Discovery Requests, attached hereto as **Exhibit A**.

Here, Plaintiff has direct proof that Defendant failed to produce (or suppressed) two responsive documents, because Plaintiff received them via a third-party subpoena but not from Defendant.

### 1. Defendant Failed to Produce (or Suppressed) Communications Between Herself and Rick Logwood

First, Defendant failed to produce (or suppressed) an email dated January 12, 2023, between herself and Rick Logwood (attached hereto as **Exhibit B**) wherein Defendant stated, "I may eat the cost and still do it," after Rick Logwood told her that Medicare would not reimburse her if she combined MIST Therapy with a skin substitute or membrane in the same patient visit. This email shows, at least implicitly, that Defendant understood payment to Legacy was *not* contingent upon Medicare reimbursement as she claims. An email like this could reasonably cast doubt, in the eyes of a jury, upon Defendant's claim that she believed she only needed to pay Legacy if Medicare reimbursed her. Without re-opening discovery, Plaintiff is unable to ascertain whether other similar emails exist.

### 2. Defendant Failed to Produce (or Suppressed) a Medicare Appeals Decision Denying Reimbursement for Services Alleged to Have Been Fraudulently Billed by Defendant to the Tune of More than $80,000

Second, Defendant failed to produce (or suppressed) a Medicare Appeals Decision she received on March 14, 2024, denying reimbursement for services issued to a patient (Patient CHG) (attached hereto as **Exhibit C**). Attached to this Appeals Decision was a letter written by Patient CHG's son, JG, claiming that Defendant billed Medicare fraudulently. Ex. C (Medicare Appeals Decisions and Fraud Letter), pp. 17–22. According to the letter, Defendant fraudulently billed Medicare for services never rendered to JG's mother, to include the charging of a Legacy Dual Layer Impax Membrane measured at 9.3 cm x 9.3 cm for over $80,000 when his mother only received a 2 x 2 cm membrane reimbursable at about $4,000. The letter further alleges that Robert Johnson, one of Defendant's friends, employees, and business partners, falsely coded CPT Code 15275 for "skin substitute placement in face, neck, or the eyes." JG's mother did not have a wound in her face, neck, or around her eyes. *Id.* at p.19. Without re-opening discovery, Plaintiff is unable to ascertain whether other allegations, or similar denials, exist.

**B.      PROCEDURAL HISTORY OF DISCOVERY**

Legacy first served discovery requests on July 18, 2025, including, among other things, requests for all documents and communications with any third party relating to Legacy products, any documents and communications concerning insurance reimbursements for Legacy products, including Explanation of Benefits (EOB) denials, and any documents relating to payment for Legacy products, including any representations that payments were not requirement until insurance reimbursement. Ex. A (Discovery Requests), pp.11–12. Defendant missed the deadline. On August 18, 2025, Legacy granted Defendant a three-week extension through September 8, 2025, on the following conditions: (1) Defendant must serve complete, written responses on or before September 8, 2025, and (2) all responsive, non-privileged documents must be produced contemporaneously with Defendant's written responses. *Id.* at pp.2–3.

Defendant responded, "We are agreeable to the conditions set forth below [] and will respond by September 8, 2025." *Id.* at p.1.

On September 8, 2025, Defendant provided a response and produced 137 documents; however, several categories of requested materials were not included. For instance, Legacy asked for all communications with third parties about Legacy's products. Although she agreed to produce documents responsive to this request, she did not produce any communications with Rick Logwood concerning Legacy products that she had in her possession. Similarly, Legacy requested all documents and communications from Medicare regarding reimbursement. Although Defendant furnished several denial notices already appended to her counterclaims, she did not submit additional materials, nor any documentation submitted to Medicare initially to establish medical necessity. These, among six others, constituted material deficiencies Legacy sought to correct in a deficiency letter served November 24, 2025. *See* Deficiency Letter attached hereto as **Exhibit D**, pp.2–4. Defendant did not respond to Legacy's deficiency letter and discovery closed January 9, 2026.

After a meet-and-confer on January 15, 2026, Defendant agreed to provide the missing documents and supposedly did on January 21, 2026. *See* Agreement to Supplement Production, attached hereto as **Exhibit E**, pp.1–2. That supplemental production contained about 1,500 pages. However, to Legacy's surprise, Defendant added to her production two more times: first on February 5, and again on February 19, 2026. *See* Service of Second and Third Supplemental Productions, attached hereto as **Exhibit F**. The second and third supplemental productions she provided amounted to about five hundred pages. This time, they included numerous Medicare overpayment notices, appeal decisions, and other documents concerning reimbursements that Legacy had been requesting since July 2025.

On March 9, 2026, Legacy asked Defendant to confirm that her document production was complete and that she had produced all documents responsive to Legacy's discovery requests. *See* Final Deficiency Notice, attached hereto as **Exhibit G**, pp.12–13. Defendant confirmed that she had produced all responsive documents within her possession. *Id.* at p.11. On March 11, 2026, Legacy notified Defendant that an email produced by Apex Medical, containing communications between Defendant and Rick Logwood relevant to Legacy's discovery requests, was not provided by Defendant. *Id.* at pp.10–11. Defendant's response for why the email was never produced was that "the document in question is no longer accessible within her [email] inbox or any other electronic inbox she possesses access to." *Id.* at p.6.

The response revealed other substantial deficiencies. For instance, none of the Defendant's cell phones were collected or searched, and third parties known to have had substantial communications with the Defendant regarding Legacy's products—such as Nicholas Petrillo of Twenty Won Sales and Consulting LLC—were likewise neither identified nor subjected to search. *Id.* at pp.6–7. Accordingly, Legacy sent Defendant another deficiency notice. *Id.* at pp.4–6. On March 20, Defendant sought an extension of two weeks to comply with the request. *Id.* at p.1. As of today, Defendant has not provided the requested collections or productions.

### C.    OUTSTANDING THIRD-PARTY DISCOVERY FROM TWENTY WON SALES AND CONSULTING LLC

On December 23, 2025, Plaintiff filed a Notice of Issuance of Subpoena for Production of Documents, providing Defendant notice that it intended to serve a subpoena for the production of documents and other information upon Twenty Won Sales and Consulting LLC c/o Nicholas T. Petrillo, CEO and Registered Agent ("Twenty Won"). *See* ECF No. 42. After multiple failed service attempts, Twenty Won agreed to accept service on January 30, 2026. *See* Emails with

7

Twenty Won's Counsel, attached hereto as **Exhibit H**, p.1. Twenty Won is relevant to this litigation because Nicholas Petrillo was Defendant's business partner (*See* Leeberg Dep., attached hereto as **Exhibit I**, 19:4–25; 22:7–9), friend (*id.* at 22:10–15) and was actively involved with Defendant's purchase of Legacy products (*id.* at 57:5–18; 89:8–23; 114:14–23).

Plaintiff timely filed its notice to serve Twenty Won during discovery, but Twenty Won's response to the subpoena has been delayed by changes of counsel since it was served. *See* Ex. H, pp.1–6. After extensive negotiations with Twenty Won's successive counsel, Twenty Won agreed to respond to the subpoena. *Id.* at p.1. Legacy requests that discovery be reopened to obtain Twenty Won's production, since Defendant has not provided any communications with Nicholas Petrillo in response to Legacy's requests.

## III.    ARGUMENT

### A.    GOOD CAUSE EXISTS TO REOPEN DISCOVERY

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enter., L.L.C. v. South Trust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003). Here, good cause exists because Defendant's dilatory conduct has prevented Legacy from obtaining the discovery to which it is entitled.

#### 1.    Defendant Produces Tranches of Documents Past the Discovery Deadline

The seasonably late disclosure of important records, repeatedly and well past the Court's discovery deadline, may serve as the basis for good cause to reopen discovery. *See Fuqua v. Horizon/CMS Healthcare Corp.*, 199 F.R.D. 200, 201 n.1 (N.D. Tex. 2000). Legacy first served discovery requests on July 18, 2025, including requests for all documents and communications

with any third party relating to Legacy products, any documents and communications concerning insurance reimbursements for Legacy products, and any documents relating to payment for Legacy products. Ex. A (Discovery Requests), pp.6–7. Defendant did not produce responsive documents, prompting Legacy to issue a deficiency letter on November 24, 2025. Ex. D (Deficiency Letter), pp.2–4. Having not responded to Legacy's deficiency letter, discovery closed January 9, 2026, prompting Legacy to meet-and-confer with Defendant to obtain the documents Legacy requested. *See* Ex. E (Agreement to Supplement Production), p.1. After that point, Defendant produced tranches of documents past the discovery deadline that Legacy should have received back on September 8, 2025. *See* Ex. F (Second and Third Supplemental Productions).

That Defendant failed to produce these documents before the close of discovery and then continued to produce documents repeatedly and well past the Court's discovery deadline, provides independent support for Legacy's request to reopen discovery based on those supplemental productions. *See Fuqua v. Horizon/CMS Healthcare Corp.*, 199 F.R.D. 200, 201 n.1 (N.D. Tex. 2000). In *Fuqua*, the Court reopened discovery because, five days before the discovery deadline, the defendant produced an operating budget it had previously maintained defendant never had. *Id.* In response, the Court reopened discovery related to the budget. *Id.* Here, Defendant waited months to produce documents *she knew she had* despite multiple requests. Legacy has not had the opportunity to question Defendant regarding the reimbursement documents she produced in February. These documents are crucial because Defendant has filed counterclaims against Legacy claiming that Legacy caused her denials.

9

Accordingly, Legacy respectfully requests that discovery be reopened for the limited purpose of allowing Legacy to depose Ms. Leeberg, for no longer than three (3) hours, to question her regarding the supplemental productions.

**2.    There Exist Substantial Deficiencies Which Have Recently Come to Light**

On March 9, 2026, Legacy asked Defendant to confirm that her document production was complete and that she had produced all documents responsive to Legacy's discovery requests. Ex. G (Final Deficiency Notice), pp.12–13. Defendant confirmed that she had produced all responsive documents within her possession, but this was not true. *Id.* at p.11. Defendant failed to produce (or suppressed) two critical documents which undermine her counterclaims and affirmative defenses. *See* Ex. B (Email dated January 12, 2023, between Defendant and Rick Logwood); *see also* Ex. C (Medicare Appeals Decision and Fraud Letter dated March 14, 2024). Defendant's explanation for not producing the email was that "the document in question is no longer accessible within her [email] inbox or any other electronic inbox she possesses access to." Ex. G (Final Deficiency Notice), p.6. The response revealed other substantial deficiencies. For instance, none of the Defendant's cell phones were collected or searched, and third parties known to have had substantial communications with the Defendant regarding Legacy's products—such as Nicholas Petrillo of Twenty Won Sales and Consulting LLC—were likewise neither identified nor subjected to search. *Id.* at pp.6–7. Accordingly, Legacy sent Defendant another deficiency notice. *Id.* at pp.4–6. On March 20, Defendant sought an extension of two weeks to comply with the request. *Id.* at p.1. As of today, Defendant has not provided the requested collections or productions.

The deficiencies discovered after Defendant's March 16 response warrant reopening discovery to compel Defendant to engage in additional searches and discovery efforts as set forth

in Legacy's deficiency notice, or to order the forensic examination of Defendant's electronic devices. "To make this showing of a specific or material deficiency in the other party's production to require the responding party to engage in additional searches or discovery efforts[,] the requesting party should make a showing, including through the documents that have been produced, that allows the Court to make a reasonable deduction that other documents may exist or did exist and have been destroyed." *Baker v. Walters*, 652 F.Supp. 768, 786 (N.D. Tex. 2023).

On March 9, 2026, Defendant affirmed she had "produced all responsive documents within her possession, custody or control," which evidently was not true. The demonstrative failure to produce key documents known to once be in Defendant's possession allows the Court to reasonably deduce that other documents may exist or have been destroyed. At a minimum, Defendant failed to adequately retain records after litigation commenced. Accordingly, Legacy respectfully requests that discovery be reopened for the limited purpose of compelling Defendant to engage in further discovery efforts, or, for the reasons stated further herein (*see infra* B.2), to order the forensic examination of Defendant's electronic devices at her sole expense.

### 3.      Defendant's Search Methodology Was Fundamentally Inadequate

"In responding to Rule 34 discovery requests, a reasonable inquiry must be made[.]" *Baker*, 652 F.Supp. at 786 (internal quotations omitted); *see also* Fed. R. Civ. P. 26(g)(1). Upon "a showing that the party has abdicated its responsibility" to make "a reasonable inquiry and exercise[] due diligence," the court may "dictate how a party should search for relevant information." *Id*. Here, Defendant has abdicated her responsibility to inquire into the existence and location of responsive documents as well as to preserve discovery. According to Defendant's March 13-16, 2026 correspondence (Ex. G, Final Deficiency Notice, pp.6–7), Defendant, as the client, conducted her own collection without counsel's assistance; omitted searches for correspondence with key individuals; ran improperly narrow search criteria upon her database

11

set; failed to collect from all email accounts in Defendant's possession, custody, and control; failed to collect from her cell phone; and failed to identify key individuals likely to have discoverable information in her initial disclosures. According to the correspondence, Defendant conducted her own document search with counsel only reviewing materials "compiled [by the client] to ascertain responsiveness." Ex. G (Final Deficiency Letter), p.7. The fact that records were revealed to have not been disclosed by Defendant when they should have been, raises an adverse inference and conclusively shows the inadequacy of Defendant's production. The failure to comply with her obligations to inquire into responsive documents also provides an independent reason upon which to reopen discovery. Accordingly, for this reason as well, Legacy respectfully requests the Court reopen discovery and compel Defendant to rerun her collection in accordance with Legacy's proposed order, since she had not re-run her production since Legacy sent its last deficiency notice (*see* Ex. G) or order a forensic examination be conducted of Defendant's electronic devices at her sole expense.

### B.  SANCTIONS ARE WARRANTED UNDER RULE 37

Under Rule 37(e), where electronically stored information that should have been preserved is lost because a party failed to take reasonable steps to preserve it, the Court may, upon a finding of prejudice, order measures no greater than necessary to cure the prejudice, or upon a finding of intent to deprive, may presume that the lost information was unfavorable to the party, instruct the jury that it may or must presume the information was unfavorable, or dismiss the action or enter default judgment. Fed. R. Civ. P. 37(e). Here, the record supports both an adverse inference and a court-ordered forensic examination.

#### 1.  Adverse Inference Instruction

An adverse inference instruction is appropriate where there is evidence of bad faith. *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp. 598, 614 (S.D. Tex. 2010). Here,

Defendant's pattern of noncompliance is not the product of mere oversight. Defendant failed to produce (or suppressed) the Medicare fraud letter—a document that directly undermines her counterclaims by establishing an independent basis for the Medicare scrutiny she attributes to Legacy. The selective nature of this omission, combined with Defendant's facially inadequate search terms that would have never captured Medicare-related documents, supports a finding that Defendant acted with the intent to deprive Legacy of relevant evidence. At a minimum, Defendant failed to take reasonable steps to identify and preserve responsive documents, and Legacy has been prejudiced as a result. Legacy has been unable to use these documents during Defendant's deposition or in its expert's analysis. Under these circumstances, Legacy respectfully requests that the Court instruct the jury that it may presume the documents Defendant failed to produce would have been unfavorable to Defendant's claims and defenses.

### 2.    Court-Ordered Forensic Examination

In the alternative, or in addition, Legacy requests that the Court order an independent forensic examination of Defendant's computer, email accounts, and mobile phone. Defendant has admitted that she—not her attorneys—conducted the document searches, and that the search was limited to a handful of names that excluded the core subject matter of this dispute. Defendant's counsel has further represented that at least one responsive document is "no longer accessible" in Defendant's email accounts, yet that same document was produced by a third party, confirming it once existed in Defendant's possession. These facts raise a reasonable inference that responsive documents exist on Defendant's devices but were never identified, or worse, were deleted or otherwise made inaccessible. Courts will order forensic examinations of electronic devices where, as here, the responding party's search methodology is shown to be inadequate and there is reason to believe that responsive documents have not been produced. *See, e.g.*, *Am. Reg. of Radiologic Technologists v. Bennett*, No. SA-09-CA-767-XR, 2010 WL

13

11603028, *2 (W.D. Tex. Sept. 8, 2010); *Realpage, Inc. v. Enter, Risk Control, LLC*, No. 4:16-CV-00737, 2017 WL 1180420, *1 (E.D. Tex. Mar. 30, 2017).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff asks that this Court grant its Motion and approve sanctions in accordance with its proposed Order.

Dated: April 3, 2025.

Respectfully submitted,

**BLANK ROME LLP**


*/s/ Megan A. Altobelli*
Gregory J. Moore (*NDTX adm'n pending*)
Texas Bar No. 24055999
Audrey F. Momanaee
Texas Bar No. 24055993
Fed Bar No. 724132
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 632-8613
Gregory.Moore@BlankRome.com
Audrey.Momanaee@BlankRome.com

-and-

Megan A. Altobelli (local counsel)
Texas Bar No. 24107116
200 Crescent Court, Suite 1000
Dallas, Texas 75201
(972) 850-1467 M. Altobelli Direct
Megan.Altobelli@BlankRome.com

**ATTORNEYS FOR PLAINTIFF**

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been served on all parties and counsel of record through the Court's CM/ECF filing system on this 3rd day of April, 2026, in accordance with the Fed. R. Civ. P. 5(b)(2).

*/s/ Megan A. Altobelli*
Megan A. Altobelli

15

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff, Megan Altobelli, and counsel for Defendant, Alec Shelowitz, had a telephonic conference on April 2, 2026, to conference regarding the Motion. Counsel for Defendant indicated that Defendant opposes the Motion. The parties were unable to resolve the Motion because Defendant believes its collections and disclosures were done properly and are complete; Plaintiff disagrees. To the extent that Defendant was willing to succumb to a forensic examination of her electronic devices, Defendant's position is that it should come at Plaintiff's expense; Plaintiff also disagrees.

*/s/ Megan A. Altobelli*
Megan A. Altobelli
