UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> CRISTI LEEBERG d/b/a PRACTITIONERS IN MOTION, PLLC, <br><br> Defendant. <br><br> and <br><br> CRISTI LEEBERG d/b/a PRACTITIONERS IN MOTION, PLLC, <br><br> Counter-Plaintiff, <br><br> v. <br><br> LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC, <br><br> Counter-Defendant. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § <br> No. 4:25-cv-00319-P |

**DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND FOR SANCTIONS**

## TABLE OF CONTENTS

I.    INTRODUCTION…..………………………………………………………………1

II.   PROCEDURAL HISTORY ………..…………………………………………..3

      A.    Leeberg Diligently Met Her Discovery Obligations, Including Through
            Supplemental Productions… …………………………………………..3

      B.    Legacy Delayed Issuing Its Third-Party Subpoena To Twenty Won Sales
            And Consulting, LLC…………………………………………………….8

III.  MEMORANDUM OF LAW………………………………………………….9

      A.    Legal Standard………………………………………………………9

      B.    Legacy Fails to Justify Its Request to Reopen Discovery……………….11

      C.    Legacy Fails to Establish All Four (4) Predicate Elements Under Rule
            37(e) To Be Entitled to Sanctions…………………………………..13

      D.    Leeberg's Supplemental Discovery Productions Do Not Warrant
            Reopening Discovery………………………………………………….13

      E.    Legacy Is Not Entitled to An Adverse Instruction……………………….17

      F.    Legacy Refused To Subsidize Costs of Forensic Examiner…………….18

IV.   CONCLUSION……………………………………………………………….19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BHI Energy I Power Services, LLC v. KVP Holdings, LLC*,
  730 F.Supp.3d 308 (N.D. Tex. 2024)…………………………………………...10, 13, 15, 16

*Castro v. Wal-Mart Real Estate Bus. Trust*,
  645 F.Supp. 3d 638 (W.D. Tex. 2022)…………………………………………………..10

*Cleary v. Am. Airlines, Inc.*,
  No. 4:21-cv-184-O, 2022 WL 5320126 (N.D. Tex. 2022)………………………………10

*Coastal Bridge Co., LLC v. Heatec, Inc.*,
  833 Fed.Appx. 565 (5th Cir. 2020)………..…………………………………………10, 13

*DR Distributors, LLC v. 21 Century Smoking, Inc.*,
  513 F.Supp.3d 839 (N.D. Ill. 2021)…………...…………………………………………….10

*Fuqua v. Horizon/CMS Healthcare Corp.*
  199 F.R.D. 200…………………………………………………………………...14, 15, 16

*Richard v. Inland Dredging Co., LLC*,
  6:15-0654, 2016 WL 5477750 (W.D. La. Sept, 29, 2016)………………………………10

*Russell v. Univ. of Tex. Of Permian Basin*,
  234 F.App'x 195 (5th Cir. 2007)……………………………………………………11, 17

**Rules**

Fed. R. Civ. P. 6(a)(1)(C)…………………………………………………………………..3

Fed. R. Civ. P. 26(e)(1)(A)...................................................................................................6

Federal Rule of Civil Procedure 37(e)……………………………2, 3, 9, 10, 11, 13, 15, 16, 19

Rule 26(a)…………………………………………………………………………………7

Rule 37(e)(1)………………………………………………………………………………10, 13

Rule 37(e)(2)……………………………………………………………………………..10, 11, 13

## <u>DEFENDANT'S BRIEF IN RESPONSE TO PLAINTIFF'S MOTION TO REOPEN DISCOVERY AND FOR SANCTIONS</u>

Defendant/Counter-Plaintiff, CRISTI LEEBERG D/B/A PRACTITIONERS IN MOTION, PLLC ("Leeberg"), by and through her undersigned counsel and pursuant to the Northern District of Texas Local Rules 7.1 and 7.2 and ECF 67, hereby serves her Brief in Response to Plaintiff, LEGACY MEDICAL CONSULTANTS, LP's ("Legacy") Motion to Reopen Discovery and For Sanctions [ECF 65] (the "Motion") and states as follows:

### I.      INTRODUCTION

In a misguided effort to delude this Court, and the jury, into concluding that Leeberg engaged in any bad faith conduct throughout discovery, Legacy brings its woefully deficient Motion. In an action predicated heavily on verbal representations made by Legacy's authorized agent(s) to Leeberg, Legacy belatedly seeks to engage in a pure fishing expedition by reopening discovery to try and locate the proverbial needle in the haystack. There is nothing in Legacy's Motion which justifies its request to reopen discovery. If anything, Legacy's Motion reveals its dilatory discovery efforts and the regret it now experiences for failing to do more.

Legacy's Motion requests for this Court reopen discovery in the absence of good cause so that it may re-depose Leeberg upon any supplemental materials which it has not identified exist within her possession, custody or control and to compel Leeberg to subsidize the services of a forensic examiner to review her databases for supplemental documents. Legacy also requests an award of both monetary sanctions and an adverse inference issued to the jury—despite failing to establish Leeberg engaged in any bad faith conduct or intentional destruction of responsive materials. None of Legacy's prayers for relief are justified. Indeed, Legacy's Motion is predicated upon several demonstrably false representations concerning Leeberg's document production.

Additionally, the documents for which Legacy cries foul, it readily secured from third parties such that it can utilize the same in support of its claims and defenses at trial.

There is no evidence presented from Legacy's which substantiates any of its contentions that Leeberg failed to produce or suppressed any adverse evidence. The absence of the same weighs heavily against awarding Legacy with any relief and/or sanctions under Fed. R. Civ. P. 37(e). Rather, the record evidence reveals that Leeberg consistently performed her material discovery obligations in good faith. When presented with any concern(s) by Legacy that potentially responsive documents were outstanding, Leeberg diligently re-searched her records to compile and produce them to Legacy. Leeberg has never refused to produce responsive documents to Legacy, to the extent the same were within her possession and were not otherwise protected from disclosure under applicable law.

At all times, Leeberg acted in good faith to identify and produce all documents which she ascertained were responsive to Legacy's generally vague and overbroad document requests. Any delay in Leeberg's document production is primarily attributable to Legacy's inarticulate requests—not Leeberg's contumacious effort to withhold and/or conceal responsive materials. At no point did the parties enter into an ESI order which included search terms for the parties, and particularly Leeberg, to utilize in their document compilation efforts. In the absence of search terms or narrowly defined document requests, Leeberg produced those documents within her possession, custody or control which she deemed responsive to Legacy's requests.

In short, Legacy's Motion inaccurately depicts Leeberg's participation in the discovery process in a misguided effort to convince this Court that its belated discovery efforts are anything but. Herein, Leeberg demonstrates that documents which Legacy claims were not produced—it used as exhibits during her deposition. Leeberg demonstrates that the documents which Legacy

secured from third parties were not in her possession, custody or control at all material times. Further, Leeberg demonstrates that she dutifully supplemented her document production upon securing and/or identifying the same in accordance with her obligations under Federal Rules of Civil Procedure.

Finally, Leeberg demonstrates that Legacy's request for sanctions is wholly unsupported by evidence of bad faith conduct or actual prejudice. Because Legacy ultimately secured the two (2) documents for which it cries foul, it cannot argue, pursuant to Rule 37(e) that such documents could not be replaced through additional discovery. In the absence of any evidence that Leeberg acted in bad faith or with an intent to deprive Legacy of relevant evidence, Legacy's request for sanctions and/or an adverse instruction to the jury must be denied.

## II.    PROCEDURAL HISTORY

### A.    Leeberg Diligently Met Her Discovery Obligations, Including Through Supplemental Productions.

On July 18, 2025, Legacy served Leeberg with its first and only set of discovery requests. Pursuant to Rule 34(b)(2)(A), Leeberg's deadline to respond—unless stipulated by the parties—was thirty (30) days later on August 18, 2025.[1] Prior to the deadline's expiration and in accordance with Rule 34, Leeberg timely sought Legacy's consent to a three-week extension of time to furnish her discovery responses and responsive documents. *See* [ECF 66, at App. 003]. Legacy *consented* to Leeberg's requested extension, resetting Leeberg's response deadline to September 8, 2025. *Id.* at App. 002. Thus, Legacy's contention that "[Leeberg] missed the deadline" is refuted by its own Appendix. [ECF 65, at 5]. On September 8, 2025, Leeberg served Legacy with her responses and objections and produced responsive documents in accordance with the parties' stipulation. Legacy

---

[1] The thirty (30) day deadline fell on Sunday, August 17, 2025. Pursuant to Fed. R. Civ. P. 6(a)(1)(C), Leeberg's response deadline therefore ran until Monday, August 18, 2025.

never challenged any of Leeberg's objections to the scope and/or nature of its discovery requests. Further, Legacy never filed a Motion to Compel, likely because Leeberg always agreed to address Legacy's discovery concerns in good faith when raised.

Legacy's Motion erroneously contends that Leeberg's initial document production "did not [include] any communications with Rick Logwood ("Logwood") concerning Legacy's products that she had in her possession." [ECF 65, at 6]. This contention is demonstrably false. In response to Legacy's vague and overbroad request for any documents and communications "involving any third parties relating to Legacy products" (RFP #2) Leeberg responded:

> Defendant objects to this Request on the grounds that it is overbroad and unduly burdensome to the extent that it seeks identification of "all documents and communications" relating to "any third party" without reasonable limitation as to time, subject matter or scope. If taken literally, this Request would require the production of a litany of irrelevant information not narrowly tailored to the claims and defense at issue in this action. Defendant further objects on the grounds that this Request is vague and ambiguous. Subject to the foregoing, Defendant will produce responsive documents within her possession, custody and control responsive to this request.

A true and correct copy of Leeberg's Responses and Objections to Legacy's First Request for Production of Documents is attached hereto as **Exhibit A**. (*See* Leeberg App. at 0004).

Notwithstanding Leeberg's objection and contrary to Legacy's grossly inaccurate representation, Leeberg did produce several e-mail communications she exchanged with Mr. Logwood within her initial disclosures on April 25, 2025 and her initial document production on September 8, 2025. As proof, at her deposition on December 5, 2025, Legacy introduced as exhibits (#15, #16, & #17) several emails which Leeberg exchanged with Nick Petrillo and Logwood—establishing that Leeberg furnished Legacy with responsive communications relating to its products. True and correct copies of Exhibits #15, #16, and #17 used by Legacy at Leeberg's deposition are attached hereto as **Exhibit B** (*See* Leeberg App. at 15-17). In addition to those

4

documents, Leeberg produced several more communications she exchanged with Logwood and Petrillo within her initial document production. True and correct copies of a sample of responsive emails Leeberg produced to Legacy in response to its First Request for Production are attached hereto as **Exhibit C**. (*See* Leeberg App. at 18-49). Legacy's demonstrably false depiction of Leeberg's document production should weigh heavily against granting it any relief under its Motion.

Next, Legacy contends that Leeberg failed to produce or suppressed a certain Medicare Appeal Decision, notwithstanding the fact that she included several Decisions as Exhibits to her Counterclaim [ECF 21-5] and that Medicare's "Explanation of Decision" in all such Decisions were substantially identical. These Decisions are furnished to providers, like Leeberg, in the mail in hardcopy to preserve the integrity of the subject patient's private medical records. Upon receipt, Leeberg may have inadvertently failed to convert this particular Decision into electronic format. It is therefore plausible that the hardcopy record was lost during the intervening months between Leeberg's receipt and the initiation of this action. In March 2024, Leeberg had no reason to know that such Decision would ever become relevant in future litigation with Legacy which would not be initiated until February 2025. Thus, Leeberg's potentially negligent document preservation procedures in or around March 2024 likely contributed to such Decision's absence from her document production. Under no circumstances has Leeberg deliberately withheld, suppressed, or destroyed any responsive documents.

In response to Legacy's request for Medicare appeal related documents (RFP #10), Leeberg responded:

> Defendant objects to this request on the grounds that it is vague, overbroad and unduly burdensome to the extent it seeks identification of "all documents" relating to any "appeals" without any particularity or scope. Plaintiff fails to define the term "appeal" such that Defendant cannot ascertain to whom such "appeals" were

5

tendered, if any. Nonetheless, Defendant interprets this request to concern requests for review of prior decision[s] denying insurance coverage and/or Medicare coverage for services Defendant performed upon patients utilizing the Plaintiff's products. Subject to the foregoing, Defendant will produce documents with her possession, custody, or control responsive to this request.

*See* **Ex. A.**, at App. 0007-0008.

Here again, Legacy never challenged Leeberg's objection. Nonetheless, Legacy complains that Leeberg failed to produce unidentified "additional materials" or "documentation submitted to Medicare initially to establish medical necessity." [ECF 65, at 6]. Legacy's contention is unavailing for two reasons: (1) Legacy fails to articulate how Leeberg's purported withholding or suppression of these unidentified "additional materials" prejudices its ability to support its claims and defenses; and (ii) documents supporting medical necessity are largely protected from disclosure pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") particularly given that the parties never entered into an Agreed Protective Order.[2]

On or about January 21, 2026, Leeberg served Legacy with a supplemental production of responsive documents enclosing several additional Medicare Appeal Decisions. Such documents were not within Leeberg's possession, custody or control at the time of responding to Plaintiff's initial document requests on September 8, 2025—but such documents were ultimately secured from third parties and produced to Legacy. *See* Fed. R. Civ. P. 34(a)(1). As previously stated, Medicare's explanation for denying Leeberg's compensation claims within those decisions were largely similar to its "Explanation" in the the Decisions appended to her Counterclaim [ECF 21-1-5]. By supplementing her production after the close of fact discovery, Leeberg satisfied her on-

---

[2] On December 29, 2025, this Court entered an Order [ECF 43] denying the parties Joint Motion for Protective Order [ECF 40]. Therein, the Court advised that the parties "may agree to any confidentiality or discovery-related contract among themselves without devoting scarce judicial resources to the matter." [ECF 43, at 2]. Ultimately, the parties never entered into such an Order.

6

going discovery obligations. *See* Fed. R. Civ. P. 26(e)(1)(A) ("A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—*must supplement* or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response was incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing") (Emphasis added).

Additionally, Legacy argues that after Leeberg, by and through counsel, represented on March 9, 2026, that all responsive documents in her possession, custody or control were produced, that it identified additional discrepancies with Leeberg's document production. Legacy contends that Leeberg's response *revealed* that her cell phone(s) were not searched. [ECF 65, at 7]. The notion that Legacy just learned that Leeberg's search for responsive documents excluded reviewing her cell phone is also demonstrably false. During her deposition on December 5, 2025, Leeberg was asked whether she searched her cell phones and testified:

> BY MR. ESPOSITO:
> **Q**: So I guess, do you have – when it comes to phones, do you maintain – do you have a personal cellphone you use, and a business one separate? Or they are joint?
> **A**: Joint.
> **Q**: So you have one cellphone?
> **A**: Mm-hmm.
> **Q**: And you don't recall whether, or not, you searched?
> **A**: I really don't. I don't keep things in my phone.
> **Q**: Do the items automatically delete over time?
> **A**: Yes.
> **Q**: How long do you keep the records for? Do you know?
> **A**: Right now I think its set at three months.

True and correct copies of excerpts from Leeberg's Deposition on December 5, 2025, are attached hereto as **Exhibit D**. (*See* Leeberg App. at 0051).

As such, Legacy was acutely aware as of December 5, 2025, that Leeberg had not searched her cellphone for responsive documents and yet it waited until filing its instant Motion to raise any

7

issue.[3] Leeberg also testified that she did not exchange text messages with Logwood. (*See* **Ex. D**., at App. 0053).  Legacy's delay in bringing this concern to Leeberg and/or the Court's attention should not be ignored. At all material times, Leeberg endeavored to supplement her document production and address Legacy's Deficiency Letter(s) [ECF 66, at App. 62-64] and any concerns raised during the parties meet and confer conferences. Leeberg categorically rejects Legacy's assertion that she has destroyed or otherwise deliberately failed to produce any documents which may negatively impact her claims and defenses.

Finally, on March 18, 2026, Legacy served Leeberg, for the first time, with a laundry list of search terms and e-mail accounts with which to search for additional responsive documents. [ECF 66, at App. 74-78].  Several of Legacy's proposed search terms, including but not limited to: (i) unpaid; (ii) invoice; (iii) ulcer; (iv) reimbursement; (v) denial; (vi) wound; and (vii) appeal, among others were too vague to conduct targeted searches for responsive documents within Leeberg's databases. Leeberg still endeavored to re-search her records using all of Legacy's search terms to identify additional responsive documents and such efforts remain ongoing. Critically, Legacy never included search terms with its discovery requests or otherwise entered into an ESI order with Leeberg which included any search terms. Legacy's eleventh hour demands for Leeberg to hunt for additional responsive documents pursuant to such search terms should be rejected.

        **B.**      **Legacy Delayed Issuing its Third-Party Subpoena to Twenty Won Sales and Consulting, LLC.**

In further support of reopening discovery, Legacy represents that its third-party subpoena issued to Twenty Won Sales and Consulting, LLC ("Twenty Won") on December 23, 2025, remains outstanding due to "changes of counsel." [ECF 65, at 7-8]. Legacy also argues, without

---

[3] Legacy's November 24, 2025, Deficiency Letter was also silent concerning any text message communications she exchanged with any third parties.

any basis, that "Defendant has not produced any communications with Nicholas Petrillo in response to Legacy's request." [ECF 65, at 8]. Legacy's contention here too is demonstrably false as demonstrated above. Indeed, Legacy furnished Leeberg with e-mails she exchanged with Nick Petrillo of Twenty Won at her deposition, which documents Legacy only could have received from Leeberg, particularly in the absence of any document production by Twenty Won. *See* **Ex. C**. Legacy's inaccurate representation that Leeberg failed to produce responsive documents relating to Nick Petrillo should not serve as a basis to reopen discovery. Further, Legacy chose to wait until December 23, 2025 (a mere two weeks before the close of fact discovery), to serve its subpoena, despite receiving email communications between Leeberg and Mr. Petrillo of Twenty Won within Leeberg initial disclosure document production on April 25, 2025, and through Leeberg's document production on September 8, 2025. Legacy lack of diligence in pursuing third-party discovery does not justify reopening discovery.

### III. MEMORANDUM OF LAW

#### A.      Legal Standard.

The purported loss of electronically stored information ("ESI") is governed by Federal Rule of Civil Procedure 37(e), which provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, *and it cannot be restored or replaced through additional discovery*, the court:
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon a finding that a party acted with intent to deprive another party of the information's use in the litigation may:
> > (A) presume that the lost information was unfavorable to the party;
> > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e) (Emphasis added); *BHI Energy I Power Services, LLC v. KVP Holdings, LLC*, 730 F.Supp.3d 308, 319 (N.D. Tex. 2024).

"To apply Rule 37(e) sanctions, a court must determine that the following four predicate elements exist: (i) there is ESI that should have been preserved; (ii) that ESI has been lost; (3) the ESI was lost because of a party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced" through additional discovery. *BHI Energy I Power Services, LLC*, 730 F.Supp.3d at 319 (quoting *Cleary v. Am. Airlines, Inc.*, No. 4:21-cv-184-O, 2022 WL 5320126, at *7 (N.D. Tex. 2022). If these four predicate elements exist, the Court then turns to the matter of possible remedies under Rules 37(e)(1) or 37(e)(2), which "have different requirements before sanctions can be imposed and can lead to different sanctions. *Id.* (quoting *Richard v. Inland Dredging Co., LLC*, 6:15-0654, 2016 WL 5477750, at *3 (W.D. La. Sept, 29, 2016).

When read together, Rule 37(e) either (a) "allows courts under Rule 37(e)(2), "to impose certain severe sanctions for the intentional failure of a party to preserve related ESI, but only after a finding that the party 'acted with intent to deprive another party of the information's use in the litigation,'" and (b) "'[i]f the court does not find that the spoliating party acted with an intent to deprive, but determines that the loss of ESI prejudiced another party,' allows courts, under Rule 37(e)(1), to impose lesser sanctions in the form of 'measures no greater than necessary to cure the prejudice.'" *Id.* (quoting *Castro v. Wal-Mart Real Estate Bus. Trust*, 645 F.Supp. 3d 638, 646 (W.D. Tex. 2022). "Prejudice under Rule 37(e) means that a party's ability to obtain the evidence necessary has been thwarted." *Id.* (quoting *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F.Supp.3d 839 958 (N.D. Ill. 2021). The Fifth Circuit has explained that "[a] party suffers prejudice where it cannot present 'evidence essential to its underlying claim.'" *Coastal Bridge Co., LLC v. Heatec, Inc.*, 833 F.Appx. 565, 575 (5th Cir. 2020).

10

"Under Rule 37(e)(2), 'before a Court can impose the sanction of an adverse presumption, an adverse instruction to the jury, or default judgment, it must find that the party that caused the loss 'acted with intent to deprive another party of the information's use in the litigation'—and a finding of negligence or gross negligence will not suffice to justify 'the giving of an adverse-inference instruction.'" *Id.* (quoting *Richards*, 2016 WL 5477750, at *4). The Fifth Circuit has further held that "[b]ad faith, in the context of spoilation, generally means destruction for the purpose of hiding adverse evidence," and that "[m]ere negligence is not enough to warrant an instruction on spoilation." *Id.* (quoting *Russell v. Univ. of Tex. Of Permian Basin*, 234 F.App'x 195, 208 (5th Cir. 2007).

### B.    Legacy Fails to Justify Its Request to Reopen Discovery.

Legacy's request to reopen discovery is primarily predicated upon two documents which it secured from third parties. The first document is an innocuous chain of e-mails between Leeberg and Logwood dated January 12, 2023, wherein Leeberg suggests that she "may eat the cost and still do it" with respect to billing Medicare for certain wound care services she provided to an unidentified patient. [ECF 66, at App. 034]. There is no evidence in the record that Leeberg ever submitted any compensation claims to Medicare in this manner or in a manner inconsistent with Logwood's (and thereby Legacy's) [4] directives. Legacy tries to argue that Leeberg's email implicitly acknowledges that she understood "payment to Legacy was *not* contingent upon Medicare reimbursement as she claims." [ECF 65, at 4]. However, that Leeberg *considered* "eat[ing]" some undisclosed cost for submitting her billing request in a manner inconsistent with Logwood's directives does not establish Leeberg's implicit understanding that her payment

---

[4] Leeberg maintains that Logwood possessed apparent authority to bind Legacy at all material times.

obligations to Legacy were not contingent on reimbursement. Legacy fails to connect the dots of in support of its meritless argument. Rather, what this email reveals, at most, is that Leeberg *considered* disregarding Logwood's directives in connection with billing Medicare, not that she ever did so. There is also nothing in this email chain expressly refers to Legacy or its products. While Legacy portrays this email as some smoking gun, it is frankly anything but.

Second, Legacy claims that Leeberg failed to produce a Medicare Appeal Decision dated March 14, 2024, which allegedly enclosed a letter from the patient's relative complaining about one of Leeberg's employees—Robert Johnson. [ECF 65., at 5]. That letter, however, is not mentioned whatsoever in the Medicare Appeal Decision casting substantial doubt that it was even considered by Medicare in reaching its determination. [ECF 66., at App. 39-59]. Further, that letter was not directed towards Leeberg or her practice (Practitioners in Motion, PLLC) such that there is no basis to assume that the letter was ever received by Leeberg or within her possession, custody or control at any material time. There is also nothing in the Appeals Decision which suggests that the letter was attached or appended thereto. Thus, even if Leeberg possessed this Medicare Appeals Decision, it cannot be said that she also possessed the letter for which Legacy cries foul.

Legacy argues that reopening discovery is necessary so that it can "ascertain whether other allegations, or similar denials, exist." [ECF 65, at 5]. In reality, Legacy is endeavoring to engage in a pure fishing expedition. During Leeberg's deposition, she testified that Robert Johnson was her employee since 2020. *See* **Ex. D.**, at App. 0052. Despite being aware of Mr. Johnson's involvement, Legacy never requested his deposition or otherwise served him with a subpoena for documents. Legacy's lack of diligence is the fault of its own making. Accordingly, Legacy fails to demonstrate good cause exists for reopening discovery.

C.     **Legacy Fails to Establish All Four (4) Predicate Elements Under Rule 37(e) To Be Entitled to Sanctions.**

Fed. R. Civ. P. 37(e) is inapplicable because the ESI at issue was obtained through Legacy's third-party discovery efforts. Fed. R. Civ. P. 37(e) authorizes the Court to grant an affected party relief where the ESI "cannot be restored or replaced through additional discovery." Here, Legacy acquired the two documents from third parties such that it cannot argue prejudice or establish Fed. R. Civ. P. 37(e)'s applicability as to Leeberg's failure to produce the same. Even if Rule 37(e) does apply, Legacy does establish that Leeberg knew the ESI at issue should have been preserved, was lost, that Leeberg failed to take reasonable steps to preserve it, or that the ESI could not be restored or replaced through additional discovery. Legacy therefore possesses no basis to claim "prejudice" under Rule 37(e) where it can offer the documents at issue as evidence in support of its claims and defenses at trial. *See Coastal Bridge Co., LLC*, 833 F.Appx. at 575.

It is only when all four predicate elements are established that the court turns to the matter of possible remedies under Fed. R. Civ. P. 37(e)(1) or 37(e)(2). *See BHI Energy I Power Services, LLC*, 730 F.Supp.3d at 320. Here, Legacy's failure to establish all four (4) of the predicate elements as to either of the documents at issue relieves the court of engaging in any consideration of sanctions under Rule 37(e). Thus, Legacy's request for sanctions must be denied.

D.     **Leeberg's Supplemental Discovery Productions Do Not Warrant Reopening Discovery.**

Reopening discovery to permit Legacy to engage in a pure fishing expedition does not promote the efficient administration of these proceedings. Legacy argues that Leeberg's supplemental productions, after the discovery deadline, constitute good cause to reopen discovery. Meanwhile, Leeberg's supplemental production on January 21, 2026, was in response to a meet and confer conducted on January 15th and included additional Medicare Appeal Decisions from

13

2024 and 2025. Leeberg's supplemental production on February 5, 2026, included the various categories of documents responsive to Legacy's on the record document requests during Leeberg's deposition. Finally, Leeberg's supplemental production on February 19, 2026, included a single New York Times article and two (2) Information For Use documents relating to Legacy's products pulled from Legacy's website, which Leeberg cited in her Brief in Response to Legacy's Motion for Summary Judgment. [ECF 52-10, 12, & 13]. These latest documents were not responsive to any of Legacy's document requests but are highly relevant to Leeberg's claims and defenses from her perspective, thus Leeberg produced them to Legacy.

Legacy erroneously relies on *Fuqua v. Horizon/CMS Healthcare Corp.*, in support of its baseless request to reopen discovery. In *Fuqua*, the district court entered litigation ending sanctions against the defendant because that party "fail[ed] to review until the eleventh hour thousands of documents that might be responsive to outstanding discovery requests and [ignored] orders granting motions to compel, despite the fact that significant monetary sanctions [had] already been imposed against that party for its previous misconduct during discovery…." 199 F.R.D. 200, 206 (N.D. Tex. 2000). The court in *Fuqua* found that the defendant provided evasive and incomplete responses to the plaintiff's discovery requests and thereafter failed to abide by the Magistrate Judge's orders compelling its responses. *Id.* at 203. Specifically, the defendant "repeatedly waited until the last possible minute to respond to discovery requests and then [had] served numerous objections to the requests and/or filed motions for seeking protection from the Court, almost the entirety of which [had] been overruled or denied." *Id.* at 204. In response to such bad faith conduct, the plaintiff was "forced to seek court intervention to obtain responses to their discovery requests," and the defendants' responses to court orders were "met with sluggishness…." *Id.* Worse, the defendant also made repeated assurances to the plaintiff that it either had no responsive documents

14

or already produced responsive documents, only to produce over "15,000 plus boxes" of documents months after the discovery period ended. *Id.* The defendants' egregious discovery violations and bad faith conduct are not remotely close to Leeberg's good-faith discovery efforts as outlined herein.

Here, Leeberg never evaded her discovery obligations. When requested to locate additional, potentially responsive documents, Leeberg diligently did so—even if after the discovery period expired. Notably, Legacy never sought to overrule any of Leeberg's objections to its document requests or otherwise seek court intervention—prior to the fact discovery period's expiration—to compel Leeberg's production of discovery materials which it now endeavors to hunt for. There are no similarities here to the *Fuqua* case.

The circumstances here more closely align with those in *BHI Energy I Power Services, LLC*, wherein the district court denied the plaintiff's Motion for Sanctions for Spoliation of Evidence under Rule 37(e). 730 F.Supp.3d, at *311. In *BHI*, the plaintiff's motion asserted that certain named defendants *testified* that they destroyed text messages exchanged with their fellow defendants in the weeks preceding their deposition. *Id.* This was particularly egregious where the plaintiff served the defendants with a preservation notice. *Id.* The plaintiff also accused the defendants of destroying evidence in bad faith and that such evidence could not be restored or replaced. *Id.* In response, the defendants initially argued that the plaintiff failed to raise any of its complaints in a motion to compel before the motion to compel deadline. *Id.* at 316. The defendants also argued that the plaintiff's spoliation motion was an "attempt to backdoor an untimely motion to compel by characterizing it as a motion for sanctions." *Id.* Further, the plaintiff in *BHI* waited until after the close of discovery to complain about the text messages which it claimed the defendants should have produced. *Id.*

15

The district court ultimately agreed with the defendants and denied the plaintiff's motion. *Id.* at 326. The court reasoned that it could not "find that the text messages at issue [were] lost or [could not] be restored or replaced." *Id*. at 326-27. The court reasoned "[t]hat defendants did not search the senders' or recipients' phones or search certain imaged cell phone data does not establish a prerequisite for Rule 37(e) sanctions." *Id.* Ultimately, the court found that "deleting text messages (including an individual's routine practice) or giving up or restoring factory settings on a cellphone and Defendant's counsel's representations that document production was complete does not, alone or in combination with [plaintiff's] other arguments and evidence, support an inference that Defendants acted with the intent to deprive [plaintiff] or the alleged lost ESI's use in this litigation." *Id*. Most critically, the district court held "considering [plaintiff's] failure to timely move to compel, the Court cannot find the required showing of prejudice in light of [plaintiff's] own failure to timely pursue other means of seeking to restore or replace the allegedly lost text messages." *Id.* at 328. *BHI* is instructive.

Here, Legacy alleges the Leeberg "failed to produce (or suppress)" two documents—not that Leeberg knowingly deleted the same or any other documents with an intent to deprive Legacy. Thus, even Legacy's most serious allegations—which are entirely without merit—are significantly less egregious than the circumstances in either *Fuqua* or *BHI*. That Legacy also failed to file any motion to compel weighs heavily against its claims for relief, and particularly sanctions, at this late stage of the proceedings. At all material times, when Legacy raised any concern(s) with Leeberg's document production, she readily engaged in efforts to re-search her materials to uncover and produce additional *potentially* responsive documents. Leeberg has not deliberately failed to produce (or suppress), or worse destroy documents. The only documents which Leeberg has justifiably withheld are sensitive patient records which are protected from disclosure under

16

HIPAA. Legacy has wholly failed to establish that Leeberg deliberately engaged in any wrongdoing or bad faith conduct for which it has legitimately suffered any prejudice. Thus, Legacy fails to justify its request to reopen discovery, and its Motion must be denied.

### E.    Legacy Is Not Entitled to An Adverse Instruction.

Legacy's Motion falls woefully short of establishing that Leeberg has engaged in any bad faith conduct which would warrant the imposition of an adverse instruction to the jury. Legacy argues—without any evidence in support—that Leeberg failed to produce (or suppress) the Medicare fraud letter to deprive Legacy of relevant evidence. [ECF 65, at 13]. Legacy also argues that Leeberg's "facially inadequate" search terms "would never capture Medicare-related documents. *Id.* Neither of Legacy's arguments establish that Leeberg acted in bad faith. The Fifth Circuit has held that "[b]ad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence" and that "[m]ere negligence is not enough to warrant an instruction on spoliation." *Russell*, 234 F. App'x at 208. At most, Leeberg's purported failure to produce the Medicare Appeal Decision and its allegedly enclosed letter at issue and the email chain with Logwood constitute negligence, not bad faith. Leeberg no longer possesses the Logwood email chain at issue in her records and her hard copy version of the March 2024 Medicare Appeal Decision could not be located during her document compilation process. Legacy's characterization of Leeberg's search terms as "facially inadequate" underscores that her purportedly deficient document production was, at worst, the product of negligence and not bad faith. Under no circumstances can Legacy establish that Leeberg intentionally destroyed any documents with an intention of hiding adverse evidence. Nothing in the record supports such an outrageous accusation.  Accordingly, there is no basis in law or fact for an adverse instruction to be furnished to the jury, and Legacy's request must be denied.

17

### F.    Legacy Refused To Subsidize Costs of Forensic Examiner.

Consistent with her cooperative attitude, during the parties meet and confer on April 2, 2026, Leeberg advised Legacy that she would consider having her databases examined by a third-party examiner so long as Legacy subsidized the costs and the parties reached an agreement as to the scope of the search. Legacy rejected Leeberg's proposal (as reflected in its Certificate of Conference), and instead proceeded with filing its Motion [ECF 65]. Legacy argues a court-ordered forensic examiner is necessary because her search was "limited to a handful of names that excluded the core subject matter of the dispute." [ECF 65, at 13]. Legacy's argument here too is meritless. Its Motion concedes that only two documents were uncovered through its two (2) third-party subpoenas which purportedly should have been in Leeberg's records and produced. There is no reason to assume, under these facts, that a forensic examination will uncover scores of relevant and withheld materials within Leeberg's databases. Meanwhile, in the absence of such documents, Legacy fully briefed its nearly 50-page Motion for Summary Final Judgment with seventeen (17) exhibits in support. It can hardly be said that Leeberg failed to produce documents relating to the core subject matter of this dispute. Legacy is unquestionably in possession, by virtue of Leeberg's document productions, of the overwhelming majority of essential documents which relate to the core of this dispute.

Legacy is belatedly seeking to harass Leeberg, where it otherwise failed to timely to do. It is clear that Legacy's Motion is a backdoor motion to compel—a motion which Legacy never filed. Given Legacy's dilatory pursuit of unwarranted relief, its request for a court-ordered examination should be denied, or at most, subsidized exclusively by Legacy pursuant to an agreed scope.

18

**IV. CONCLUSION**

Based upon the foregoing, Legacy fails to establish that discovery should be reopened so that it can engage in a pure fishing expedition or entitlement to sanctions under Fed. R. Civ. P. 37(e). Initially, Legacy's dilatory pursuit of additional discovery after the expiration of the fact discovery deadline cuts heavily against its claims of "good cause." Leeberg demonstrates that, at all material times, she performed her discovery obligations in good faith and that the two documents for which Legacy complains were not within her possession, custody or control and they were readily secured by Legacy through third-party subpoenas—eliminating any prejudice to Legacy. In addition, Leeberg demonstrates that Legacy cannot establish all four of the predicate elements underlying its meritless request for sanctions under Rule 37(e). Further, Leeberg establishes that Legacy's request for an adverse instruction is woefully deficient given that Legacy cannot demonstrate Leeberg acted in bad faith by deliberately destroying relevant materials with an intent of hiding adverse evidence. As worst, Leeberg's document preservation efforts were negligent, which is insufficient to justify an adverse instruction to the jury. Finally, while a court-ordered examination is not warranted at this late stage and due to Legacy's belated pursuit of such relief, if Legacy's request is granted, the forensic examiner's expenses should be borne exclusively by Legacy. For all of the foregoing reasons, Legacy's Motion should be denied.

WHEREFORE, Defendant/Counter-Plaintiff, CRISTI LEEBERG d/b/a PRACTITIONERS IN MOTION, PLLC, respectfully requests that this Honorable Court deny Plaintiff/Counter-Defendant, LEGACY MEDICAL CONSULTANTS, LP's, Motion to Reopen Discovery and for Sanctions [ECF 65], and grant Leeberg such other and further relief which it deems just and proper.

19

Dated: April 9, 2026

Respectfully submitted,

**THE LEAL LAW FIRM, LLC**
14180 N Dallas Pky, Suite 300
Dallas, Texas 75254
Telephone: (214) 395-5325

**ABEL A. LEAL**
Texas Bar No. 24026989
E-mail: abel@leal.law
Telephone: (214) 395-5325

*/s/ Alec R. Shelowitz*
**ZARCO EINHORN SALKOWSKI, P.A.**
2 S. Biscayne Blvd., Suite 3400
Miami, Florida 33131
**ROBERT M. EINHORN** (*admitted to NDTX*)
**FL Bar No.: 858188**
E-mail: reinhorn@zarcolaw.com
Secondary: imorfi@zarcolaw.com
**ALEC R. SHELOWITZ** (*admitted pro hac vice*)
**FL Bar No.: 1010127**
Email: ashelowitz@zarcolaw.com
Secondary: agarcia@zarcolaw.com

**ATTORNEYS FOR DEFENDANT/COUNTER-PLAINTIFF, CRISTI LEEBERG**

20

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 9, 2026, a true and correct copy of the foregoing document was electronically served via CM/ECF upon the following:

**BLANK ROME, LLP**
200 Crescent Ct #1000
Dallas, Texas 75201
717 Texas Avenue, Suite 1400 Houston, Texas 77002-2727
Audrey F. Momanaee (audrey.momanaee@blankrome.com)
Gregory J. Moore (greg.moore@blankrome.com)
Christopher McNeill (chris.mcneill@blankrome.com)
**ATTORNEYS FOR LEGACY MEDICAL CONSULTANTS, L.P.**

By: *s/ Alec R. Shelowitz*
**Alec R. Shelowitz**